IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
In re:                                  :   Chapter 11
                                        :
EXIDE TECHNOLOGIES,                     :   Case No. 13-11482 (KJC)
                                        :
                Debtor.[1]              :   **Hrg. Date: July 11, 2013 at 10:00 a.m. (Eastern)**
                                        :   **Obj. Due: July 3, 2013 at 4:00 p.m. (Eastern)**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING
(I) REJECTION OF SHREVEPORT LEASE AND SHREVEPORT
SERVICE CONTRACTS AS OF THE SURRENDER DATE
AND (II) ABANDONMENT OF PERSONAL PROPERTY**

Exide Technologies ("Exide" or the "Debtor") hereby moves (the "Motion") this Court for entry of an order authorizing the Debtor (i) to reject the Shreveport Lease (as defined below), the Shreveport Shoring Contract (as defined below), and the Shreveport Security Contract (as defined below) as of the Surrender Date (as defined below) and (ii) to abandon any equipment, furniture, fixtures, and/or any other personal property that is property of the estate and located at the Premises (as defined below) on the date of rejection (the "Abandoned Property"). In support of the Motion, the Debtor, by and through its proposed undersigned counsel, respectfully represents[2]:

---

[1]   The last four digits of the Debtor's taxpayer identification number are 2730. The Debtor's corporate headquarters are located at 13000 Deerfield Parkway, Building 200, Milton, Georgia 30004.

[2]   In further support of the Motion, subsequent to filing the Motion, the Debtor will either file a declaration or present factual testimony.

**JURISDICTION AND VENUE**

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue of this case and the Motion in this district is proper under 28 U.S.C. § 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 105(a) and 365 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

3. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtor consents to the entry of a final judgment or order with respect to the Motion if it is determined that this Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

**BACKGROUND**

**A.     The Chapter 11 Case**

4. On June 10, 2013 (the "<u>Petition Date</u>"), the Debtor commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (the "<u>Chapter 11 Case</u>").

5. The Debtor continues to operate its business and manage its property as debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. On June 18, 2013, the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>") appointed an Official Committee of Unsecured Creditors (the "<u>Creditors' Committee</u>") in the Chapter 11 Case pursuant to Bankruptcy Code section 1102. No trustee or examiner has been appointed in the Chapter 11 Case.

**B.     The Debtor's Business**

7.      The Debtor, Exide, which together with its direct and indirect subsidiaries (collectively, the "Company"), has operations in more than 80 countries, is a global leader in stored electrical energy solutions and one of the world's largest producers and recyclers of lead-acid batteries.

8.      The Company's four global business groups—Transportation Americas, Transportation Europe and Rest of World ("ROW"), Industrial Energy Americas, and Industrial Energy Europe and ROW—provide a comprehensive range of stored electrical energy products and services for industrial and transportation applications. Additional factual background information about the Debtor, including its business operations, its corporate and capital structures, its restructuring efforts, and the events leading to the filing of this Chapter 11 Case, is set forth in the Declaration of Phillip A. Damaska in Support of Chapter 11 Petitions and First Day Pleadings (the "First Day Declaration").[3]

**C.     The Shreveport Lease and Facility**

9.      In December of 2000, the Debtor entered into a nonresidential lease (the "Shreveport Lease") with Pacific Chloride Incorporated (the "Landlord") as part of its acquisition of Pacific Dunlop GNB Corporation and related subsidiaries, including GNB Technologies Inc. ("GNB Technologies"). The premises of the Shreveport Lease (the "Premises"), located in Shreveport, Louisiana, contained a lead-battery manufacturing facility (the "Shreveport Facility") operated by GNB Technologies. After acquiring and merging with GNB Technologies, the Debtor began to operate the Shreveport Facility and continued to do so until 2006, when it ultimately shut down the Shreveport operations.

---

[3]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

10. In January of 2011, a fire damaged a portion of the Shreveport Facility. Immediately following the fire, the Debtor entered into a contract (the "Shreveport Security Contract") with Allegiance Security Group LLC ("Allegiance"), whereby Allegiance agreed to provide security services at the Premises. A few months later, the Debtor entered into a contract (the "Shreveport Shoring Contract" and together with the Shreveport Security Agreement, the "Shreveport Service Contracts") with Republic Contractors Inc. ("RCI"), whereby RCI agreed to install, maintain, and remove temporary shoring equipment and materials for the safe demolition of parts of the Shreveport Facility.

