IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EXIDE TECHNOLOGIES, | ) | Case No. 13-11482 (KJC) |
| | ) | |
| Debtor. | ) | Ref: D.I. 166, 238, 252 |
| | ) | Objection Deadline: At Hearing |
| | ) | Proposed Hearing Date: July 11, 2013, at 10 a.m. |

**EMERGENCY MOTION OF PACIFIC CHLORIDE INC. AND ANSELL HEALTHCARE PRODUCTS LLC REQUESTING A CONTINUANCE OF THE HEARING TO CONSIDER THE DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING (I) REJECTION OF SHREVEPORT LEASE AND SHREVEPORT CONTRACTS AS OF THE SURRENDER DATE AND (II) ABANDONMENT OF PERSONAL PROPERTY**

Pacific Chloride Incorporated ("Pacific Chloride") and Ansell Healthcare Products LLC (together with Pacific Chloride, "Ansell")[2], by their undersigned counsel, hereby submit this emergency motion requesting a continuance of the hearing consider the Debtor's Motion for Entry of an Order Authorizing (I) Rejection of Shreveport Lease and Shreveport Contracts as of the Surrender Date and (II) Abandonment of Personal Property (D.I. 166) (the "Motion"), filed by Exide Technologies ("Exide" or the "Debtor"),[3]

Ansell timely filed a response objecting to the Motion (D.I. 252), on July 3, 2013. The Louisiana Department of Environmental Quality ("LDEQ") also filed objections to the Motion. (D.I. 238). Contemporaneously with serving its objections to the Motion,

---

[2] Pacific Chloride Incorporated and Ansell Healthcare Products LLC are affiliate companies, both being indirect subsidiaries of the Australian public company, Ansell Limited.
[3] Narrowly, Ansell has not objected to that portion of the Motion directed to what the Debtor has defined as the "Shreveport Contracts" – which contracts do not involve the Shreveport property or Pacific Chloride as its Landlord.

6577988/

Ansell served a set of interrogatories and document requests upon Exide related to the Motion. *See* D.I. 254 (Notice of Service). On the basis of the objections filed by LADEQ and by Ansell as well as the discovery requests that Ansell served on the Debtor pertaining to the Motion, Ansell respectfully requests that the hearing on the Motion be continued.

On Monday July 8, 2013[4], Ansell's counsel discussed a continuance with Debtor's counsel, so that Ansell could obtain the discovery it seeks prior to the hearing. The Debtor's initial, singular concern was that rent payment obligations be abated. Ansell therefore proposed a continuance in a manner that would not prejudice the Debtor with respect to rent payment obligations, by proposing to stipulate that, in the event that the rejection of the lease is granted by the Court, Ansell would not seek to hold the Debtor to postpetition rent as an administrative claim beyond what was owed by the originally scheduled hearing date of July 11, 2013.[5] But late in the day, Debtor's counsel rejected that proposal, insisting on several other conditions and refusing to agree to respond in good faith to the discovery requests served (as compared with objecting to them wholesale).

In addition, the Skadden firm, Debtor's counsel in this matter, represents Ansell in certain merger and acquisition matters and is currently representing Ansell on a potential transaction, and Skadden's New York office has been notified of this conflict of interest. Ansell believes that the Debtor's Special Conflicts Counsel needs to represent the Debtor in this matter.

---

[4] The offices of counsel for Ansell were closed for Independence Day on both July 4 and 5, 2013.
[5] That would of course be without prejudice to all rejection and other damages claims.

These circumstances necessitated this Motion for Continuance of the Debtor's Motion, for which the hearing date is July 11, 2013 at 10:00 a.m.

I. **BACKGROUND**

1. The Debtor's Motion seeks (a) to reject Exide's lease of certain property in Shreveport, Louisiana where it formerly operated a lead-battery manufacturing plant, and (b) to abandon all its personal property at the site. Pacific Chloride is the Landlord under the lease.

