# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>EXIDE TECHNOLOGIES,[1]<br><br><br>Debtor. | Chapter 11<br><br>Case No. 13-11482 (KJC)<br><br>Objection Deadline: March 25, 2014 at 4:00 p.m. (ET)<br>(extended to March 26, 2014 at 1:00 pm (ET) by the Debtor and Committee)<br><br>Hearing Date: April 1 , 2014 at 10:00 a.m. (ET)<br>Related Docket No. 1526 |

**OBJECTION OF WELLS FARGO BANK, NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE AND COLLATERAL AGENT, TO JOINT APPLICATION OF THE DEBTOR AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER UNDER 11 U.S.C §§ 327(a) AND 328(a), FED. R. BANKR. P. 2014(a), AND DEL. BANKR. L.R. 2014-1 AND 2016-2 AUTHORIZING THE EMPLOYMENT AND RETENTION OF M•CAM, INC. AS INTELLECTUAL PROPERTY CONSULTANT AND BROKER TO THE DEBTOR AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

Wells Fargo Bank, National Association (the "Indenture Trustee"), in its capacity as indenture trustee and collateral agent under the Indenture dated as of January 25, 2011 (the "Indenture") pursuant to which the Debtor issued its $675 million in face amount of 8-5/8% Senior Secured Notes due 2018 (the "Senior Secured Notes"), hereby submits this objection (the "Objection") to the *Joint Application of the Debtor and the Official Committee of Unsecured Creditors for Entry of an Order Under 11 U.S.C. §§ 327(a) and 328(a), Fed. R. Bankr. P. 2014(a), and Del. Bankr. L.R. 2014-1 and 2016-2 Authorizing the Employment and Retention of M•CAM, Inc. as Intellectual Property Consultant and Broker to the Debtor and the Official Committee of Unsecured Creditors* (the "Application").[2] The Indenture Trustee has been in

---

[1] The last four digits of the Debtor's taxpayer identification number are 2730. The Debtor's corporate headquarters are located at 13000 Deerfield Parkway, Building 200, Milton, Georgia 30004.

[2] Capitalized terms used but not defined herein shall have the meaning given them in the Application.

discussions with the Debtor and the Committee regarding it objections to the Application, and will continue those discussions in an attempt to resolve or narrow its objections. In support hereof, the Indenture Trustee respectfully states as follows:

## **INTRODUCTION**

1. In the Application, the Debtor and the Committee seek authorization to employ and retain M•CAM, Inc. (the "Consultant") as their "intellectual property consultant and broker." As is noted in the proposed order granting the Application, the Patent Portfolio the Debtor and Committee seek to market and potentially sell or license includes intellectual property pledged as collateral under the Debtor's Amended and Restated Superpriority Debtor-in-Possession Credit Agreement, dated July 12, 2013. *See* Application, Exhibit D, ¶10.

2. However, the Debtor and the Committee seem to have completely forgotten that the Patent Portfolio also was pledged to the Indenture Trustee prepetition as collateral for the Senior Secured Notes. Not only does the Application completely ignore this fact and fail to provide even the most rudimentary protections to the Indenture Trustee and the Senior Secured Noteholders in relation to their collateral, but neither the Debtor nor the Committee (whose financial interest in the Patent Portfolio pales in comparison to the Indenture Trustee's or DIP lenders') discussed or even mentioned the Application with the Indenture Trustee prior to the filing of the Application, although the Application would seem to be the first step in the potential sale of the Indenture Trustee's collateral.

3. Given that the Application concerns the retention of a Consultant for the ultimate purpose of conveying property in which the Indenture Trustee asserts a lien and yet gives precious little detail on the exact nature of the services the Consultant will perform and their reasonableness, let alone provide any procedural safeguards, the Indenture Trustee believes

it would have been advisable, prudent and even courteous, for the Debtor and/or the Committee to have discussed with the Indenture Trustee the proposed retention of the Consultant and the terms of such retention, particularly as they relate to the Indenture Trustee's liens, *before* filing the Application.  This is particularly true where, as here, the Consultant is to be compensated – it seems handsomely – out of the proceeds of the sale of the collateral.

4. In any event, given the Indenture Trustee's lien in the Patent Portfolio, the Indenture Trustee submits that the Application should be denied unless certain accommodations are made in recognition of the Indenture Trustee's lien.  Those proposed accommodations are set forth in more detail below.

## OBJECTION

5. **Disposition of the Patent Portfolio and Consent Thereto**.  While the Application does not expressly appear to request pre-approval of any sale, licensing or other disposition of the Patent Portfolio, the Indenture Trustee submits that any order granting the Application should be absolutely clear that the order does not authorize a sale, licensing or other disposition and that such sale, licensing or other disposition shall only be accomplished pursuant to prior presentment to the Indenture Trustee and the Unofficial Noteholder Committee and a motion and further order of this Court.  Further, the Indenture Trustee submits that proceeds of any sale, licensing or other conveyance of any part of the Patent Portfolio should be deposited into an escrow on terms reasonably acceptable to the agent under the DIP Facility and the Indenture Trustee.

