# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                            :

In re:                         :    Chapter 11
                            :

EXIDE TECHNOLOGIES,       :    Case No. 13-11482 (KJC)
                            :

         Debtor.[1]       : 
                            :    **Related Docket Nos. 3409**
                            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING FOURTH AMENDED PLAN OF REORGANIZATION OF EXIDE TECHNOLOGIES

Upon the December 4, 2014 motion (the "Solicitation Procedures Motion") [Docket No. 2714] of Exide Technologies ("Exide," the "Debtor" or, as applicable after the Effective Date, the "Reorganized Debtor") filed with the Bankruptcy Court for the District of Delaware (this "Court"), for entry of an order (A) approving the adequacy of the Debtor's Second Amended Disclosure Statement (as amended from time to time and including all exhibits and supplements thereto, the "Disclosure Statement") with respect to the Second Amended Plan of Reorganization of Exide Technologies, (B) approving solicitation and notice procedures with respect to Confirmation of the Plan ("Confirmation"), (C) approving the form of various ballots and notices in connection with Confirmation, including (I) the notice of procedures for filing objections to the Plan, and (II) the form and manner of notice of the confirmation hearing (the "Confirmation Hearing Notice"), and (D) scheduling certain dates with respect to Confirmation; and upon the order entered on February 4, 2015 granting the Solicitation Procedures Motion [Docket No. 3092] (the "Disclosure Statement Order"); and upon the order entered on February

---

[1]    The last four digits of the Debtor's taxpayer identification number are 2730. The Debtor's corporate headquarters are located at 13000 Deerfield Parkway, Building 200, Milton, Georgia 30004.

4, 2015 approving, among other things, certain procedures associated with the Rights Offering (the "Rights Offering Procedures") and the distribution of materials in connection therewith [Docket No. 3088] (the "Rights Offering Procedures Order"); and the Debtor having filed with the Court the Fourth Amended Plan of Reorganization of Exide Technologies [Docket No. 3409] as amended or modified from time to time, together with all exhibits and supplements thereto, including the Plan Supplement (as defined below) the "Plan");[2] and the Debtor having filed with the Court certain exhibits to the Plan; and the Court on March 27, 2015 having held a hearing pursuant to section 1129 of the Bankruptcy Code to consider Confirmation (the "Confirmation Hearing"); and the Court having considered the Debtor's Memorandum of Law (i) in Support of Confirmation of the Second Amended Plan of Reorganization of Exide Technologies and (ii) in Response to Objections Thereto, filed by the Debtor on March 24, 2015 [Docket No. 3361] (the "Confirmation Brief"), the Declaration of Robert M. Caruso In Support of the Third Amended Plan of Reorganization of Exide Technologies [Docket No. 3373] (the "Caruso Declaration"), the Declaration of Daniel Aronson In Support of the Third Amended Plan of Reorganization of Exide Technologies [Docket No. 3374] (the "Aronson Declaration"), the Declaration of Ed Mosley In Support of the Third Amended Plan of Reorganization of Exide Technologies [Docket No. 3372], and the Declaration of Craig E. Johnson of the Garden City Group, LLC Certifying the Methodology for the Tabulation of Votes On and Results of Voting With Respect to the Second Amended Plan of Reorganization of Exide Technologies [Docket No. 3381] (the "Voting Certification"), each filed by the Debtor in advance of the Confirmation Hearing; the Court having admitted into the record and considered evidence at the Confirmation Hearing; the Court

---

[2]   Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such terms in the Plan, a copy of which is annexed hereto as Exhibit A.

having overruled any and all unresolved objections to Confirmation of the Plan; the Court having

taken judicial notice of the contents of the docket of the Chapter 11 Case (defined below)

maintained by the clerk of the Bankruptcy Court of the District of Delaware (the "Clerk of the

Court") and/or its duly-appointed agent, including all pleadings and other documents filed, all

orders entered thereon, all hearing transcripts, and all evidence and arguments made, proffered,

or adduced at the hearings held before the applicable court during the pendency of the Chapter

11 Case; and after due deliberation thereon and good and sufficient cause appearing therefor,

It hereby is DETERMINED, FOUND, ADJUDGED, DECREED AND

ORDERED THAT:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[3]

A.     Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and

1334(a)).  This Court has jurisdiction over the above-captioned chapter 11 case (the "Chapter 11

Case") pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper before this Court pursuant to 28

U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. §

157(b)(2)(L), and this Court has jurisdiction to determine whether the Plan complies with the

applicable provisions of title 11 of the United States Code (the "Bankruptcy Code") and should

be confirmed.

B.     Eligibility for Relief.  The Debtor was and is an Entity eligible for relief

under section 109 of the Bankruptcy Code.

C.     Commencement and Administration of the Chapter 11 Case.  On June 10,

2013, the Debtor commenced the Chapter 11 Case (the "Petition Date").  The Debtor has

---

[3]     Each finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law,
shall also constitute a conclusion of law.  Each conclusion of law set forth or incorporated herein, to the extent it
is or may be deemed a finding of fact, shall also constitute a finding of fact.

operated its businesses and managed its properties as a debtor in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code. No trustee has been appointed in the Chapter 11 Case.

D. Filing of Plan and Plan Exhibits. On November 17, 2014, the Debtor filed the Plan of Reorganization of Exide Technologies [Docket No. 2632] and the Disclosure Statement with Respect to the Plan of Reorganization of Exide Technologies [Docket No. 2631]. On January 30, 2015, the Debtor filed the First Amended Plan of Reorganization of Exide Technologies [Docket No. 3060] and the First Amended Disclosure Statement with Respect to the First Amended Plan of Reorganization of Exide Technologies [Docket No. 3061]. On February 4, 2015, the Debtor filed the Second Amended Plan of Reorganization of Exide Technologies [Docket No. 3078] and the Second Amended Disclosure Statement with Respect to the Second Amended Plan of Reorganization [Docket No. 3079]. On February 5, 2015, the Debtor filed a modified Second Amended Plan of Reorganization of Exide Technologies [Docket No. 3096] and modified Second Amended Disclosure Statement with Respect to the Second Amended Plan of Reorganization [Docket No. 3095]. On March 25, 2015, the Debtor filed the Third Amended Plan of Reorganization of Exide Technologies [Docket No. 3369]. On March 27, the Debtor filed the Fourth Amended Plan of Reorganization of Exide Technologies [Docket No. 3409]. On March 4, March 25, and March 26, 2015, the Debtor filed certain components of the Plan Supplement, which collectively contained Exhibits 2.1, 6.2(b), 6.2(c), 6.9, 6.12, 6.16, 6.17, 7.1, 7.3, 8.1 and 9.1 (as modified) to the Plan. The Plan Supplement complies with the terms of the Plan, and the filing and notice of the Plan Supplement materials were good and proper, and in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order, and no other or further notice is or shall be required. Following entry of this

Confirmation Order, the Debtor is authorized to modify the Plan, including the Plan Supplement, with the consent of the Required Consenting Creditors, the Requisite Backstop Parties, and the Creditors' Committee (solely to the extent it effects the GUC Trust Settlement Agreement), not to be unreasonably withheld, pursuant to section 1127(b) of the Bankruptcy Code.

E.    Transmittal of Solicitation Package. On or before February 11, 2015, the Debtor, through its solicitation agent, The Garden City Group, LLC (the "Administrative Agent"), caused the applicable forms of ballots in the forms attached to the Disclosure Statement Order (as modified, collectively, the "Ballots") and the Solicitation Packages (as set forth in the Disclosure Statement Order) to be served and distributed as required by the Disclosure Statement Order, section 1125 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the local rules for this Court (the "Local Rules"), all other applicable provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations applicable to such solicitation, all as set forth in the Affidavit of Service of Andrew Weissman regarding service of solicitation materials filed on February 13, 2015 [Docket No. 3131] (the "Weissman Solicitation Affidavit"). The Solicitation Packages were transmitted to all creditors entitled to vote on the Plan and sufficient time was prescribed for creditors to accept or reject the Plan. The Debtor was excused from mailing Solicitation Packages to those Entities to whom the Debtor mailed a notice regarding the Disclosure Statement Hearing and received a notice from the United States Postal Service or other carrier that such notice was undeliverable unless such Entity provided the Debtor, through the Administrative Agent, with an accurate address not less than ten (10) days prior to the Solicitation Mailing Deadline. If an Entity changed its mailing address after the Petition Date, the burden was on such Entity, and not the Debtor, to advise the Debtor and the Administrative Agent of the new address. The transmittal and service of the Solicitation Packages and Ballots

was adequate and sufficient under the circumstances and no other or further notice is or shall be required.

      F.     The Rights Offering Procedures and materials for distribution in connection therewith approved by this Court in the Rights Offering Procedures Order were transmitted to and served on all Holders that were entitled to participate in the Rights Offering. The transmittal and service of such documents was adequate and sufficient, and no further notice is or shall be required. Notice of the Senior Notes A2 Rights Offering Election transmitted through the DTC in form and substance substantially similar to <u>Exhibit C</u> attached hereto shall be adequate and sufficient and no further notice shall be required.

      G.     <u>Mailing and Publication of Notice</u>. As described herein and as evidenced by the Weissman Solicitation Affidavit, due, adequate and sufficient notice of the Plan and the Confirmation Hearing, together with all deadlines for voting on or objecting to the Plan was given in compliance with the Bankruptcy Code and the Bankruptcy Rules. The Debtor, through the Administrative Agent, caused the Confirmation Hearing Notice to be mailed to all (a) known Holders of Claims and Interests, (b) parties that requested notice in accordance with Bankruptcy Rule 2002, and (c) all other parties included in the Debtor's creditor and notice party matrix. The Debtor also published the Confirmation Hearing Notice in: (i) The Wall Street Journal (National Edition), the New York Times (National Edition), the Atlanta-Journal Constitution, and the Los Angeles Times on February 12, 2015; (ii) the Vernon Sun and La Opinión (in Spanish) on February 13, 2015, and (iii) the West Covina Highlander on February 14, 2015, in compliance with the Disclosure Statement Order and Bankruptcy Rule 2002(l). <u>See</u> the Certificate of Publication of Nina H. Brody filed on March 10, 2015 [Docket No. 3238]. Thus,

the Debtor has given proper, adequate and sufficient notice of the Confirmation Hearing and no other or further notice is or shall be required.

H. <u>Solicitation</u>. Votes on the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Disclosure Statement Order, the local rules of this Court, all other applicable provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations applicable to such solicitation. Pursuant to the Solicitation Procedures (as defined in the Disclosure Statement Order), the Debtor transmitted Solicitation Packages (as defined in the Disclosure Statement Order) to the banks, brokers, dealers, trust companies, or other holders of record (the "<u>Holders of Record</u>") (or their mailing agents) of the Senior Notes.

I. The Debtor received votes to accept or reject the Plan from forty nine (49) Holders of Record on behalf of Class A Claims. The Holders of approximately 83% in principal amount of the Senior Notes Claims voted in favor of the Plan and consented to the treatment of the Senior Notes proposed in the Plan, including the treatment of the Noteholder Adequate Protection Obligations.

