IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | Chapter 11 |
| EXIDE TECHNOLOGIES, | ) | |
| | ) | Case No. 13-11482 (KJC) |
| | ) | |
| Reorganized Debtor.[1] | ) | |
| ———————————— | ) | |
| | ) | |
| PETER KRAVITZ, AS GUC TRUST | ) | Adv. Pro. No. [Refer to Summons] |
| TRUSTEE OF THE EXIDE CREDITORS' | ) | |
| LIQUIDATING TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| ADECCO USA, INC. F/D/B/A ASI | ) | |
| STAFFING, INC. F/K/A ADECCO | ) | |
| EMPLOYMENT SERVICES, INC., | ) | |
| | ) | |
| Defendant(s) | | |

**COMPLAINT TO AVOID AND RECOVER TRANSFERS
PURSUANT TO 11 U.S.C. §§ 547 AND 550 AND TO
DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502**

Peter Kravitz of Province Inc., as GUC Trust Trustee (as defined below) of the

Exide Creditors' Liquidating Trust ("Trustee" or "Plaintiff"), by and through his undersigned

counsel, files this complaint (the "Complaint") to avoid and recover preferential transfers against

Adecco USA, Inc. f/d/b/a ASI Staffing, Inc. f/k/a Adecco Employment Services, Inc. (the

"Defendant") and to disallow any claims held by Defendant.  In support of his Complaint,

Plaintiff hereby alleges upon information and belief that:

---

[1]     The last four digits of the Reorganized Debtor's taxpayer identification number are -2730.  The Reorganized Debtor's corporate headquarters are located at 13000 Deerfield Parkway, Building 200, Milton, Georgia  30004.

## NATURE OF THE CASE

1.     This action is commenced pursuant to sections 547 and 550 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") to avoid and recover from Defendant, or from any other person or entity for whose benefit the transfers were made, preferential transfers of property made by Exide Technologies (the "Debtor" or the "Reorganized Debtor", as applicable) that occurred during the ninety (90) day period prior to the commencement of the Debtor's bankruptcy proceedings pursuant to 11 U.S.C. §§ 547 and 550.

2.     In addition, Plaintiff seeks to disallow, pursuant to sections 502(d) and (j) of the Bankruptcy Code, any claim that Defendant has filed or asserted against the Debtor or that has been scheduled for Defendant.  Plaintiff does not waive but hereby reserves all of his rights and the rights of the Reorganized Debtor to object to any such claim for any reason, including, but not limited to, any reason set forth in sections 502(a) through (j) of the Bankruptcy Code.

## JURISDICTION AND VENUE

3.     This court has jurisdiction of this adversary proceeding, which arises under title 11, arises in and relates to a case under title 11 pending in the United States Bankruptcy Court for the District of Delaware (the "Court") captioned *In re Exide Technologies,* Case 13-11482 (KJC) (the "Bankruptcy Case"), pursuant to 28 U.S.C. §§157 and 1334(b) and Article XIV of the Plan (as defined below).

4.     This adversary proceeding is a "core" proceeding to be heard and determined by this Court pursuant to 28 U.S.C. § 157(b)(2).

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1409.

6.    The statutory and legal predicates for the relief sought herein are sections 502, 547 and 550 of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure.

7.    Pursuant to Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, Plaintiff states that, solely in his capacity as GUC Trust Trustee, he consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**PROCEDURAL BACKGROUND**

8.    On June 10, 2013 (the "Petition Date"), the Debtor commenced its Bankruptcy Case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

9.    On March 27, 2015, this Court entered an order (the "Confirmation Order") confirming the *Fourth Amended Plan of Reorganization of Exide Technologies* (the "Plan"), which became effective on April 30, 2015 (the "Effective Date").

10.    In accordance with the Plan and the Confirmation Order, the Exide Creditors' Liquidating Trust (the "Trust") was established effective on the Effective Date of the Plan.  Also on the Effective Date, as contemplated by the Plan and Confirmation Order, the Debtor and the Trustee entered into that certain Exide Creditors' Liquidating Trust Agreement (the "Liquidating Trust Agreement").[2]

11.    Pursuant to Section 4.4 of the Plan, General Unsecured Claims comprise an impaired class of creditors and are not expected to be paid in full.

---

[2]    Capitalized terms used but not defined shall have the meanings ascribed to such terms in the Plan or the Trust Agreement, as applicable.

### THE PARTIES

12.     Under the Plan and the Liquidating Trust Agreement, the Trustee was appointed as GUC Trust Trustee (as defined in the Plan) to administer the Trust.  Among other things, the Trustee is authorized to investigate, prosecute and resolve GUC Trust Preference Actions and other GUC Trust Causes of Action (each, as defined in the Plan).