11. Subsequent to the 2011 fire, the Debtor, its insurance carriers (the "Insurers"), and an affiliate of the Landlord entered preliminary discussions regarding the amount of the insurance recovery owed by the Insurers.[4] Those discussions are still ongoing, and no insurance payments have been made for the repair of fire damages at the Shreveport Facility building.[5]

12. Subsequent to terminating its manufacturing operations at the Shreveport Facility in 2006 and the 2011 fire damage to the Shreveport Facility, the Debtor continued to pay monthly rent of $53,750.00 until 2010, and $58,333.33 thereafter for this vacant, and now partially damaged, property. The Shreveport Lease, pursuant to its terms, is scheduled to terminate on December 18, 2015.

---

[4] The Debtor maintains an insurance policy that provided coverage for, among other things, losses related to fire damage at the Debtor's owned or operated properties, which included the Shreveport Facility (the "Insurance Policy"). The Shreveport Lease required the Debtor to maintain certain insurance that named the Landlord as an additional insured. The Landlord was never specifically endorsed as an additional insured under the Insurance Policy.

[5] The Insurers have paid the Debtor for the damage to its equipment on the premises. Such equipment was wholly owned by the Debtor. Further, the Landlord was made aware of this claim, and never claimed entitlement to any of the proceeds.

**RELIEF REQUESTED**

13. By the Motion, the Debtor seeks entry of an order authorizing the Debtor to reject as of the Surrender Date the Shreveport Lease, the Shreveport Security Contract, and the Shreveport Shoring Contract (collectively, the "Shreveport Agreements")[6].

14. The Debtor further seeks (a) authority under Bankruptcy Code sections 105(a) and 554 to abandon to the Landlord any and all Abandoned Property as of the date the respective Shreveport Lease is rejected; and (b) authorization for the Landlord, in its sole discretion and without further notice, to dispose of such Abandoned Property, without liability to the Debtor or any third parties claiming an interest in such Abandoned Property.

**BASIS FOR RELIEF**

15. As part of the Debtor's efforts to maximize the value of its estate, the Debtor is working to eliminate unnecessary administrative burdens. The Debtor has determined that its estate would be better served by avoiding the burdens associated with the Debtor's continued performance under the Shreveport Agreements. Absent rejection of such agreements, the Debtor would be obligated, until December of 2015, to pay close to $60,000 per month in rent for a damaged facility that it has not used in approximately seven years, in addition to ongoing fees for security and shoring services. The financial burden of the Shreveport Agreements substantially outweighs any benefit provided by possessing a leasehold interest in, and maintaining and securing the premises of, a property containing little more than a nonoperational battery manufacturing plant. Therefore, the Debtor has decided, in the exercise

---

[6] In addition, to the extent there are additional executory contracts ancillary to the Shreveport Lease and Shreveport Service Contracts, the Debtor moves to reject those as well, to the extent they remain executory, in connection with its rejection of the Shreveport Agreements.

of its business judgment, that it is in the best interests of its estate, creditors and stakeholders to reject the Shreveport Agreements.

16. The Debtor is currently in the process of surrendering possession of the Premises to the Landlord. The Debtor has vacated the Premises and, through notice of this Motion to the Landlord, has unequivocally notified the Landlord of its intent to abandon the Premises. Furthermore, the Debtor will return its keys to the Landlord subsequent to filing the Motion. The Debtor moves to reject the Shreveport Agreements on the date on which the Landlord receives the keys (the "Surrender Date").

A. **Rejection of Shreveport Lease**

17. The Debtor has identified the Shreveport Lease as a lease that is burdensome to its estate and may be rejected pursuant to section 365 of the Bankruptcy Code. Because the Premises are vacant and the facility damaged, the Shreveport Lease is not conferring any benefit upon the Debtor's estate. Rather, it is a strain on the estate, requiring monthly rent payments, plus additional maintenance and repair obligations, which the Debtor has undertaken to satisfy through the related Shreveport Service Contracts. As such, the Debtor has determined that the continued maintenance of the obligations under the Shreveport Lease is no longer desirable and the elimination of such lease obligations constitutes a valid exercise of the Debtor's business judgment.

18. By rejecting the Shreveport Lease at this time, the Debtor will avoid incurring unnecessary administrative charges for facilities that provide no tangible benefit to the Debtor's estate. The resulting savings from the rejection of the Shreveport Lease will increase the Debtor's future cash flows and assist the Debtor in managing its estate.