2. A fire occurred on the Shreveport property in January, 2011 that substantially damaged the manufacturing plant, including the structure, the fixtures and equipment.

3. As the Debtor asserts in the Motion, and as the lease attached to the Motion reflects, the Debtor was obligated under the lease to obtain insurance coverage on the property, including property insurance and liability insurance, and to have both the Landlord and Exide named as insureds under the policies. The Debtor did obtain such insurance, and also maintained a policy covering certain environmental liabilities.

4. Although the fire took place in January 2011, and although the Debtor and Ansell (on behalf of Pacific Chloride) had been in discussions with the insurers on the property since that time regarding recovering for the damage at the property, the Debtor asserted for the first time, by way of a footnote in the Motion, that the Landlord was *not* specifically endorsed on "the Insurance Policy" (presumably a reference to the Debtor's property insurance policy, though without so stating and without mention of the umbrella, excess, and liability policies). See Motion, p. 4, fn.4.

5. The Debtor avers that it served notice of the Motion upon "Louisiana state and local environmental authorities," but says nothing about the current state of the property from an environmental standpoint.

## II. THE REQUEST FOR A CONTINUANCE

### A. Insurance-Related Issues are Intertwined with the Lease and Any Rejection or Abandonment of the Debtor's Property Rights or Interests Under It, and Ansell Is Entitled to the Discovery It Seeks Prior to the Hearing

6. Plainly, in view of the fire on the premises, the rights and ability to collect insurance proceeds due as a result of the property damage, any rights to such insurance proceeds are an important aspect of the tenancy that the Debtor is proposing to reject. Indeed, the Debtor states in the Motion that the discussions with the insurers are "still ongoing, and no insurance payments have been made for the repair of the fire damages at the Shreveport Facility building." Motion, p. 4.

7. Yet the Debtor has continuously refused to furnish the Landlord copies of such policies, and other pertinent, related insurance information. In its objections, Ansell points out, *inter alia*, that case law recognizes that some types of contract or lease obligations – in particular, ones that do not translate directly into "claims" against the debtor – survive a contract or lease rejection, and are not terminated as a result of a rejection. Ansell submits that the lease obligations pertaining to Ansell's rights to collect from insurance fall in this category; and that any order entered with respect to the Motion and the lease should acknowledge Pacific Chloride's full rights and property interests to recover under the insurance coverage in place for the Premises and the Shreveport Facility and are not impeded by a rejection of the Shreveport Lease.

8. The status of the insurance presents several other mixed legal and factual issues as well, as Ansell has set forth in its Objections, for which Ansell is entitled to

6577988/

4

discovery and which need to be established before the Court can determine just what is being rejected and abandoned. These include, by way of example, whether a debtor under these circumstances has any right to receive or retain insurance proceeds not yet paid, or already paid, for restoration of the premises or any equipment thereon, or whether such rights are in effect being abandoned to the Landlord (since the Debtor is proposing to abandon *all* its personal property associated with the Shreveport property).

9. The insurance coverage that Exide obtained with respect to the Shreveport property is inextricably tied to its lease of that property – Exide could not have obtained insurance coverage on the property without having a property interest in it, whether by leasehold, ownership or otherwise.

10. Ansell has served discovery on the Debtor related to the insurance that was obtained on the property, and Ansell maintains that it is entitled to receive such discovery from the Debtor before a hearing is held on the Motion.

11. The Debtor has not yet responded to Ansell's discovery requests; nor has the Debtor served objections to the requests.

B. <u>The Request to Approve Abandonment of Property Is Premature</u>

12. The Debtor's request for approval of its proposed abandonment of all its (unidentified) personal property connected with the lease and the Shreveport property is premature.