6. **Consultation Requirements**.  In several places, the MSA requires the Debtor and/or the Consultant to consult with and/or share information with the Committee and the Unofficial Noteholder Committee.  Because the Indenture Trustee holds the security interest

and serves as the indenture trustee and collateral agent for all holders of the Senior Secured Notes, including the 40% or so in principal amount of the holders Senior Secured Notes not represented on the Unofficial Noteholder Committee, the Indenture Trustee submits that the Debtor and/or the Consultant should also be required to consult with and/or share information with the Indenture Trustee on at least the same basis as they are required to do so with respect to the Committee and the Unofficial Noteholder Committee.[3]

7.      **Fee Structure**.  The Application proposes what appears to be a very rich fee structure for the Consultant. In particular, if the Patent Portfolio were sold, for example, for $50 million, the Consultant would receive a fee of $1.25 million.  If it were sold for $200 million, the Consultant would receive a fee of $8.75 million.  And if the Patent Portfolio were sold for $350 million, the Consultant would receive a fee of $20 million.[4]

8.      The Debtor and the Committee make no effort in the Application to demonstrate the reasonableness of the proposed compensation for the Consultant.  For example, while the Application includes a short footnote on what an "offset transaction" is, it goes into no detail on how much work is required to consummate such a transaction (or a non-offset transaction) or whether the proposed fee schedule for the Consultant is typical of the market for the services the Consultant is providing.

9.      In addition, the Debtor and the Committee request that the Consultant not be required to keep detailed logs of the time it spends on this engagement.  Thus, neither the Debtor, the Committee, nor the Indenture Trustee, will ever be able to judge whether the Consultant gained a windfall from its efforts on an hourly basis.

---

[3] The Indenture Trustee understands that the Debtor and the Committee may be willing to consider adding language to the order granting the Application that would accommodate the Indenture Trustee's request on this point.

[4] These amounts are in addition to a $100,000 fee "to perform due diligence and analyze and identify potential offset and non-offset transactions."  See Application, ¶14(a).

4834-9220-8409.6

10. The Indenture Trustee submits, therefore, that the Application be denied unless the Debtor, the Committee and/or the Consultant can adequately demonstrate and explain why the proposed fee schedule is reasonable and in line with the market for the type of services to be provided by the Consultant.

11. **Indenture Trustee Financial Advisor's Additional Services and Fees and Expenses**. In seeking to retain the Consultant, the Debtor and the Committee have indicated that a sale of some or potentially all of the Patent Portfolio is possible. Because the Indenture Trustee has a lien on the Patent Portfolio, it has a keen interest, and potential responsibility to its Senior Secured Noteholders, in any proposed disposition of the Patent Portfolio, including, particularly, the impact on the Debtor's operations and value, the price received by the estate in such disposition and the proposed use of the proceeds. However, at present, under the terms of the *Order (Final) (I) Authorizing Debtor (A) to Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (b) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 and (II) Granting Adequate Protection to Pre-Petition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364*, dated July 25, 2013, the Indenture Trustee's financial advisor is limited to payment of its fees and expenses in the amount of $25,000 per month, starting only on November 1, 2013 (five months into this case). This leaves the Indenture Trustee and its professionals severely hamstrung in their ability to provide services and meet the range of responsibilities imposed on them to protect the interests of the Senior Secured Noteholders in general and, in particular and in addition, to evaluate the terms of any potential sale of the Patent Portfolio. This is further exacerbated by the fact that the Debtor and the Committee have filed a series of applications and have been authorized to retain a

multitude of such financial consultants relating to a variety of matters, all without any limits on the reimbursement of their fees and expenses.

   12. Thus, the Indenture Trustee submits that as a condition to the retention of the Consultant, the artificial limitation on the compensation of the Indenture Trustee's financial advisor be lifted, commencing with the period beginning April 1, 2014.

## CONCLUSION

WHEREFORE, the Indenture Trustee respectfully requests that the Court sustain this Objection and grant such further relief as the Court deems just and appropriate under the circumstances.

Dated: March 26, 2014

            **REED SMITH LLP**

            By: /s/ Richard A. Robinson
            Richard A. Robinson
            1201 N. Market Street, Suite 1500
            Wilmington, DE 19801
            Telephone: (302) 778-7500
            Facsimile: (302) 778-7575

            -and-

            **FOLEY & LARDNER LLP**
            Harold L. Kaplan
            Mark F. Hebbeln
            321 North Clark Street, Suite 2800
            Chicago, IL 60654-5313
            Telephone: (312) 832-4500
            Facsimile: (312) 832-4700

            *Counsel to Wells Fargo Bank, National Association, as Indenture Trustee and Collateral Agent*