J. Pursuant to the Vernon Tort Claims Term Sheet, the Holders of Class F Vernon Tort Claims listed on Exhibit A to the Amended Verified Statement of Brown Rudnick LLP and the Rosner Law Group LLC Pursuant to Bankruptcy Rule 2019 [Docket No. 3386] (the "<u>Vernon Tort Claims Settlement Parties</u>") who submitted valid votes (through their counsel) to reject the Plan agreed to amend their previously-submitted votes and vote to accept the Plan. Pursuant to section 3018 of the Bankruptcy Code, good and sufficient cause has been shown for such Holders to change their votes, and such votes have been validly changed to votes to accept the Plan in accordance with the Disclosure Statement Order.

K.      Senior Notes Stock Election. Under the Plan, Holders of Class A Claims were required to certify as to whether or not such Holder is an Eligible Holder. Because solicitation of, and voting by, Class A Holders was accomplished through Holders of Record, it is difficult, if not impossible, to verify the accuracy of the Eligible Holder Certifications of Class A1. Because there are only forty nine (49) Holders of Record from which the Debtor received votes on behalf of Class A Claims, the Debtor, in good faith, elected to provide Class A2 Holders with the option to receive New Exide Common Stock as part of their distribution in lieu of Senior Notes Alternative Distribution Deferred Payments.

L.      Good Faith Solicitation (11 U.S.C. § 1125(e)). All persons within the definition of Exculpated Parties who solicited votes on the Plan are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code as well as the exculpation and limitation of liability provisions set forth in Articles 12.9 and 12.10 of the Plan.

M.      Voting Certification. On March 25, 2015, the Administrative Agent filed the Voting Certification, certifying the method and results of the ballot tabulation for each of the Classes entitled to vote under the Plan, Classes A, B, D, E, F (the "Voting Classes"). As evidenced by the Voting Certification, Classes A, B, D, E, and F have accepted the Plan in accordance with section 1126 of the Bankruptcy Code.

N.      Plan Modifications. Subsequent to solicitation, the Debtor made certain modifications to its plan of reorganization as reflected in the Plan. All such modifications, including the modifications related to the Vernon Tort Claims Term Sheet, since the entry of the Disclosure Statement Order are consistent with all of the provisions of the Bankruptcy Code, including sections 1122, 1123, 1125, and 1127 of the Bankruptcy Code. None of the aforementioned modifications, including the modifications as set forth in the Vernon Tort Claims

Term Sheet, materially adversely affects the treatment of any Holder of a Claim or Interest under the Plan. Accordingly, pursuant to section 1127(a) of the Bankruptcy Code, none of the modifications require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code. Prior notice regarding the substance of any modifications to the Plan, together with the filing with the Bankruptcy Court of the Plan as modified, and the disclosure of the Plan modifications on the record at or prior to the Confirmation Hearing constitute due and sufficient notice of any and all such modifications. Further, in accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims or Interests who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified by the Plan modifications. No Holder of a Claim or Interest shall be permitted to change its vote as a consequence of the Plan modifications unless otherwise agreed to by the Holder of the Claim or Interest and the Debtor. The modifications to the Plan are hereby approved, pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. The Plan as modified shall constitute the Plan submitted for Confirmation.

O.    Bankruptcy Rule 3016. The Plan is dated and identifies the Entity submitting it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement with the Clerk of the Court satisfied Bankruptcy Rule 3016(b).

P.    Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The Plan satisfies section 1129(a)(1) of the Bankruptcy Code because it complies with the applicable provisions of the Bankruptcy Code, including, but not limited to: (a) the proper classification of Claims and Interests (11 U.S.C. §§ 1122, 1123(a)(1)); (b) the specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2)); (c) the specification of treatment of Impaired Classes (11

U.S.C. § 1123(a)(3)); (d) provision for the same treatment of each Claim or Interest within a Class (11 U.S.C. § 1123(a)(4)); (e) provision for adequate and proper means for implementation (11 U.S.C. § 1123(a)(5)); (f) the prohibition against the issuance of non-voting equity securities (11 U.S.C. § 1123(a)(6)); (g) adequate disclosure of the procedures for determining the identities and affiliations of the members, officers, and GUC Trust Trustee with respect to the Reorganized Debtor and the GUC Trust (11 U.S.C. § 1123(a)(7)); and (h) additional plan provisions permitted to effectuate the restructuring of the Chapter 11 Case (11 U.S.C. § 1123(b)).

(a)     Proper Classification (11 U.S.C. §§1122 and 1123(a)(1)).  The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code.  In accordance with sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan adequately and properly identifies and classifies all Claims and Interests (other than Administrative Claims, DIP Facility Claims, Professional Claims, and Priority Tax Claims, which are addressed in Article II of the Plan, and which are not required to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code).  The Plan provides for the separate classification of Claims and Interests into nine (9) Classes, based on differences in the legal nature or priority of such Claims and Interests.  Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims and Interests within that Class, and such classification therefore satisfies section 1122 of the Bankruptcy Code.  Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Interests under the Plan, the classifications were not made for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among Holders of Claims or Interests.  Accordingly, the requirements of section 1123(a)(1) of the Bankruptcy Code are satisfied.

(b)     Specified Treatment of Unimpaired Classes (11 U.S.C. § 1123(a)(2)).  The Plan specifies in Article III that Classes C and G are Unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(c)     Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).  The Plan specified in Article III that Classes A, B, D, E, F, H, and I are Impaired under the Plan, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(d)     No Discrimination (11 U.S.C. § 1123(a)(4)).  Article III of the Plan provides for the same treatment for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.  Accordingly the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

(e)     Implementation of the Plan (11 U.S.C. § 1123(a)(5)).  Article VI of the Plan provides for adequate and proper means for implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

(f)     Nonvoting Equity Securities (11 U.S.C. § 1123(a)(6)).  Article 6.12 of the Plan provides that the organizational documents of the Reorganized Debtor shall be amended as may be required so that they are consistent with the provisions of the Plan and otherwise comply with section 1123(a)(6) of the Bankruptcy Code.  The Amended and Restated Certificate of Incorporation of Exide Technologies provides for the prohibition of the issuance of non-voting equity securities pursuant to and to the extent required by section 1123(a)(6) of the Bankruptcy Code, as set forth in Exhibit 6.12-1 of the Plan.  Accordingly, the Plan satisfies section 1123(a)(6) of the Bankruptcy Code.

(g)     Selection of Officers and Directors (11 U.S.C. § 1123(a)(7)).  Articles 6.13 and 6.16 of the Plan set forth the manner of selection of the directors and officers of

the Reorganized Debtor. The Debtor has properly and adequately disclosed or otherwise identified the procedures for determining the identity and affiliations of all individuals proposed to serve on or after the Effective Date as officers or directors of the Reorganized Debtor. The appointment, employment, or manner of selection of such individuals or entities and the proposed compensation and indemnification arrangements for officers and directors are consistent with the interests of Holders of Claims and Interests and with public policy. Thus, section 1123(a)(7) of the Bankruptcy Code is satisfied.

(h)     Additional Plan Provisions (11 U.S.C. §1123(b)). The Plan's additional provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including, without limitation, provisions for (i) the general settlement of Claims and Interests, (ii) distributions to Holders of Claims, (iii) the disposition of Executory Contracts and Unexpired Leases, (iv) the retention of, and the right to enforce, sue on, settle, or compromise (or refuse to do any of the foregoing with respect to) certain claims or causes of action against third parties, to the extent not waived and released under the Plan or this Confirmation Order (except GUC Trust Causes of Action), (v) the issuance of New First Lien High Yield Notes, New Second Lien Convertible Notes, and New Exide Common Stock, (vi) vesting of assets in the Reorganized Debtor, (vii) transferring and vesting GUC Trust Assets to the GUC Trust; (viii) implementation of the MIP, (ix) authorization for entering into the restructuring transactions; (x) indemnification obligations, (xi) releases by the Debtor of the Released Parties, (xii) releases by the Holders of Claims and Interests, as approved herein, of the Released Parties and (xiii) the exculpation of the Exculpated Parties.

Q.     Debtor's Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Debtor has complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy

Rules, the Disclosure Statement Order, and other orders of this Court, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.

R.      <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Debtor has proposed the Plan in good faith and not by any means forbidden by law. In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Case, the formulation and negotiation of the Plan and all modifications thereto. The Chapter 11 Case was filed, and the Plan and all modifications thereto were proposed, with the legitimate and honest purpose of reorganizing and maximizing the value of the Debtor and the recovery to Claim Holders. Therefore, the Debtor has proposed the Plan in good faith and not by any means forbidden by law, and section 1129(a)(3) of the Bankruptcy Code is satisfied with respect to the Plan.

S.      <u>Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>. Any payment made or to be made by the Debtor for services or for costs and expenses in connection with the Chapter 11 Case, including administrative expense and substantial contribution claims under sections 503 and 507 of the Bankruptcy Code, or in connection with the Plan and incident to the Chapter 11 Case, either has been approved by or is subject to the approval of the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

T.      <u>Board of Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>. The Debtor has complied with section 1129(a)(5) of the Bankruptcy Code. Specifically, the Debtor has disclosed (a) the identity and the affiliation of certain individuals proposed to serve on or after the Effective Date as officers or directors of the Reorganized Debtor and (b) the process for the selection of the directors of the Reorganized Debtor, which is hereby approved. Additionally,

the Debtor filed Plan Exhibit 6.16 (Management Incentive Plan Term Sheet). Accordingly, section 1129(a)(5) of the Bankruptcy Code is satisfied with respect to the Plan.

U.      No Rate Changes (11 U.S.C. § 1129(a)(6)). Section 1129(a)(6) of the Bankruptcy Code is satisfied because the Plan does not provide for any change in rates over which a governmental regulatory commission has jurisdiction.

V.      Best Interests Test (11 U.S.C. § 1129(a)(7)). The liquidation analysis attached as Exhibit C to the Disclosure Statement, the Mosley Declaration, and other evidence proffered or adduced at the Confirmation Hearing (1) are persuasive and credible, (2) are based upon reasonable and sound assumptions, (3) provide a reasonable estimate of the liquidation values of the Debtor upon hypothetical conversion to a case under chapter 7 of the Bankruptcy Code, and (4) establish that each Holder of a Claim or Interest in an Impaired Class that has not accepted the Plan will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on such date. Therefore, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

W.      Acceptance By Certain Classes (11 U.S.C. § 1129(a)(8)). Classes C and G are Unimpaired by the Plan and therefore, under section 1126(f) of the Bankruptcy Code, such Classes are conclusively presumed to have accepted the Plan. Classes A, B, D, E, and F have voted to accept the Plan. All other Classes have voted to reject or have been deemed to reject the Plan and, therefore, section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to these Classes. Accordingly, Confirmation is sought pursuant to section 1129(b) of the Bankruptcy Code.

X.    Treatment of Administrative Claims, Priority Tax Claims and Other Priority Claims (11 U.S.C. § 1129(a)(9)).  The treatment of Administrative Claims and Other Priority Claims under the Plan satisfies the requirements of section 1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment of Priority Tax Claims under the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.  On the Effective Date, the Holders of DIP Facility Claims will receive Cash equal to the Allowed amount of such Claims or have agreed to the treatment provided for in the Plan, and thus treatment of the DIP Facility Claims satisfies section 1129(a)(9) of the Bankruptcy Code.

Y.    Acceptance By Impaired Class (11 U.S.C. § 1129(a)(10)).  At least one Impaired Class of Claims in the Chapter 11 Case voted to accept the Plan determined without including any acceptance of the Plan by any "insiders."  Therefore, section 1129(a)(10) of the Bankruptcy Code is satisfied with respect to the Plan.