13.     As more fully discussed in the disclosure statement filed on February 5, 2015 in support of the Plan, the Debtor and its non-debtor direct and indirect subsidiaries (collectively, the "Company") are a global leader in stored electrical energy solutions and one of the world's largest producers and recyclers of lead-acid batteries.  As of the Petition Date, Debtor was headquartered in Milton, Georgia and operated 8 manufacturing facilities in the United States.  Also as of the Petition Date, Debtor also operated approximately 68 branches and 7 distribution centers throughout North America, which sold and distributed batteries and other products to customers, including battery specialists, retail stores, and original equipment manufacturers.  In addition, branch locations collected spent batteries for the Debtor's recycling facilities.  The Company's two divisions, transportation and industrial energy, was and remains comprised of four segments that provide a comprehensive range of stored electrical energy products and services for industrial and transportation applications.

14.     Upon information and belief, Defendant was, at all relevant times, a vendor to or creditor of the Debtor that provided human resources and staffing consulting services to the Debtor.  Upon further information and belief, at all relevant times, Defendant's principal place of business is 175 Broad Hollow Road, Melville, New York 111747. Plaintiff is informed and believes, and on that basis alleges, that Defendant is a corporation residing in and subject to the laws of the State of New York.

4

## FACTUAL BACKGROUND

15.     Prior to the Petition Date, in the ordinary course of business, the Debtor, as a provider of stored electrical energy products and services and producer and recycler of lead-acid batteries, maintained business relationships with various business entities, including vendors, creditors, suppliers and distributors, and regularly purchased, sold, received and/or delivered goods and services in support of its operations.

16.     The Debtor's financial difficulties that led to the decision to file the Bankruptcy Case are attributable to a combination of factors, all of which placed significant stress on the Debtor's liquidity position in the months leading up to the Petition Date and hindered the Company's ability to successfully compete in the markets in which it operated. These factors included, among other things: (i) rising production costs resulting in compressed margins and intense competition; (ii) exposure to the economic downturn that has persisted in Europe; and (iii) constrained liquidity.

17.     As of the Petition Date, the Debtor maintained bank accounts at Wells Fargo, N.A., Citibank N.A., UMB Bank, JP Morgan Chase, Toronto-Dominion Bank, U.S. Bank, N.A., and/or Deutsche Bank AG, consisting of concentration accounts, disbursement accounts, lockbox accounts, standby trust accounts, and investment accounts.   Among these, the disbursement accounts include, but are not limited to: (i) two zero-balance disbursement accounts, one of which was used to fund the Debtor's domestic payroll, and the other of which was a general disbursement account through which the Debtor funded certain accounts payable for vendors paid by check; (ii) an automated clearinghouse (ACH) disbursement account, through which all of the Debtor's electronic fund transfers were disbursed, including automatic deposit payroll obligations, trade payables, and utility obligations, and which account also

funded two insurance accounts that supported the Debtor in making payments for short-term disability, dental coverage, medical plans and pharmacy plans; (iii) disbursement accounts for the Debtor's administered benefits plans, including payments related to employee flexible spending accounts, health reimbursement accounts, medical claims and wellness expense reimbursements; and (iv) two Canadian disbursement accounts, one of which was used for U.S. dollar transactions and the other of which was used for Canadian dollar transactions (collectively, the "Disbursement Accounts").

18.    During the ninety (90) day period prior to the Petition Date, that is, between March 12, 2013 and June 10, 2013 (the "Preference Period"), the Debtor continued to operate its business affairs, including the transfer of property, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits, or otherwise, to various entities.

19.    During the course of their relationship, the Debtor and Defendant entered into agreements, which are evidenced by invoices, communications and other documents (collectively, the "Agreements").  The details of the Agreements paid for during the Preference Period are set forth on Exhibit A attached hereto and incorporated by reference, including the "Invoice Number," "Invoice Date" and "Invoice Amount."

20.    The Debtor and Defendant conducted business with one another through and including the Petition Date pursuant to the Agreements.

21.    As identified in the Agreements, the Debtor purchased goods and/or services from Defendant.

22.    Plaintiff has completed an analysis of all readily available information of the Debtor and is seeking to avoid all of the transfers of an interest in the Debtor's property made by the Debtor to Defendant within the Preference Period.

23.     Plaintiff has determined that the Debtor made transfer(s) of an interest of the Debtor's property to or for the benefit of Defendant during the Preference Period through payments under the Agreements aggregating to an amount not less than $247,634.71 (the "Transfer" or "Transfers").  The details of each Transfer are set forth on Exhibit A attached hereto and incorporated by reference, including the "Check Number," "Check Amount," and "Check Clear Date."

24.     During the course of this adversary proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period.  It is Plaintiff's intention to avoid and recover all transfers made by the Debtor of an interest of the Debtor in property and to or for the benefit of Defendant or any other transferee. Plaintiff reserves his right to amend this original Complaint to include: (i) further information regarding the Transfer(s), (ii) additional transfers, (iii) modifications of and/or revision to Defendant's name, (iv) additional defendants, and/or (v) additional causes of action authorized by the Plan and the Liquidating Trust Agreement, if applicable (collectively, the "Amendments"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

25.     Plaintiff acknowledges that some of the Transfers might be subject to defenses under Bankruptcy Code section 547(c), for which Defendant bears the burden of proof under section 547(g).