19. The Debtor believes that abandonment of any Abandoned Property as of the Surrender Date is appropriate because such property is of inconsequential value and/or the cost of removing and storing such property exceeds its value to the Debtor's estate. Accordingly, the Debtor believes that rejection of the Shreveport Lease and abandonment of any Abandoned Property is in the best interests of the Debtor, its estate, creditors, stakeholders and other parties in interest.

**B.     Rejection of Shreveport Service Contracts**

20. The Debtor has identified the Shreveport Service Contracts as agreements that are burdensome to its estate and may be rejected pursuant to section 365 of the Bankruptcy Code. The Debtor entered into these agreements in connection with its leasehold interest in the Premises, and its obligations thereunder. As the Debtor has ceased operations at the Premises and has moved to reject the Shreveport Lease, the services provided to the Debtor under the Shreveport Service Contracts are no longer necessary. Therefore, no benefits remain to be conferred upon the Debtor under the Shreveport Service Contracts, while the costs thereunder are a strain on the Debtor's estate.

21. By rejecting the Shreveport Service Contracts as of the Surrender Date, the Debtor will avoid incurring unnecessary administrative charges that will provide no tangible benefit to the Debtor's estate. As stated above, the Debtor does not believe that the Shreveport Service Contracts provide any benefit to the Debtor or its estate. For these reasons, the Debtor has determined that the rejection of the Shreveport Service Contracts is in the best interests of the Debtor, its estate, creditors, stakeholders and other parties in interest.

## APPLICABLE AUTHORITY

### A. Rejection of the Shreveport Agreements is a Sound Exercise of the Debtor's Judgment

22. Bankruptcy Code section 365(a) provides that a debtor in possession "subject to the court's approval, may . . . reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

23. A debtor's determination to reject an executory contract is governed by the "business judgment" standard. In re HQ Global Holdings, Inc., 290 B.R. 507, 511 (Bankr. D. Del. 2003) (stating that a debtor's decision to reject an executory contract is governed by the business judgment standard and can only be overturned if the decision was the product of bad faith, whim, or caprice).

24. Once the debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

25. The business judgment rule has vitality in chapter 11 cases and shields a debtor's management from judicial second-guessing. See Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions.").

26. As set forth above, the Debtor clearly has satisfied the "business judgment" standard for rejecting the Shreveport Agreements. The Shreveport Agreements are

financially burdensome and unnecessary to the Debtor. Moreover, the Debtor has reviewed the Shreveport Agreements and has determined that they do not have any marketable value beneficial to the Debtor's estate. Accordingly, the Debtor has determined that the Shreveport Agreements constitute an unnecessary drain on the Debtor's cash flows and, therefore, rejection of the Shreveport Agreements reflects the Debtor's exercise of sound business judgment.

27. With specific reference to the Shreveport Lease, the Debtor submits that rejection as of the Surrender Date is appropriate. Courts in this district have authorized retroactive rejection of unexpired leases as of the date that the non-debtor party to the lease was informed of the debtor's "unequivocal intent to reject the leases." In re Fleming Co., Inc., 304 B.R. 85, 96 (Bankr. D. Del. 2004). Under Bankruptcy Code section 365, the Debtors' only duty upon rejection is to surrender the premises. See 11 U.S.C. § 365(d)(4) (providing that, upon rejection, "the trustee shall immediately surrender [the] nonresidential real property to the lessor"). "Surrender" is not defined in the Bankruptcy Code and has been interpreted by courts differently depending on the facts and circumstances.

28. Where the debtor is a lessee and no sub-tenancy exists,[7] courts have concluded that providing notice of rejection to the landlord and vacating the premises constitutes surrender of the premises. Adelphia Bus. Solutions, Inc. v. Abnos, 482 F.3d 602, 608 (2d Cir. 2007) (noting that the bankruptcy court properly considered the fact that the debtor vacated the premises); Chatlos Sys., Inc. v. Kaplan, 147 B.R. 96, 100 (D. Del. 1992) (noting that surrender is effective if the debtor/lessee in possession of the premises provides notice, vacates the premises and turns the premises over to the landlord).

---

[7] Upon information and belief, the Shreveport Lease does not involve subleases. Out of an abundance of caution, however and to the extent there are any, any subleases of the Premises will be likewise rejected upon rejection of the Shreveport Lease. See Chatlos Sys., Inc. v. Kaplan, 147 B.R. 96, 100 (D. Del. 1992) (holding that rejection of a primary lease results in deemed rejection of any sublease).