13. The LDEQ objected to the Motion, asserting, *inter alia*, that:

    a. "Abandoned hazardous and solid waste can present an imminent hazard to human health and the environment, and proper management of any such material generated by, and/or in possession of, the Debtor is mandated by state and federal laws, in particular, the Resource Conservation and Recovery Act, 42 U.S.C. §6901 *et seq*, and the Louisiana Environmental Quality Act, La. R.S. 30: 2001 *et seq*."; and

  b. "[T]he LDEQ has been unable to gain access to the site to ensure that no solid or hazardous waste associated with Debtor's prior facility operations, and/or the 2011 fire, remains on the site. Until the LDEQ is able to access the site, it is unable to verify that all solid and hazardous waste associated with the Debtor's operations has been removed and any threat posed to human health and the environment by any such material has been abated."

LDEQ's Objections, p.2.

  14. Ansell has similarly objected that the abandonment request is premature until the Debtor has provided information on the environmental status of the property.

  15. Ansell has served discovery on Exide to obtain such information, in advance of any hearing on the Motion, and is entitled to receive it.

  16. The Debtor has not yet responded to Ansell's discovery requests pertaining to the environmental issues; nor has the Debtor served objections to the requests.

  C. <u>A Continuance Will Not Prejudice the Debtor</u>

  17. A continuance of the hearing will not be prejudicial to the Debtor.

  18. On the afternoon of Monday July 8, 2013, Ansell's counsel discussed a continuance with Debtor's counsel, so that Ansell could obtain the discovery it seeks prior to the hearing. It appeared that the Debtor's initial, singular concern was that rent payment obligations be abated; Ansell was willing to accommodate that concern, and proposed a continuance in a manner that would not prejudice the Debtor with respect to rent payment obligations owed beyond the originally scheduled hearing date of July 11, 2013, *i.e.*, by proposing to stipulate that, in the event that the Court grants Debtor's request to reject the lease, Ansell would not seek to hold the Debtor to postpetition rent as

an administrative claim beyond what was owed by the original hearing date.[6] In turn, the hearing could be continued to a date that would allow the Debtor first to respond to the discovery.

19. But late in the day, Debtor's counsel rejected that proposal, demanding several other conditions, while also refusing to agree to respond in good faith to the discovery requests served (as compared with objecting to them wholesale).

20. That response necessitated the filing of this Motion for Continuance.

21. Ansell remains willing to agree that the Debtor's exposure on ongoing rent be limited, provided that the Debtor responds in good faith to the discovery Ansell served on it.

### III. SKADDEN'S CONFLICT OF INTEREST

22. Ansell's general counsel has notified the Skadden firm, Debtor's counsel in this matter, of the presence of a conflict of interest, due to the fact that Skadden represents Ansell in certain merger and acquisition matters and is currently representing Ansell on a potential transaction; and accordingly, Ansell believes that the Debtor's Special Conflicts Counsel, the Pachulski firm, needs to represent the Debtor in this matter.

23. Skadden has not responded.

### IV. NOTICE

24. Ansell has served notice of this Motion by hand delivery, fax or email on (a) the "core" list of interested parties requiring notice as identified in the Notice of

---

[6] That would of course be without prejudice to all rejection and other damages claims. The Debtor will continue to seek to have the rejection made effective on the date in late June that Ansell received a set of keys to the premises from Exide.

6577988/

7

Motion as to the Debtor's Motion (D.I. 166), which list includes the Debtor, its lenders, the Creditor's Committee, and the Office of the U.S. Trustee; (b) the Louisiana Department of Environmental Quality; and (c) the United States Attorney's Office. In view of the relief requested, Ansell submits that no other or further notice is required.

WHEREFORE, Pacific Chloride Incorporated and Ansell Healthcare Products, LLC respectfully request that this Court enter an order continuing the hearing on the Motion, with respect to the Shreveport Lease and the Personal Property related thereto, to a later date that will enable Ansell to receive the discovery Ansell has sought from the Debtor in connection with the Motion, and such other relief as the Court deems proper. A proposed form of order is attached.

MORRIS JAMES LLP

Douglas N. Candeub (Bar No. 4211)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware 19899-2306
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
Email: dcandeub@morrisjames.com

Attorneys for Pacific Chloride Incorporated
and Ansell Healthcare Products, LLC

Dated: July 9, 2013