Z.    Feasibility (11 U.S.C. § 1129(a)(11)).  The Plan does not provide for the liquidation of all or substantially all of the property of the Debtor.  The Caruso Declaration, the financial projections in Exhibit B to the Disclosure Statement, and the evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other credible evidence or sufficiently challenged in any of the objections to the Plan, and (iii) establish that the Plan is feasible and that Confirmation is not likely to be followed by the liquidation of the Reorganized Debtor or the need for further financial reorganization of the Reorganized Debtor.  Therefore, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

AA.  Payment of Fees (11 U.S.C. § 1129(a)(12)).  The Debtor has paid or, pursuant to the Plan, will pay by the Effective Date, fees payable under 28 U.S.C. § 1930, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

BB.  Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).  Section 6.16(c) of the Plan provides that, after the Effective Date, subject to the Reorganized Debtor's rights, if any, under applicable non-bankruptcy law, unless otherwise ordered by the Bankruptcy Court, the Reorganized Debtor shall continue to pay all retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114 of the Bankruptcy Code, at any time prior to Confirmation, for the duration of the period the Debtor has obligated itself to provide such benefits, thereby satisfying section 1129(a)(13) of the Bankruptcy Code.

CC.  Section 1129(b); Confirmation of The Plan Over Nonacceptance of Impaired Classes.  Classes H and I are deemed to reject the Plan.  Pursuant to section 1129(b) of the Bankruptcy Code, the Plan may be confirmed notwithstanding that not all Impaired Classes have voted to accept the Plan.  All of the requirements of section 1129(a) of the Bankruptcy Code with respect to such Classes, other than section 1129(a)(8), have been met.  With respect to Classes H, and I, no Holders of Claims or Interests junior to the Holders of such Classes will receive or retain any property under the Plan on account of such Claims or Interests. Additionally, no Class of Claims or Interests is receiving property under the Plan having a value more than the Allowed amount of such Claim or Interest.  Accordingly, the Plan is fair and equitable and does not discriminate unfairly, as required by section 1129(b) of the Bankruptcy Code, and may be confirmed under Bankruptcy Code section 1129(b) notwithstanding their rejection or deemed rejection of the Plan.

DD.     <u>Principal Purpose of Plan (11 U.S.C. § 1129(d))</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 (15 U.S.C. § 77e). Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

EE.     <u>Plan Settlements</u>. In accordance with Bankruptcy Rule 9019, the Plan is dependent upon and incorporates the terms of compromises and settlements (the "<u>Plan Settlements</u>"), which include, among others, the GUC Trust Settlement. The Plan Settlements are interrelated and interdependent settlements which, together with the other provisions of the Plan, constitute a global settlement of all issues and disputes between and among the Debtor and its major constituents. The Plan Settlements, including the GUC Trust Settlement, are fair, equitable, reasonable, and appropriate in light of the facts and circumstances, and are in the best interests of the Debtor, the Estate, and the Holders of Claims and Interests.

FF.     <u>Issuance of New Notes</u>. Issuance of the New First Lien High Yield Notes and the New Second Lien Convertible Notes are essential elements of the Plan and are in the best interests of the Debtor, its Estate, and Holders of Claims and Interests. The Debtor is authorized, without further approval of this Court or any other party, to issue the New First Lien High Yield Notes and New Second Lien Convertible Notes in accordance with the Plan and to execute and deliver all agreements, documents, instruments and certificates relating thereto.

GG.     <u>Issuance of New Exide Common Stock</u>. Issuance of the New Exide Common Stock is an essential element of the Plan and is in the best interests of the Debtor, its Estate, and Holders of Claims and Interests. The Debtor is authorized, without further approval of this Court or any other party, to issue the New Exide Common Stock in accordance with the

Plan and to execute and deliver all agreements, documents, instruments and certificates relating thereto.

HH.     Exit ABL Revolver Facility.  The Exit ABL Revolver Facility is an essential element of the Plan, and entry into the Exit ABL Revolver Facility is in the best interests of the Debtor, its Estate, and its creditors.  The Debtor has exercised sound business judgment in determining to enter into the Exit ABL Revolver Facility and has provided adequate notice thereof.  The Exit ABL Revolver Facility has been negotiated in good faith and at arm's length among the Debtor and the lenders thereto (the "Exit ABL Lenders"), and any credit extended and loans made to the Reorganized Debtor by the Exit ABL Lender pursuant to the Exit ABL Revolver Facility, and any fees paid thereunder are deemed to have been extended, issued, and made in good faith.

II.     Distributions of Securities Are Subject to Exemptions.  The offering, issuance, and distribution of any securities pursuant to the Plan, including the offering, issuance, and distribution of the New First Lien High Yield Notes, the New Second Lien Convertible Notes, the Senior Notes Alternative Distribution Deferred Payments, the New Exide Common Stock, the interests of the beneficiaries of the GUC Trust, and the interests of the beneficiaries of the Vernon Tort Claims Trust, to the extent they constitute securities, are subject to or made in good faith and in reliance upon exemptions from the requirements of section 5 of the Securities Act and any state or local laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker dealing in, a security pursuant to section 1145(a) of the Bankruptcy Code ("Section 1145"), section 4(a)(2) of the Securities Act ("Section 4(a)(2)"), or any other available exemption  from registration under the Securities Act, as applicable.

JJ.     Executory Contracts.  The Debtor has exercised reasonable business judgment in determining whether to assume or reject its executory contracts (including licenses) and unexpired leases pursuant to Article IX of the Plan.  Each assumption or rejection of an executory contract or unexpired lease (including licenses) pursuant to Article IX of the Plan and Exhibit 9.1 thereto shall be legal, valid and binding upon the Debtor or Reorganized Debtor and their assignees or successors and all non-debtor parties (and their assignees or successors) to such executory contract or unexpired lease, all to the same extent as if such assumption or rejection had been effectuated pursuant to an order of the Court entered before the Confirmation Date under section 365 of the Bankruptcy Code.

KK.     Adequate Assurance.  The Debtor has cured, or provided adequate assurance that the Reorganized Debtor or its successors or assignees will cure, defaults (if any) under or relating to each of the executory contracts and unexpired leases that are being assumed by the Debtor pursuant to the Plan.  In addition, the Debtor has provided adequate assurance of future performance regarding the executory contracts and unexpired leases that are being assumed by the Debtor as contemplated pursuant to section 365(b)(1)(C) of the Bankruptcy Code.

LL.     Releases and Discharges.  The discharge, release, and exculpation provisions described in Article XII of the Plan, including Sections 12.2, 12.3, 12.4, 12.6, 12.7 and 12.9, constitute good faith compromises and settlements of the matters covered thereby, are otherwise approved by this Court as appropriate pursuant to applicable law, and/or are consensual.  Such compromises and settlements are (i) made in exchange for adequate consideration, (ii) in the best interests of the Debtor, its Estate, Claim Holders and other parties in interest, (iii) fair, equitable and reasonable, and (iv) integral elements of the restructuring and resolution of the Chapter 11 Case in accordance with the Plan.  Each of the discharge, release,

injunction, indemnification and exculpation provisions set forth in the Plan: (a) is within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), (b), and (d); (b) is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (c) is an integral element of the transactions incorporated into the Plan; (d) confers a material benefit on, and is in the best interests of, the Debtor, its Estate, and the Holders of Claims; (e) is important to the overall objectives of the Plan to finally resolve all Claims and Interests among or against the parties-in-interest in the Chapter 11 Case with respect to the Debtor, its organization, capitalization, operation, and reorganization; and (f) is consistent with sections 105, 1123, 1129, and other applicable provisions of the Bankruptcy Code. The failure to effect the discharge, releases, and exculpation provisions set forth in the Plan, as approved by this Confirmation Order, would seriously impair the Debtor's ability to confirm and implement the Plan.

MM.     <u>Consummation of the Backstop Commitment Agreement and the Rights Offering</u>.  Without limiting, impairing, or modifying any previous order of this Court approving or governing the Rights Offering, the Backstop Commitment Agreement, or the rights of the Backstop Parties, the proposed terms and conditions of the Rights Offering, the Senior Notes A2 Rights Offering, and Backstop Commitment Agreement are fair and reasonable and are in the best interests of the Debtor, its Estate, and the Holders of Claims and Interests, and do not conflict with applicable law. The Backstop Commitment Agreement, the Rights Offering, and the Senor Notes A2 Rights Offering were negotiated at arm's length and in good faith, including in connection with the offer, issuance and sale of New Second Lien Convertible Notes pursuant thereto, and the payment of the fees and reimbursement of expenses contemplated thereby.

NN.     <u>Plan Conditions to Confirmation</u>.  Any and all conditions to Confirmation set forth in the Plan have been satisfied or waived in accordance with the terms of the Plan.

OO.     Plan Conditions to Consummation.  Each of the conditions to the Effective Date, as set forth in Section 13.1 of the Plan, is reasonably likely to be satisfied or waived in accordance with the terms of the Plan.

PP.     Judicial Notice.  The Court takes judicial notice of the docket of the Chapter 11 Case maintained by the Clerk of the Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Case.

QQ.     Burden of Proof.  The Debtor, as proponent of the Plan, has met its burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard.  This Court also finds that the Debtor has satisfied the elements of sections 1129(a) and (b) of the Bankruptcy Code under the clear and convincing standard of proof.

RR.     Retention of Jurisdiction.  This Court properly may retain jurisdiction over the matters set forth in Article XIV of the Plan.

SS.     Waiver of Stay.  Under the circumstances, it is appropriate that the 14-day stay imposed by Bankruptcy Rules 3020(e) and 7062(a) be waived.

## DECREES

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

### Confirmation of Plan

1.     Confirmation.  The Plan, attached hereto as Exhibit A, including all Exhibits attached thereto or included in the Plan Supplement, is approved and confirmed under

section 1129 of the Bankruptcy Code. The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.

2.      Notice. Notice of the Plan, its exhibits, and all amendments and modifications thereto, the Disclosure Statement and the Solicitation Packages was proper and adequate.

3.      Objections. All Objections and all reservations of rights that have not been withdrawn, waived, or settled, pertaining to the Confirmation of the Plan are overruled on the merits.

4.      Effectiveness of All Actions. All actions contemplated by the Plan, including in connection with the Backstop Commitment Agreement, the Rights Offering, and the Senior Notes A2 Rights Offering are hereby authorized and approved in all respects (subject to the provisions of the Plan). The approvals and authorizations specifically set forth in this Confirmation Order are nonexclusive and are not intended to limit the authority of the Debtor or the Reorganized Debtor or any officer or director thereof to take any and all actions necessary or appropriate to implement, effectuate and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order. Pursuant to this Confirmation Order and applicable law and consistent with the Plan, the Debtor and the Reorganized Debtor are authorized and empowered, without action of their respective stockholders or further action of the members or boards of directors or managers, to take any and all such actions as any of their executive officers may determine are necessary or appropriate to implement, effectuate and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order.