### FIRST CLAIM FOR RELIEF
**(Avoidance and Recovery of Preferential Transfers – 11 U.S.C. §§ 547(b) and 550)**

26.     Plaintiff hereby incorporates all previous allegations as though fully set forth herein.

27.     As more particularly described on <u>Exhibit A</u> attached hereto and incorporated herein, during the Preference Period, the Debtor made the Transfers to or for the benefit of Defendant in an aggregate amount of not less than $247,634.71.

28.     The Transfers were made from one or more of the Disbursement Accounts, and constituted transfers of an interest in property of the Debtor.

29.     During the Preference Period, Defendant was a creditor at the time of each Transfer by virtue of supplying to the Debtor the goods and/or services identified in the Agreements, as more fully set forth on <u>Exhibit A</u> hereto, for which the Debtor was obligated to pay following delivery in accordance with such Agreements.

30.     Each Transfer was to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1), because each Transfer either reduced or fully satisfied a debt or debts then owed by the Debtor, as set forth on <u>Exhibit A</u> hereto.

31.     Each Transfer was made for, or on account of, an antecedent debt or debts owed by the Debtor to Defendant before such Transfers were made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by the Debtor, as set forth on <u>Exhibit A</u> hereto.

32.     Each Transfer was made while the Debtor was insolvent.  Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to 11 U.S.C. § 547(f).

33.     Each Transfer was made during the Preference Period, as set forth on <u>Exhibit A</u>.

34.     As a result of each Transfer, Defendant received more than Defendant would have received if:  (i) the Debtor's case was under chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code.   As evidenced by the Debtor's schedules filed in the underlying Bankruptcy Case, the proofs of claim that have been received to date and the impaired treatment afforded General Unsecured Creditors under the Plan, the Debtor's liabilities exceed its assets to the point that General Unsecured Creditors will not receive a payment in full on account of their respective allowed claims from the Debtor's bankruptcy estate.

35.     Defendant was the initial transferee of the Transfer(s) or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Transfer(s) were made.

36.     Based upon the foregoing, Plaintiff is entitled to an order and judgment against Defendant:  (i) avoiding the Transfers under section 547(b) of the Bankruptcy Code; and (ii) entitling Plaintiff to recover the Transfers or the value of the Transfers from Defendant under section 550(a) of the Bankruptcy Code, together with the award of pre- and post-judgment interest thereon from the date of demand to the date of payment or other satisfaction of such order and judgment and the costs of this action.

## SECOND CLAIM FOR RELIEF
### (Disallowance of Claims – 11 U.S.C. §§ 502(d) and (j))

37.     Plaintiff hereby incorporates all previous allegations as though fully set forth herein.

38.     Defendant is a transferee of Transfers avoidable pursuant to section 547 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

39.     Defendant has not paid the amount of the Transfers or turned over such property for which Defendant is liable under section 550 of the Bankruptcy Code.

40.     Pursuant to section 502(d) of the Bankruptcy Code, any and all claims of Defendant against the Debtor must be disallowed until such time as Defendant pays Plaintiff the amount equal to the aggregate amount of all of the Transfers, plus interest thereon and costs.

41.     Pursuant to 11 U.S.C. § 502(j), any and all previously allowed claims of Defendant against the Debtor, including any and all claims assigned by Defendant, must be reconsidered and disallowed until such time as Defendant pays to Plaintiff the amount equal to the aggregate amount of all of the Transfers, plus interest thereon and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court grant the following relief against Defendant:

A.      On Plaintiff's First Claim for Relief, judgment in favor of Plaintiff and against Defendant, avoiding the preferential Transfers and directing Defendant to return to Plaintiff the amount of the preferential Transfers, pursuant to 11 U.S.C. §§ 547(b) and 550(a), plus interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees;

B.      On Plaintiff's Second Claim for Relief, in favor of Plaintiff and against Defendant disallowing any claims filed by Defendant against any of the Debtor until Defendant returns the Transfers to Plaintiff pursuant to 11 U.S.C. § 502(d) and (j); and

C.      Granting Plaintiff such other and further relief as this Court may deem just and proper.

Dated: Wilmington, Delaware  
      June 9, 2015

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

By: /s/ *Erin R. Fay*  
Robert J. Dehney (No. 3578)  
Eric Schwartz (No. 3134)  
Erin R. Fay (No. 5268)  
1201 North Market Street, Suite 1600  
Wilmington, Delaware  19801  
Tel:  (302) 658-9200  
Fax:  (302) 658-3989

- and -

KELLEY DRYE & WARREN LLP  
James S. Carr (admitted *pro hac vice*)  
Dana P. Kane (admitted *pro hac vice*)  
Joel A. Hankin (admitted *pro hac vice*)  
101 Park Avenue  
New York, New York  10178  
Tel:  (212) 808-7800  
Fax:  (212) 808-7897

*Co-Counsel to the GUC Trust Trustee of the Exide Creditors' Liquidating Trust*