29. As of the Surrender Date, the Debtor will have vacated the Premises, unequivocally notified the Landlord of its intent to abandon the Premises, and returned the keys to the Landlord. The Debtor submits that, in light of the circumstances, rejection of the Shreveport Lease as of the Surrender Date is appropriate and equitable. See April 15, 1998 Transcript at 35, In re Namco Cybertainment, Inc., Case No. 98-00173 (PJW) (Bankr. D. Del. Apr. 15, 1998) (citing the factors which must be present for rejection of a lease as of the date of service of the lease rejection motion). The rejection of the Shreveport Lease as of the Surrender Date is therefore warranted.

30. In summary, the Debtor believes that the proposed rejection of the Shreveport Agreements is tailored to minimize administrative expenses, maximize distributions to creditors in the Chapter 11 Case, and, with respect to the Shreveport Lease, return control of the Premises to the Landlord quickly. In the exercise of its sound business judgment, the Debtor thus seeks authority to reject the Shreveport Agreements as of the Surrender Date.

**B.    The Bankruptcy Code Authorizes Abandonment of the Abandoned Property**

31. Bankruptcy Code section 554(a) provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). Courts give great deference to debtors' decisions to abandon property under Bankruptcy Code section 554. See In re Vel Rey Props., Inc., 174 B.R. 859, 867 (Bankr. D.D.C. 1994) ("Clearly, the court should give deference to the trustee's judgment in such matters."). Unless the property is harmful to the public, once the debtors have shown that the property is burdensome or of inconsequential value and benefit, the court should approve the abandonment. See id. at 868.

32. The Debtor believes that the costs of moving and storing any Abandoned Property would far outweigh any benefit to its estate. Moreover, the Debtor believes that any efforts to move any Abandoned Property would unnecessarily delay the rejection of the Shreveport Lease which would, in turn, increase the amount of administrative expenses incurred by the Debtor in the Chapter 11 Case. Therefore, it is in the Debtor's best interests to abandon any Abandoned Property located at the Premises on the Surrender Date.

## RESERVATION OF RIGHTS

33. Nothing contained herein is or should be construed as: (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor's right to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an assumption or rejection of any executory contract or unexpired lease other than the Shreveport Agreements pursuant to Bankruptcy Code section 365; or (e) otherwise affect the Debtor's rights under Bankruptcy Code section 365 to assume or reject any executory contract or unexpired lease with any party subject to the Motion.

## WAIVER OF ANY APPLICABLE STAY

34. The Debtor also requests that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtor seeks in the Motion is necessary for the Debtor to operate without interruption and to preserve value for its estate. Accordingly, the Debtor respectfully requests that the Court waive the fourteen day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable, as the exigent nature of the relief sought herein justifies immediate relief.

**NOTICE**

35. Notice of the Motion will be given to: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the agent under the debtor in possession financing; (iii) counsel to the agent for the Debtor's prepetition secured lenders; (iv) the indenture trustee for each of the Debtor's secured and unsecured outstanding bond issuances; (v) counsel to the unofficial committee of senior secured noteholders; (vi) proposed counsel to the Creditors' Committee; (vii) the Landlord and the counterparties to the Shreveport Service Contracts; (viii) Louisiana state and local environmental authorities; and (ix) all parties entitled to notice pursuant to Bankruptcy Rule 2002. The Debtor submits that no other or further notice need be provided.

**NO PRIOR REQUEST**

36. No previous request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form annexed hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Date: Wilmington, Delaware
June 20, 2013

        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

        /s/ Christine W. Kim
        Anthony W. Clark (I.D. No. 2051)
        Christine W. Kim (I.D. No. 5272)
        One Rodney Square
        P.O. Box 636
        Wilmington, Delaware 19899-0636
        Telephone: (302) 651-3000
        Fax: (302) 651-3001

        - and -

        Kenneth S. Ziman
        J. Eric Ivester
        Four Times Square
        New York, New York 10036-6522
        Telephone: (212) 735-3000
        Fax: (212) 735-2000

        - and -

        James J. Mazza, Jr.
        155 N. Wacker Dr.
        Chicago, Illinois 60606-1720
        Telephone: (312) 407-0700
        Fax: (312) 407-0411

        *Proposed Counsel for Debtor and Debtor in Possession*