5.     <u>Vesting of Assets and Operation as of the Effective Date</u>.  Except as otherwise explicitly provided in the Plan, on the Effective Date, all property comprising the Estate (including Causes of Action, but excluding the GUC Trust Assets and property that has been abandoned pursuant to an order of the Bankruptcy Court) shall vest in the Reorganized Debtor which, as Debtor, owned such property or interest in property as of the Effective Date, free and clear of all Claims, Liens, charges, encumbrances, rights, and Interests.  As of and following the Effective Date, the Reorganized Debtor may operate its business and use, acquire, and dispose of property and settle and compromise Claims, Interests, or Causes of Action (excluding the GUC Trust Assets) without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or this Confirmation Order.

6.     <u>Exit ABL Revolver Facility</u>.  The Debtor and the Reorganized Debtor are authorized in all respects, without further approval of the Bankruptcy Court or any other party, subject to the consent rights of the Consenting Creditors and Required Backstop Parties, to (a) execute and deliver, or cause to be executed and delivered, all agreements, documents, instruments, and certificates relating to the Exit ABL Revolver Facility (the "<u>Exit ABL Revolver Facility Documents</u>"), and to perform its obligations thereunder (including additional syndication of the Exit ABL Revolver Facility (if any)), including but, not limited to, any documents related to the loans and other extensions of credit contemplated by the Exit ABL Revolver Facility, any guarantees thereof and any other documents executed in connection therewith; (b) to grant Liens to secure such loans, other extensions of credit, and guarantees; (c) borrow under such Exit ABL Revolver Facility Documents and use the proceeds of such borrowings for any purpose permitted thereunder, and (d) perform all of its obligations under the Exit ABL Revolver Facility

Documents, including the payment of all fees, expenses, losses, damages, indemnities and other amounts (including any applicable refinancing premiums and applicable exit fees) provided under the Exit ABL Revolver Facility Documents. As of the Effective Date, without any further action by the Court or the directors, officers, managers, members, or stockholders of the Reorganized Debtor, the Liens and security interests granted pursuant to the Exit ABL Revolver Facility Documents will constitute legal, valid and enforceable Liens and security interests in the collateral (as defined in the Exit ABL Revolver Facility Documents and any other documents to be executed and delivered pursuant thereto) and such Liens and security interests will constitute legal, valid and binding obligations of the Reorganized Debtor. The holder(s) of Liens under the Exit ABL Revolver Facility Documents are authorized to file, with the appropriate authorities, financing statements and other documents (the "Exit ABL Perfection Documents") or to take possession of or control over, or to take any other action in order to evidence, validate and perfect such Liens or security interests. Subject in all cases to the terms and provisions of the Exit ABL Revolver Facility Documents, the Debtor and the Reorganized Debtor (or its affiliates) are authorized to execute and deliver to the Exit ABL Revolver Facility Lenders any such agreements, financing statements, instruments and other documents, or obtain all governmental approvals and consents the Exit ABL Revolver Facility Lenders may reasonably request or that are required to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and this Confirmation Order, and are authorized to cooperate to make all other filings and recordings that otherwise would be reasonably necessary under applicable law to perfect and/or give notice of such Liens and security interests to third parties. Whether the Exit ABL Perfection Documents are filed prior to, on or after the Effective

Date (i) such Exit ABL Perfection Documents will be valid, binding, enforceable and in full force and effect as of the Effective Date, and (ii) the Liens and security interests granted under or in connection with the Exit ABL Revolver Facility Documents will become valid, binding and enforceable obligations of the Reorganized Debtor as of the Effective Date. The granting of such Liens, the making of such loans and other extensions of credit and such guarantees, the payment of fees contemplated thereunder, and the execution and consummation of the Exit ABL Revolver Facility have been and are being undertaken in good faith, for legitimate business purposes, for reasonably equivalent value, and will be deemed not to constitute a fraudulent conveyance or fraudulent transfer, will not otherwise be subject to avoidance, or subject to recharacterization or subordination (including equitable subordination) for any purpose whatsoever under the Bankruptcy Code or any other applicable non-bankruptcy law, and the priorities of such Liens and security interests will be as set forth in the Exit ABL Revolver Facility Documents.

7.  Issuance of New Notes. Issuance of the New First Lien High Yield Notes and the New Second Lien Convertible Notes in accordance with the Plan is approved. The Debtor and the Reorganized Debtor, as applicable, are authorized and empowered, without further approval of this Court or any other party, to take such actions and to perform such acts as may be necessary, desirable, or appropriate to implement the issuance of the New First Lien High Yield Notes and the New Second Lien Convertible Notes in accordance with the Plan and to execute and deliver all agreements, documents, instruments, indentures, and certificates relating thereto (collectively, the "New Notes Documents," and together with the Exit ABL Facility Documents, the "Exit Financing Documents"). The loans and other extensions of credit contemplated by the New First Lien High Yield Notes and the New Second Lien Convertible Notes and the granting of Liens to secure such loans and other extensions of credit are approved

and authorized in all respects. The Reorganized Debtor is authorized to enter into collateral documents to secure the New First Lien High Yield Notes and the New Second Lien Convertible Notes. As of the Effective Date, without any further action by the Court or the directors, officers, managers, members, or stockholders of the Reorganized Debtor, the Liens and security interests granted pursuant to the New Notes Documents will constitute legal, valid and enforceable Liens and security interests in the collateral (as defined in the New Notes Documents and any other documents to be executed and delivered pursuant thereto) and such Liens and security interests will constitute legal, valid and binding obligations of the Reorganized Debtor. The holders of Liens under the New Notes Documents are authorized to file, with the appropriate authorities, financing statements and other documents (the "New Notes Perfection Documents") or to take possession of or control over, or to take any other action in order to evidence, validate and perfect such Liens or security interests. Subject in all cases to the terms and provisions of the New Notes Documents and only to the extent permitted by the Exit ABL Revolver Facility Documents, the Debtor and the Reorganized Debtor (or its affiliates) are authorized to execute and deliver to the Indenture Trustee(s) for the New First Lien High Yield Notes and the New Second Lien Convertible Notes (the "New Notes Trustees") any such agreements, financing statements, instruments and other documents, or obtain all governmental approvals and consents the New Notes Trustees may reasonably request or that are required to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and this Confirmation Order, and are authorized to cooperate to make all other filings and recordings that otherwise would be reasonably necessary under applicable law to perfect and/or give notice of such Liens and security interests to third parties. Whether the New Notes Perfection

Documents are filed prior to, on or after the Effective Date (i) such New Notes Perfection Documents will be valid, binding, enforceable and in full force and effect as of the Effective Date, and (ii) the Liens and security interests granted under or in connection with the New Notes Documents will become valid, binding and enforceable obligations of the Reorganized Debtor. The granting of such Liens, the making of such loans and other extensions of credit, the payment of fees contemplated thereunder, and the execution and consummation of the New Notes Documents have been and are being undertaken in good faith, for legitimate business purposes, for reasonably equivalent value, and will be deemed not to constitute a fraudulent conveyance or fraudulent transfer, will not otherwise be subject to avoidance, or subject to recharacterization or subordination (including equitable subordination) for any purpose whatsoever under the Bankruptcy Code or any other applicable non-bankruptcy law, and the priorities of such Liens and security interests will be as set forth in the New Notes Documents.

       8.    <u>Issuance of New Exide Common Stock</u>.  Issuance of the New Exide Common Stock in accordance with the Plan is approved.  The Debtor and the Reorganized Debtor, as applicable, are authorized and empowered, without further approval of this Court or any other party, to take such actions and to perform such acts as may be necessary, desirable, or appropriate to implement the issuance of the New Exide Common Stock in accordance with the Plan and to execute and deliver all agreements, documents, securities, instruments, and certificates relating thereto.  The New Exide Common Stock to be issued is hereby deemed issued as of the Effective Date regardless of the date on which it is actually distributed.  The New Exide Common Stock issued pursuant to the Plan shall be issued to the Holders of Record of the Senior Notes, and such Holders of Record shall be deemed to be the holders of record of New Exide Common Stock.  All New Exide Common Stock issued by the Reorganized Debtor

pursuant to the provisions of the Plan is hereby deemed to be duly authorized, validly issued, fully paid, and non-assessable.

9.      Senior Notes Stock Election.  Holders of Senior Notes Alternative Distribution Class Claims who have completed a Senior Notes Alternative Distribution Class Certification or who would otherwise qualify for a distribution pursuant to Article 4.1(b) of the Plan shall have thirty (30) days after the Effective Date (the "Senior Notes Stock Election Deadline") to make the Senior Notes Stock Election through DTC, pursuant to which such Holders shall receive in lieu of such Holder's Pro Rata share of the Senior Notes Alternative Distribution Deferred Payments under Article 4.1(b)(ii)(1)(A) of the Plan such Holder's Pro Rata share, based on the aggregate amount of Allowed Class A1 Claims and Allowed Class A2 Claims that make the Senior Notes Stock Election, of 10.0% of the New Exide Common Stock after giving effect to conversion of the New Second Lien Convertible Notes (prior to dilution on account of the MIP and any paid-in-kind interest accruing on the New Second Lien Convertible Notes prior to conversion).  If a Holder of Senior Notes Alternative Distribution Class Claims does not make a Senior Notes Stock Election by the Senior Notes Stock Election Deadline, and if such Holder completes a Senior Notes Alternative Distribution Class Certification in accordance with the terms of the Plan, such Holder shall receive its Pro Rata share of the Senior Notes Alternative Distribution Deferred Payments.

10.      Direction of Holders of Senior Notes Claims to Senior Notes Indenture Trustee.  A vote by a Holder of Senior Notes Claims to accept the Plan shall also constitute (i) a direction by such Holder to the Senior Notes Indenture Trustee, pursuant to section 6.05 of the Senior Notes Indenture, not to pursue payment of the Noteholder Adequate Protection Obligations beyond any payment provided in the Plan and (ii) a consent by such Holder,

pursuant to section 9.02 of the Senior Notes Indenture, to amendments to the Senior Notes Indenture to (a) waive payment of the Noteholder Adequate Protection Obligations beyond any payment provided in the Plan and (b) allow for release of the Lien securing the Noteholder Adequate Protection Obligations. Such amendments to the Senior Notes Indenture shall become effective as of the Effective Date of the Plan without any further action by any party.

11. <u>Consummation of the Backstop Commitment Agreement and the Rights Offering</u>. To the extent not authorized by previous order of this Court, the Debtor and the Reorganized Debtor are hereby authorized, without further notice to or action, order, or approval of this Court or any other person or Entity, to (a) perform under the Backstop Commitment Agreement, (b) execute and deliver any agreements, documents, instruments, and certificates relating to the Rights Offering, the Senior Notes A2 Rights Offering, and the Backstop Commitment Agreement that may be necessary or appropriate, including in connection with the offer, issuance, or sale of New Second Lien Convertible Notes pursuant thereto, and (c) consummate the transactions contemplated by the Backstop Commitment Agreement in accordance with the terms thereof. To the extent due and payable, the fees payable to the Backstop Commitment Parties and professionals for the Unofficial Noteholder Committee, including fees payable pursuant to the Backstop Commitment Agreement and fees incurred in connection with closing and implementation of the Plan (whether incurred prior to or after the Effective Date), shall be entitled to priority as administrative expense claims under sections 503(b) and 507 of the Bankruptcy Code payable without further order of this Court and shall be paid when due in accordance with the terms of the Backstop Commitment Agreement.

12. <u>Exemptions from Registration</u>. The Debtor is offering, issuing, and distributing Securities pursuant to the Plan, including offering, issuing, and distributing New

First Lien High Yield Notes, New Second Lien Convertible Notes, Senior Notes Alternative Distribution Deferred Payments, and New Exide Common Stock in good faith reliance upon exemption from the registration requirements of the Securities Act and similar state statutes pursuant to and subject to Section 1145 and Section 4(a)(2) as follows:

(a)     The Debtor is authorized to issue New First Lien High Yield Notes on account of DIP Term Loan Claims, as contemplated by the Plan, in good faith reliance upon exemption from registration under the Securities Act under Section 4(a)(2).

(b)     The Debtor is authorized to issue New Second Lien Convertible Notes on account of DIP Term Loan Claims, as contemplated by the Plan, is in good faith reliance upon exemption from registration under the Securities Act under Section 4(a)(2).

(c)     The Debtor is authorized to issue New First Lien High Yield Notes and New Exide Common Stock for the DIP/Second Lien Conversion Option Funding Fee, as contemplated by the Plan, in good faith reliance upon exemption from registration under the Securities Act under Section 4(a)(2).

(d)     The Debtor is authorized to issue New Exide Common Stock for the DIP/Second Lien Conversion Option Backstop Fee, as contemplated by the Plan, in good faith reliance upon exemption from registration under the Securities Act under Section 4(a)(2).

(e)     The issuance of New Exide Common Stock to Class A Holders on account of their Senior Notes Claims, as contemplated by the Plan, is exempt from registration under the Securities Act under Section 1145.

(f)     The issuance of Senior Notes Alternative Distribution Deferred Payments to Class A Holders on account of their Senior Notes claims, as contemplated by the Plan, is exempt from registration under the Securities Act under Section 1145;

(g)     The Debtor is authorized to issue the rights to participate in the Rights Offering or the Senior Notes A2 Rights Offering contemplated by the Plan in good faith reliance upon exemption from registration under the Securities Act under Section 4(a)(2).

(h)     The Debtor is authorized to issue the rights to participate in the DIP Term Loan Refinancing Investment Option contemplated by the Plan in good faith reliance upon exemption from registration under the Securities Act under Section 4(a)(2).

(i)     The Debtor is authorized issue New Second Lien Convertible Notes in exchange for exercising rights in the Rights Offering or the Senor Notes A2 Rights Offering, as contemplated by the Plan, in good faith reliance upon exemption from registration under the Securities Act under Section 4(a)(2).

(j)     For the avoidance of doubt, each issuance of New Exide Common Stock, New First Lien High Yield Notes and New Second Lien Convertible Notes pursuant to the DIP Term Loan Refinancing Investment Option shall be made in good faith reliance upon exemption from registration under the Securities Act under Section 4(a)(2).

(k)     Except with respect to the Section 1145 exemption, nothing in the Plan or this Confirmation Order shall be construed as a determination that any offer, issuance, or distribution of Securities pursuant to the Plan satisfies any exemption from the registration requirements of the Securities Act and similar state statutes.

13.     Restructuring Transactions.  The restructuring transactions contemplated by Section 6.9 of the Plan are approved, and the Debtor or the Reorganized Debtor, as the case may be, are authorized to take such action as may be necessary or appropriate to effect the relevant restructuring transactions as set forth in the Plan, the Backstop Commitment Agreement, and the Plan Support Agreement, and may take other actions on or after the Effective Date.

14.    Pension Plan.  As of the Effective Date, the Reorganized Debtor shall continue the Pension Plan in accordance with, and subject to, its terms, ERISA, and the Internal Revenue Code, and shall preserve all of its rights thereunder. All proofs of Claim filed by PBGC conditioned upon the termination of the Pension Plan shall be deemed to be withdrawn as of the Effective Date.  Notwithstanding the foregoing, however, PBGC's proof of claim number 2377 shall remain a valid Claim against the Debtor, but only to the extent that it asserts a Claim for flat and variable rate premiums due to PBGC, subject to the rights and defenses of the Debtor or Reorganized Debtor, as applicable, under applicable law.  After the Effective Date, subject to the Reorganized Debtor's rights, if any, under applicable non-bankruptcy law, unless otherwise ordered by the Bankruptcy Court, the Reorganized Debtor shall continue to pay all retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114 of the Bankruptcy Code, at any time prior to Confirmation, for the duration of the period the Debtor has obligated itself to provide such benefits.

15.    Exemption from Certain Transfer Taxes and Recording Fees.  Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan, including without limitation the Exit Financing Documents, or any transfers of property made in connection therewith (whether such transfers are made by the Debtor, Reorganized Debtor, an administrative agent under the Exit ABL Revolver Facility Documents, the New Notes Trustees, or other Person) shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment to the fullest extent contemplated by section

1146(a) of the Bankruptcy Code, and upon entry of this Confirmation Order, the appropriate

state or local governmental officials or agents shall forgo the collection of any such tax or

governmental assessment and to accept for filing and recordation any of the foregoing

instruments or other documents without the payment of any such tax or governmental assessment.

The Bankruptcy Court shall retain specific jurisdiction with respect to these matters.

16. <u>GUC Trust LME Pricing Claims</u>. In connection with the LME Pricing

Claims, any applicable privilege of the Debtor, the Estate, the Reorganized Debtor, or the

Creditors' Committee, including but not limited to any attorney-client privilege or work-product

protection attaching to any documents or communications (whether written or oral) associated

with the LME Pricing Claims, and all defenses, claims, counterclaims and rights of setoff or

recoupment shall vest in the GUC Trust and may be asserted by the GUC Trust Trustee. The

Reorganized Debtor's providing of any privileged information to the GUC Trust Trustee, the

GUC Trust, or any party or person associated with the GUC Trust, such privileged information

in connection with the investigation and/or prosecution of the LME Pricing Claims shall not

constitute a waiver of any applicable privilege in recognition of the joint and/or successorship

interest in prosecuting the LME Pricing Claims on behalf of the Estate and such material shall

remain privileged. The GUC Trust Trustee's receipt of such information shall not waive, modify,

or affect such privileges and all such privileges are preserved. The GUC Trust Trustee and the

Creditors' Committee are prohibited from making any assignment or transfer to a third party of

any such privileges or information protected by such privileges that is received from the Debtor

or Reorganized Debtor. Except with respect to Article 7.4 of the Plan, the GUC Trust shall have

no right to waive the attorney-client privilege, work product or other protection of any

information received from the Reorganized Debtor.

**Settlement with Ad Hoc Vernon Tort Claimants Group**

17.  <u>Ad Hoc Vernon Tort Claimants Group Settlement.</u>  The Vernon Tort Claims Term Sheet and the terms thereof as set forth in the Plan are hereby approved pursuant to Bankruptcy Rule 9019 as a fair, equitable, prudent, and reasonable compromise of the controversies and Claims resolved by the Vernon Tort Claims Term Sheet, are in the best interest of the Debtor, the Reorganized Debtor and their estates and creditors, including, without limitation all Holders of Class F Vernon Tort Claims, are binding upon all Persons affected thereby, and shall be effectuated in accordance with the terms thereof.

18.  <u>Plan Modifications.</u>  The modifications to the Plan as set forth in the Vernon Tort Claims Term Sheet are hereby approved pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019(a).  The Plan, as modified by the Vernon Tort Claims Term Sheet, satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code. The modifications to the Plan as set forth in the Vernon Tort Claims Term Sheet do not adversely change the treatment of the Claim of any creditor or the Interest of any equity security holder who has not accepted in writing the modifications.  All creditors and equity security holders who had previously voted to accept the Plan shall be deemed to accept the modifications to the Plan as set forth in the Ad Hoc Group Settlement.

19.  <u>Ad Hoc Vernon Tort Claimants Group's Change of Vote to Accept the Plan.</u>  For cause shown, pursuant to Bankruptcy Rule 3018(a), the Vernon Tort Claims Settlement Parties who voted to reject the Plan are permitted to change their votes to accept the Plan and are hereby deemed to have voted to accept the Plan.

20.  <u>Vernon Tort Claims Trust Agreement and Vernon Tort Claims Trustee.</u> The Ad Hoc Vernon Tort Claimants Group shall use commercially reasonable best efforts to submit to the Court within fourteen (14) days after entry of this Confirmation Order for its

review and approval its proposed form of trust agreement with respect to the Vernon Tort Claims Trust and its proposed trustee of the Vernon Tort Claims Trust. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Court shall retain exclusive jurisdiction with respect to the review and approval of the Vernon Tort Claims Trust Agreement and the Vernon Tort Claims Trustee as set forth herein, and thereafter shall retain jurisdiction with respect to the Vernon Tort Claims Trust and all matters arising in connection therewith to the extent set forth in the Vernon Tort Claims Trust Agreement.

### Reservations of Rights

21. Notwithstanding any provision to the contrary, nothing in the Plan or Confirmation Order relieves any person or entity from complying with any and all applicable federal securities laws except to the extent contemplated by Section 1125(e) of the Bankruptcy Code.

22. Nothing in this Confirmation Order or the Plan shall impair or adversely affect the Defendant's obligations under that certain Consent Decree, lodged with the United States District Court for the Southern District of Indiana on March 16, 2015, as between the Debtor, the United States of America on behalf of the United States Environmental Protection Agency, and the State of Indiana on behalf of the Indiana Department of Environmental Management (the "Consent Decree"); the obligations under the Consent Decree, to the extent it becomes effective pursuant to its terms, shall survive Confirmation and be fully enforceable against the Reorganized Debtor, which shall comply with such obligations.

23. Notwithstanding any provision to the contrary in the Plan, this Confirmation Order, and any implementing Plan documents, to the extent any Allowed Priority Tax Claims held by the Internal Revenue Service or the State of Michigan, Department of

Treasury (including any penalties, interest or additions to tax entitled to priority under the Bankruptcy Code), if any, are not paid in full in Cash on the Effective Date, such Allowed Priority Tax Claims held by the Internal Revenue Service or the State of Michigan, Department of Treasury shall accrue interest commencing on the Effective Date in accordance with section 511 of the Bankruptcy Code.

24.     Upon the failure of the Debtor to make any payment due on an Allowed Other Secured Claim that is a tax Claim or an Allowed Priority Tax Claim that is not the subject of a bona fide dispute and that is not cured within 90 days after service of written notice of default by the taxing authority, such taxing authority may exercise any and all rights and remedies available under applicable non-bankruptcy law and seek appropriate relief in the Bankruptcy Court.

25.     The Debtor is the recipient of a financial assistance agreement from the Department of Energy ("DOE") identified by the award number DE-EE0002618 (the "Assistance Agreement"). Certain equipment, supplies and fixtures to real property were acquired or developed by the Debtor using, in whole or in part, funds reimbursed or reimbursable under the Assistance Agreement (the "Funded Property"), including equipment and other property commonly referred to by the Debtor as the "Edge Equipment" and the "Vortex Equipment." The Funded Property is subject to the DOE's interests under federal law, including without limitation its interests as described in (a) 10 C.F.R. §§ 600.321 and 600.325, and (b) as applicable, patent rights provision included in the Assistance Agreement pursuant to 10 C.F.R. § 784 (collectively, the "DOE Interests"). The Debtor, the Reorganized Debtor and the DOE reserve their rights with respect to the DOE Interests, including (1) the extent to which the DOE Interests or the Funded Property are included in the estate, (2) the extent to which the Plan, this

Confirmation Order, or documents implementing the same discharge, release, or otherwise terminate the DOE Interests, and (3) whether the DOE Interests are otherwise affected by the Plan, this Confirmation Order or documents implementing same. The Debtor or the Reorganized Debtor shall provide the DOE with at least 21 days' notice of any sale, transfer, or other disposition of the Funded Property at: Leah V. Lerman, Esq., U.S. Department of Justice, Civil Division, P.O. Box 875, Washington, DC 20044; leah.v.lerman@usdoj.gov; and R. Paul Detwiler, Esq., National Energy Technology Laboratory, paul.detwiler@netl.doe.gov. The Bankruptcy Court will retain jurisdiction over this issue after Confirmation.

26.     Notwithstanding any provision to the contrary in the Plan, this Confirmation Order, and any implementing Plan documents, any contracts, leases, agreements or other interests thereunder of the General Services Administration, the Department of Defense and the United States Postal Service assumed pursuant to Article IX of the Plan or entered into by the Debtor after the Petition Date (collectively, the "Federal Agreements") shall be treated, determined, administered and paid in the ordinary course of business as if the Chapter 11 Case was never filed and the Debtor and the Reorganized Debtor shall comply with applicable non-bankruptcy law. Moreover, without limiting the forgoing, nothing shall: (1) be interpreted to set cure amounts on such Federal Agreements or to require the government to novate or otherwise consent to the transfer of any of the Federal Agreements; (2) affect the government's rights to offset or recoup any amounts due under, or relating to, any of the Federal Agreements; or (3) divest any tribunal of any jurisdiction it may have to adjudicate any issues arising out of or with respect to matters involving the Federal Agreements.

27.     In accordance with the terms of the 2014 Vernon Stipulation, Exide hereby expressly acknowledges the obligations and liabilities therein and under the 2002 Corrective

Action Consent Order, the Retention Pond Order, and the 2013 Stipulation and Order (in each case, as defined in the 2014 Vernon Stipulation). Except as otherwise provided in the 2014 Vernon Stipulation (as amended by the 2015 Amendment), nothing therein, in the Plan, or in this Confirmation Order shall be construed to preclude or prejudice the CDTSC from (a) taking further action under the law against Exide or the other Exide Parties (as defined in the 2014 Vernon Stipulation) with regard to any response action as a result of the release, or threatened release, of hazardous wastes, constituents of hazardous waste or hazardous substances, at or from the Vernon Facility, including, but not limited to, releases or threatened releases at or from the Containment Building or any portion thereof, or (b) seeking to impose penalties on Exide or the other Exide Parties based on post-petition violations by Exide of the HWCL or Title 22 related to facts and circumstances not known by the CDTSC on or before September 30, 2014, or violations occurring after September 30, 2014, and the CDTSC expressly reserves all such rights. Exide reserves all rights to challenge any such action in an appropriate California forum, except that Exide will not assert that such obligations were discharged through the Chapter 11 Case. Assuming occurrence of the Plan Effective Date, such liabilities and/or obligations (described above which include liabilities/and or obligations to address the release, or threatened release, of hazardous wastes, constituents of hazardous waste or hazardous substances, at, or that have migrated or emitted, from the Vernon Facility) to the CDTSC will not be discharged, impaired, or affected through the Chapter 11 Case or by Confirmation. Nothing in the Plan of Reorganization or this Confirmation Order shall impair or adversely affect Exide's obligations under the 2014 Vernon Stipulation (as amended by the 2015 Amendment), or the 2002 Corrective Action Consent Order, the Retention Pond Order, the 2013 Stipulation and Order (in each case, as defined in the 2014 Vernon Stipulation) and Exide shall comply with the

obligations under these orders, and the obligations pursuant to these orders shall survive Confirmation and be fully enforceable against Exide.

28.     Notwithstanding any other provision hereof, because those certain agreements (collectively, the "EnerSys/Exide Agreements") by and between EnerSys Delaware Inc. ("EnerSys") and the Debtor or one or more of the Debtor's affiliates dated January 10, 1991, including the trademark license agreement entered into on that date, are not executory contracts, neither this Order nor any provision of the Plan shall (a) effect assumption or rejection of any of the EnerSys/Exide Agreements, (b) affect the rights of EnerSys to use the trademarks and tradenames licensed to EnerSys pursuant to the EnerSys/Exide Agreements and to exclude the Debtors and other parties from use of such tradenames and trademarks to the extent provided in the EnerSys/Exide Agreements, or (c) affect any other rights which EnerSys may have under the EnerSys/Exide Agreements except to the extent such other rights are Claims, provided, however, that the Debtor or Reorganized Debtor, as applicable, reserves the right to assert that any such rights are Claims.

29.     Notwithstanding anything to the contrary in the Plan, Orders or in previously served Cure Notices:  (a) all contracts entered into between the Debtor and Oracle and/or any Oracle affiliate, and those which are Oracle related that are listed on Oracle's Plan Objection filed at Docket No. 3248, and/or listed in the Cure Notices and Exhibit 9.1 of the Plan (the "Oracle Agreements") are scheduled for assumption, but are subject to both a Plan Rights Reservation and a Cure Objection; (b) Oracle reserves any and all rights to object to the proposed assumption and/or assumption and assignment on any basis including but not limited to:  (i) asserting that the listed Oracle Agreements are incomplete, imprecise and/or must incorporate other contracts not currently listed on Exhibit 9.1 of the Plan in order to be assumed (the

"Disputed Contracts"); (ii) disputing the cure amount asserted by the Debtor with respect to any Oracle Agreements and/or the Disputed Contracts; and (iii) objecting to any proposed assignment contemplated by the Plan with respect to any of the Oracle Agreements or Disputed Contracts; (c) none of the Disputed Contracts shall be deemed rejected absent agreement between Oracle and the Debtor, or Reorganized Debtor (as applicable), or upon further order of the Bankruptcy Court; and (d) none of the Oracle Agreements shall be assumed or assumed and assigned, absent agreement between Oracle and the Debtor, or Reorganized Debtor (as applicable), or upon further order of the Court. Pursuant to Article 9.5(c) of the Plan, if the parties do not reach a consensual resolution of Oracle's Cure Objection, a hearing with respect to such objection shall be scheduled for an available hearing date following 21 days' written notice, via overnight delivery, to Oracle's counsel provided by the Debtor or the Reorganized Debtor( as applicable), or such other date as may be agreed upon, subject to further adjournment by the Debtor or Reorganized Debtor (as applicable), or by Oracle, upon notice to the Court. Pursuant to Article 9.5(d) of the Plan, if the Cure Objection with respect to the Oracle Agreements and Disputed Contracts is not resolved by the Effective Date, the Debtor or Reorganized Debtor (as applicable), may designate the Oracle Agreements for rejection at any time prior to the payment of the Cure. All rights of Oracle are reserved with respect to rejection of any of the Oracle Agreements or the Disputed Contracts, including to seek administrative payments.

30. Notwithstanding anything to the contrary in this Order, the Plan, Plan Support Agreement, Plan Supplement, Plan Transaction Documents, or any other documents or agreements entered into in connection with the Plan or Exit Financing, (a) any rights or interests held by the Debtor (and following the Effective Date, the Reorganized Debtor) in that certain lease dated February 1, 2010 between the Debtor and MIREF Fremont Distribution Center, LLC,

which was assumed by the Debtor on December 31, 2014 (as amended, the "Fremont Lease"), shall not be pledged, mortgaged, or hypothecated; and (b) any rights or interests held by the Debtor (and following the Effective Date, the Reorganized Debtor) in that certain lease with respect to the Debtor's corporate headquarters located generally at 13000 Deerfield Parkway, Milton, Georgia 30004, between the Debtor and LBUBS 2006-C1 Norcross Offices Limited Partnership, which was assumed by the Debtor on December 30, 2013 (as amended, the "Milton Lease") shall not be pledged, mortgaged, or hypothecated. In addition, notwithstanding anything to the contrary in the Plan or Order, (a) any rights to of setoff and/or recoupment against the Reorganized Debtor shall be permitted under the terms of the Fremont Lease and (b) any rights of setoff and/or recoupment against the Reorganized Debtor shall be permitted under the terms of the Milton Lease.

31.     Notwithstanding any otherwise applicable injunction in the Plan or in the confirmation order, the South Coast Air Quality Management District shall be permitted to prosecute its lawsuit captioned *People of the State of California, ex rel. South Coast Air Quality Management District, a Public Entity v. Exide Technologies, Inc., and Does 1 through 50*, Case No. BC 533528 subject to, and in accordance with the terms of, that certain Stipulation approved by this Court by order entered March 6, 2014 [Docket No. 1510].

32.     In accordance with a settlement agreement (the "Settlement Agreement") approved by this Court on September 22, 2014 [Docket No. 2314], all previously filed claims by Pacific Chloride, Inc., for itself and/or on behalf of its affiliates, including but not limited to Ansell Healthcare Products LLC (collectively, "PCI") were amended and superseded by the Proof of Claim No. 3971 (the "Amended PCI Claim"). The Debtor, PCI and all parties' rights are reserved with respect to the Amended PCI Claim other than with respect to the Fire Damage

Claim (as defined in the Settlement Agreement) and all claims relating to or arising from the Fire (as defined in the Settlement Agreement) which were released by the Settlement Agreement. Nothing in this Order shall be deemed to be an adjudication, allowance or disallowance with respect to the Amended PCI Claim nor shall this Order act as a bar of recovery under any applicable insurance policy.

33.     Notwithstanding anything to the contrary in this Confirmation Order, the Plan, Plan Support Agreement, Plan Supplement, Plan Transaction Documents, or any other documents or agreement entered into in connection with the Plan or Exit Financing: (i) the Frisco Parties (as defined in the MSA, which is defined below) have reserved any setoff rights they may have, subject to the rights, claims, and defenses of the Debtor or Reorganized Debtor, as applicable, under applicable law; and (ii) the Frisco Parties have reserved any rights they may have under section 502(j) of the Bankruptcy Code with respect to any Claim for reimbursement or contribution, subject to the rights, claims, and defenses of the Debtor or Reorganized Debtor, as applicable, under applicable law. Additionally, in the event the Debtor assumes that certain Master Settlement Agreement entered into by the Debtor and the Frisco Parties and dated June 6, 2012 (the "MSA"), the Debtor shall perform under the MSA consistent with the terms thereof. Moreover, and for the avoidance of doubt, notwithstanding anything to the contrary in this Confirmation Order, the Plan, Plan Support Agreement, Plan Supplement, Plan Transaction Documents, or any other documents or agreements entered into in connection with the Plan or Exit Financing, neither the Frisco Parties nor Exide shall assign, transfer, or mortgage its respective interests in the MSA; provided, however, nothing shall prevent Exide from assigning, transferring, or mortgaging its interest in the MSA to the Reorganized Debtor (but no assignee or designee thereof).

## Unexpired Leases and Executory Contracts

34. <u>Rejection and Assumption of Executory Contracts and Unexpired Leases</u>. The Executory Contract and Unexpired Lease provisions of Article IX are approved.

(a) <u>Automatic Rejection</u>. Except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease: (a) is listed on the schedule of "Assumed Executory Contracts and Unexpired Leases" contained in Exhibit 9.1 of the Plan; (b) has been previously assumed by the Debtor by Final Order of the Bankruptcy Court or has been assumed by the Debtor by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date; (c) is the subject of a motion to assume or reject pending as of the Effective Date; (d) is an Executory Contract related to any Intercompany Claim; or (e) is otherwise assumed pursuant to the terms of the Plan. This Confirmation Order constitutes an order of the Bankruptcy Court approving such rejections pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. Counterparties to Executory Contracts or Unexpired Leases that are deemed rejected as of the Effective Date shall have the right to assert any Claim on account of the rejection of such Executory Contracts or Unexpired Leases, including under section 502(g) of the Bankruptcy Code, subject to compliance with the requirements of the Plan and this Confirmation Order.

(b) <u>Claims Procedures Related to Rejection of Executory Contracts or Unexpired Leases</u>. Unless otherwise provided by a Bankruptcy Court order, any proofs of Claim asserting Claims arising from the rejection of the Executory Contracts and Unexpired Leases pursuant to the Plan or otherwise must be filed with the Claims and Solicitation Agent no later than 30 days after the later of the Effective Date or the effective date of rejection. Any proofs of

Claim arising from the rejection of the Executory Contracts or Unexpired Leases that are not timely filed shall be disallowed automatically and forever barred, estopped, and enjoined from assertion and shall not be enforceable against the Debtor or the Reorganized Debtor, without the need for any objection by the Reorganized Debtor or any further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Executory Contracts and Unexpired Leases shall be classified as General Unsecured Claims.

(c)     Assumption of Executory Contracts and Unexpired Leases. Subject to paragraph 20(e) below, on the Effective Date, each Executory Contract or Unexpired Lease listed on the schedule of "Assumed Executory Contracts and Unexpired Leases" in Exhibit 9.1 of the Plan shall be assumed, or assumed and assigned, as applicable, and shall vest in and be fully enforceable by the Reorganized Debtor or its assignee in accordance with its terms, except as modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing or providing for its assumption or applicable federal law. Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Cures, Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

(d)     Cure Procedures and Payments Related to Assumption of Executory Contracts and Unexpired Leases. With respect to each of the Executory Contracts or Unexpired

Leases listed on the schedule of "Assumed Executory Contracts and Unexpired Leases," the Debtor shall have designated a proposed Cure in accordance with the terms of the Plan, and the assumption of such Executory Contract or Unexpired Lease shall be conditioned upon the disposition of all issues with respect to the Cure pursuant to the procedures set forth in the Plan, as applicable. Such Cure shall be satisfied by the Debtor or its assignee, if any, by payment of the Cure in Cash within 30 days following the occurrence of the Effective Date or as soon as reasonably practicable thereafter, or on such other terms as may be ordered by the Bankruptcy Court or agreed upon by the parties to the applicable Executory Contract or Unexpired Lease without any further notice to or action, order, or approval of the Bankruptcy Court. Any provisions or terms of the Executory Contracts or Unexpired Leases to be assumed pursuant to the Plan that are, or may be, alleged to be in default, whether known or unknown, monetary or non-monetary, shall be satisfied solely by Cure, or by an agreed-upon waiver of Cure. If there is a dispute regarding such Cure or any other matter pertaining to assumption, other than the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, then payment of Cure shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtor or the Reorganized Debtor, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.

(e)     For the avoidance of doubt, those Executory Contracts and/or Unexpired Leases listed on Exhibit 9.1-2 of the Plan shall not be deemed assumed or assumed and assigned, absent agreement between the applicable counterparty and the Debtor, or Reorganized Debtor (as applicable), or upon further order of the Court. Pursuant to Section 9.5(c)

of the Plan, if the applicable parties do not reach a consensual resolution of the Cure, then a hearing with respect to such Cure shall be scheduled for an available hearing date following 21 days' notice, to the applicable counterparty provided by the Debtor or the Reorganized Debtor( as applicable), or such other date as may be agreed upon, subject to further adjournment by the Debtor or Reorganized Debtor (as applicable) upon notice to the Court. Pursuant to Section 9.5(d) of the Plan, if the Cure dispute with respect to Executory Contracts and/or Unexpired Leases listed on Exhibit 9.1-2 of the Plan is not resolved by the Effective Date, the Debtor or Reorganized Debtor (as applicable), may designate any such contract for rejection at any time prior to the payment of the Cure. The rights of the Debtor or the Reorganized Debtor, as applicable, are reserved either to reject or nullify the assumption of any Executory Contract or Unexpired Lease after a Final Order determining the Cure to assume such Executory Contract or Unexpired Lease is made. Any such rejection shall be deemed to be as of the Effective Date, and the counterparty to such rejected Executory Contract or Unexpired Lease shall have the right to assert any Claim on account of such rejection in accordance with the procedures set forth in the Plan.

35. <u>Assumption of the MSA</u>. In the event the Debtor and the Frisco Parties do not, prior to the Effective Date, amend the MSA, or otherwise agree upon terms to address and resolve, among other things, the parties' claims and disagreements under the MSA and/or otherwise, upon occurrence of the Effective Date, the MSA (or, in the case the Debtor and the Frisco Parties do amend the MSA prior to the Effective Date, the MSA, as amended) shall be assumed and shall vest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, and this Order shall serve as an order (i) authorizing and confirming such assumption under 11 U.S.C. § 365 upon the occurrence of the Effective Date (and the Debtor shall not, and

shall not be authorized to, reject the MSA prior to the occurrence of the Effective Date or thereafter) and (ii) finding that the Debtor has provided adequate assurance of future performance regarding the MSA as contemplated pursuant to 11 U.S.C. § 365(b)(1)(C); provided, however, that the Debtor reserves fully its rights, claims, and defenses to contest and otherwise challenge any cure claims that may be asserted by the Frisco Parties, it being understood and agreed to by the parties that the extent of cure claims that may be asserted by the Frisco Parties, subject to any and all rights, claims, and defenses of the Debtor or Reorganized Debtor, as applicable, are the following: (i) defaults, if any, arising from unperformed obligations, if any, under the MSA must be performed by the Debtor or Reorganized Debtor, as applicable, in accordance with the MSA regardless of the cost thereof and (ii) alleged unauthorized draws and/or use by Exide of escrowed funds in the approximate amount of $1.3 million that were to have been used to pay for costs associated with the wind-down and closure of the Exide Operations (as such term is defined in the MSA). Notwithstanding the foregoing, in the event the Effective Date does not occur, the parties reserve all their rights, including the Debtor's right to reject the MSA.

### Bar Dates and Other Deadlines

36.    The bar dates, deadlines and claims procedures set forth in this Confirmation Order and in Articles IX and XV of the Plan are hereby approved, including but not limited to the following:

(a)    <u>Claims Bar Dates for Administrative Claims</u>. Except as otherwise provided herein or in the Plan and as set forth in Articles 2.2 or 2.3 of the Plan, all requests for payment of an Administrative Claim must be filed, in substantially the form of the Administrative Claim Request Form contained in Exhibit 2.1 of the Plan, with the Claims Agent

and served on counsel for the Debtor or the Reorganized Debtor no later than the Administrative Claims Bar Date. Any request for payment of an Administrative Claim pursuant to Article 2.1 of the Plan that is not timely filed and served shall be Disallowed automatically without the need for any objection from the Reorganized Debtor. Notwithstanding anything to the contrary contained herein or in the Plan, all fees and expenses authorized to be paid pursuant to paragraph 15 of the DIP Facility Order and under the Backstop Commitment Agreement are not subject to the Administrative Claims Bar Date, and the Debtor is hereby authorized and directed to pay all such amounts in full in Cash to the extent such fees and expenses have not already been paid, without the need for the filing of any Administrative Claim Request Form.

### General Unsecured Claims Trust

37. <u>The General Unsecured Claims Trust</u>. The formation, rights, powers, duties, structure, obligations, and other matters pertaining to the GUC Trust shall be governed by Article VII of the Plan and the GUC Trust Agreement (which such agreement shall be substantially in the form of Exhibit 7.1 to the Plan and is hereby approved).

38. Furthermore, the provisions of Article VII of the Plan are incorporated into this Confirmation Order as if set forth in full herein, are found to be fair and reasonable, and are hereby approved in their entirety.

39. <u>Transfer of GUC Trust Assets</u>. On the Effective Date, pursuant to section 1123(b)(3) of the Bankruptcy Code, the GUC Trust Assets shall be transferred by the Debtor (and deemed transferred) to the GUC Trust free and clear of all Claims, Liens, charges, encumbrances, rights, and interests, without the need for any Entity to take any further action or obtain any approval and the GUC Trust shall be authorized as the representative of the Estate to

investigate, sue, settle, and otherwise administer the GUC Trust in accordance with the terms of the GUC Trust Agreement.

## Vernon Tort Claims Trust

40.    <u>The Vernon Tort Claims Trust</u>.  The formation, rights, powers, duties, structure, obligations, and other matters pertaining to the Vernon Tort Claims Trust shall be governed by Article VIII of the Plan and the Vernon Tort Claims Trust Agreement in accordance with the terms of the Vernon Tort Claims Term Sheet, attached as Exhibit 8.1 to the Plan, which is hereby approved.  In the event of any conflict between the terms of the Plan or this Confirmation Order and the terms of the Vernon Tort Claims Term Sheet, the terms of the Vernon Tort Claims Term Sheet shall govern in all respects, and the Vernon Tort Claims Trust Agreement shall reflect the terms of the Vernon Tort Claims Term Sheet and the Plan; <u>provided</u>, <u>however</u>, notwithstanding the foregoing or anything to the contrary in the Vernon Tort Claims Term Sheet, if XL does not release the collateral from which the Debtor will fund the Vernon Tort Claims Trust Assets, the Debtor or the Reorganized Debtor, as the case may be, shall be authorized to contribute Cash to fund the Vernon Tort Claims Trust.

41.    Furthermore, the provisions of Article VIII of the Plan are incorporated into this Confirmation Order as if set forth in full herein, are found to be fair and reasonable, and are hereby approved in their entirety.

42.    <u>Transfer of Vernon Tort Claims Trust Assets</u>.  The Vernon Tort Claims Trust Assets shall be formed and initially funded promptly upon the later of the Bankruptcy Court's approval of the Vernon Tort Claims Trust or the Effective Date.  Pursuant to section 1123(b)(3)  of the Bankruptcy Code, the Vernon Tort Claims Trust Assets shall be transferred by the Debtor (and deemed transferred) to the Vernon Tort Claims Trust free and clear of all Claims,

Liens, charges, encumbrances, rights, and interests, without the need for any Entity to take any further action or obtain any approval and the Vernon Tort Claims Trust shall be authorized to administer the Claims of Vernon Tort Claimants in accordance with and subject to the terms of the Vernon Tort Claims Term Sheet.

### Settlements, Discharge of the Debtor, Releases, and Injunctions

43.     Plan Settlements.  The Plan Settlements and the respective terms thereof as set forth in the Plan are hereby approved pursuant to Bankruptcy Rule 9019 as fair, equitable, prudent, and reasonable compromises of the controversies and Claims resolved by the Plan Settlements, are in the best interest of the Debtor, the Reorganized Debtor and their estates and creditors, are binding upon all Persons affected thereby, and shall be effectuated in accordance with the terms thereof.

44.     Discharge of Debtor.  Article 12.2 of the Plan is incorporated into this Confirmation Order as if set forth in full herein, is found to be fair and reasonable, is hereby approved in its entirety, and shall be, and hereby is effective and binding subject to the terms thereof.

45.     For the avoidance of doubt, nothing in the Plan or in this Confirmation Order shall affect the applicability, if any, of section 1141(d)(6) of the Bankruptcy Code.

46.     Discharge of Liabilities Related to Vernon Tort Claims.  Article 12.3 of the Plan is incorporated into this Confirmation Order as if set forth in full herein, is hereby approved in its entirety, and shall be, and hereby is effective and binding subject to the terms thereof.

47.     Discharge of Liabilities Related to General Unsecured Claims and the Subordinated Notes Claims.  Article 12.4 of the Plan is incorporated into this Confirmation

Order as if set forth in full herein, is hereby approved in its entirety, and shall be, and hereby is effective and binding subject to the terms thereof.

48.     Release by Debtor. Article 12.6 of the Plan is incorporated into this Confirmation Order as if set forth in full herein, is found to be fair and reasonable, is hereby approved in its entirety, is so ordered, and shall be immediately effective and binding upon the Effective Date of the Plan without further action or notice by this Court, any of the parties to such release, or any other party.

49.     Release by Holders of Claims and Interests. Article 12.7 of the Plan is incorporated into this Confirmation Order as if set forth in full herein, is found to be fair and reasonable, is hereby approved in its entirety, is so ordered, and shall be immediately effective and binding upon the Effective Date of the Plan without further action or notice by this Court, any of the parties to such release, or any other party.

50.     Nothing in the Plan, this Confirmation Order, or the Bankruptcy Code (and section 1141 thereof) discharges, releases, resolves, exculpates, precludes or enjoins: (i) any environmental liability to an Environmental Governmental Unit that is not a Claim; (ii) any environmental Claim of an Environmental Governmental Unit arising on or after the Effective Date; (iii) any environmental liability to any Environmental Governmental Unit on the part of any entity as the owner or operator of property after the Effective Date; or (iv) any liability to an Environmental Governmental Unit on the part of any Entity other than the Debtor or Reorganized Debtor. Nothing in the Plan divests any tribunal of any jurisdiction it may have under environmental law to interpret the Plan. The Debtor will continue to maintain financial assurances as required by applicable environmental law.

51. Nothing in the Debtor's bankruptcy proceedings, this Confirmation Order, the Plan, the Bankruptcy Code (and section 1141 thereof), or any other document filed in the Debtor's bankruptcy case shall in any way be construed to discharge, release, limit, or relieve any party (except the Debtor and the Estate, in which case the sole recourse available to PBGC and the Pension Plan shall be limited to the provisions of the Plan and Confirmation Order), in any capacity, from any liability or responsibility for fiduciary breach related to the Pension Plan. PBGC and the Pension Plan shall not be enjoined or precluded from enforcing such liability or responsibility by any of the provisions of the Plan, this Confirmation Order, the Bankruptcy Code, or any other document filed in the Debtor's bankruptcy case. Notwithstanding the foregoing, the Debtor or the Reorganized Debtor, as applicable, retains any and all rights that it has under applicable law with respect to the Pension Plan.

52. Notwithstanding any provision to the contrary, no provision of the Plan or this Confirmation Order shall (i) discharge or release the Debtor or the Reorganized Debtor from any liability, right or interest held or assertable by the U.S. Securities and Exchange Commission (the "SEC") that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code or that is otherwise beyond the scope of the discharge provided in section 1141(d) of the Bankruptcy Code; (ii) release any non-debtor person or entity from any Claim or cause of action of the SEC; or (iii) enjoin, limit, impair or delay the SEC from commencing or continuing any Claims, causes of action, proceedings or investigations against any non-debtor parties or entities in any forum; provided, however, that the foregoing sentence shall not limit the scope of discharge granted to the Debtor under sections 524 and 1141 of the Bankruptcy Code.

53. Environmental Claims. Article 12.8 of the Plan is incorporated into this Confirmation Order as if set forth in full herein, is found to be fair and reasonable, is hereby

approved in its entirety, and shall be, and hereby is, effective and binding subject to the terms thereof.

54. Exculpation and Limitation of Liability. Article 12.9 of the Plan is incorporated into this Confirmation Order as if set forth in full herein, is found to be fair and reasonable, is hereby approved in its entirety, and shall be, and hereby is, effective and binding subject to the terms thereof.

55. Injunctions. Article 12.11 of the Plan is incorporated into this Confirmation Order as if set forth in full herein, is found to be fair and reasonable, is hereby approved in its entirety, and shall be, and hereby is, effective and binding subject to the terms thereof.

56. Subordination Rights. Article 12.12 of the Plan is incorporated into this Confirmation Order as if set forth in full herein, is found to be fair and reasonable, is hereby approved in its entirety, and shall be, and hereby is, effective and binding subject to the terms thereof. Except as provided in the Plan with respect to the distributions to those Class A2 Holders of Senior Notes Claims who voted against the Plan, distributions under the Plan to Holders of Subordinated Notes Claims shall be received and retained free from any obligations to hold or transfer the same to any creditor, and shall not be subject to levy, garnishment, attachment or other legal process by any Holder by reason of claimed contractual subordination rights. Such subordination rights shall be waived in accordance with the Plan and this Order shall constitute an injunction enjoining any Person (other than those Class A2 Holders of Senior Notes Claims who voted against the Plan) from enforcing or attempting to enforce any contractual, legal or equitable subordination rights to distributions under the Plan to Holders of Subordinated Notes Claims.

57. Release of Liens. Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit Financing Documents or any other document executed in connection therewith, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released, and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns. Without limiting the forgoing, to the extent that any Holder of a Secured Claim that has been satisfied or discharged pursuant to the Plan, or any agent for such Holder, has filed or recorded any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtor, the Reorganized Debtor, any administrative agent under the Exit ABL Revolver Facility Documents, or the New Notes Trustees that are necessary to cancel and/or extinguish such Liens and/or security interests. To the extent that the Senior Notes Indenture Trustee or other Servicer has filed or recorded publicly any Liens and/or security interests or obtained a pledge of assets (whether under domestic or foreign law) to secure the Debtor's obligations under the Senior Notes or otherwise, the Senior Notes Indenture Trustee or such other Servicer, as the case may be, shall take any commercially reasonable steps requested by the Debtor or other authorized representative, at the expense of the Debtor, that are necessary to cancel and /to extinguish such publicly-filed Liens and/or security interests, or release such pledge (whether under domestic or foreign law). The Debtor or other authorized representative is authorized to and may issue, execute, deliver, file or record a power of attorney or any other instrument necessary or appropriate to effectuate and implement the release of such Liens and/or

security interests, or release of such pledge (whether under domestic or foreign law) as is necessary to effectuate and implement the Plan and this Order.

**Notice and Other Provisions**

58. <u>Notice of Confirmation Order and Occurrence of Effective Date</u>. On or before the tenth (10th) day following the occurrence of the Effective Date, the Debtor shall serve notice of entry of this Confirmation Order and occurrence of the Effective Date pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c), on (a) known Holders of Claims and Interests, (b) parties that requested notice in accordance with Bankruptcy Rule 2002, and (c) all other parties included in the Debtor's creditor and notice party matrix, by causing a notice of this Confirmation Order and the occurrence of the Effective Date in substantially the form of the notice annexed hereto as <u>Exhibit B</u> (the "<u>Notice of Effective Date</u>"), which form is hereby approved, to be delivered to such parties by first class mail, postage prepaid. The Notice of Effective Date shall also be published in (a) The Wall Street Journal (National Edition), (b) the New York Times (National Edition), (c) the Atlanta-Journal Constitution, (d) the Los Angeles Times, (e) the Vernon Sun, (d) La Opinión (in Spanish), and (e) the West Covina Highlander. Notice need not be given or served under the Bankruptcy Code, the Bankruptcy Rules, or this Confirmation Order to any Entity to whom the Debtor mailed a notice of the Bar Date or Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved - left no forwarding address," "forwarding order expired," or similar reason, unless the Debtor has been informed in writing by such Person of that Person's new address. The notice described herein is adequate and appropriate under the particular circumstances of the Chapter 11 Case, and no other or further notice is necessary.

59.    <u>Authorization to Consummate</u>.  Notwithstanding Bankruptcy Rule 3020(e), but subject to Article XIII of the Plan, the Debtor is authorized to consummate the Plan upon or any time after entry of this Confirmation Order.

60.    <u>Plan Modifications</u>.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtor expressly reserves its right to revoke or withdraw, alter, amend, or modify materially the Plan and the Plan Supplement one or more times after Confirmation, and to the extent necessary, may, with the consent of the Required Consenting Creditors, the Requisite Backstop Parties, and the Creditors' Committee (solely to the extent it affects the GUC Trust Settlement Agreement), not to unreasonably be withheld, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan and this Confirmation Order.

61.    <u>Failure to Consummate Plan and Substantial Consummation</u>.  If the Effective Date does not occur, then the Plan, any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), the assumption or rejection of executory contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be null and void.  In such event, nothing contained in the Plan or this Confirmation Order, and no acts taken in preparation for consummation of the Plan, shall, or shall be deemed to, (a) constitute a waiver or release of any Claims by or against or Interests in the Debtor or any other Person, (b) prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor, (c)

constitute an admission of any sort by the Debtor or any other Person, or (d) be construed as a finding of fact or conclusion of law with respect thereto.

62. <u>References to Plan Provisions</u>. The failure to include or specifically reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its entirety.

63. <u>Exhibits</u>. Each reference to a document, agreement or summary description that is in the form attached as an Exhibit to the Plan in this Confirmation Order, in the Findings of Fact and Conclusions of Law, or in the Plan shall be deemed to be a reference to such document, agreement or summary description in substantially the form of the latest version of such document, agreement or summary description filed with the Court (whether filed as an attachment to the Plan or filed separately).

64. <u>Plan and Confirmation Order Mutually Dependent</u>. The provisions of this Confirmation Order and the provisions of the Plan are hereby deemed nonseverable and mutually dependent.

65. <u>Confirmation Order Supersedes</u>. Except as expressly provided in the Plan or this Confirmation Order, it is hereby ordered that this Confirmation Order shall supersede any orders of this Court issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order. For the avoidance of doubt, nothing herein is intended to supersede the DIP Facility Order.

66. <u>Conflicts Between Confirmation Order and Plan</u>. The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; <u>provided</u>, <u>however</u>, that if there is determined to be any

inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall control.

67. <u>Retention of Jurisdiction.</u>  Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, this Court, except as otherwise provided in the Plan or herein, shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, but not limited to, the matters set forth in Article XIV of the Plan.  Notwithstanding any other provision of the Plan or this Confirmation Order, the Bankruptcy Court shall retain jurisdiction, but not exclusive jurisdiction, to determine whether environmental Claims brought by governmental units against the Reorganized Debtor are barred by the Plan and Section 1141 of the Bankruptcy Code.

68. <u>Final Order and Waiver of Stay, Lodgment of Confirmation Order</u>. This Confirmation Order is a final order. The provisions of Federal Rule of Civil Procedure 62(a) and Bankruptcy Rules 7062 and 3020(e) shall not apply to this Confirmation Order, and the Debtor and the Reorganized Debtor are authorized to consummate the Plan at any time. Lodgment of this Confirmation Order is hereby waived.

Dated: Wilmington, Delaware
March 27, 2015

Honorable Kevin J. Carey
UNITED STATES BANKRUPTCY JUDGE