**Exhibit B**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------- x
                                      :
                                      :   Chapter 11
In re:                                :
                                      :   Case No. 13-11482 (KJC)
EXIDE TECHNOLOGIES,                   :
                                      :
        Reorganized Debtor.[1]        :
                                      :
------------------------------------- x

**DECLARATION OF JOSEPH WICKHAM IN SUPPORT OF REORGANIZED
DEBTOR'S OMNIBUS REPLY IN SUPPORT OF THE REORGANIZED DEBTOR'S
OBJECTIONS TO CERTAIN INSUFFICIENT DOCUMENTATION AND
NO LIABILITY EMPLOYEE OR RETIREE CLAIMS**

    1. My name is Joseph Wickham. I am over the age of 18 and competent to testify. I am a Director, Benefits and Compensation department at Exide Technologies ("Exide" or the "Reorganized Debtor"). I submit this declaration in support of the Reorganized Debtor's Omnibus Reply in Support of the Reorganized Debtor's Objections to Certain Insufficient Documentation and No Liability Employee or Retiree Claims (the "Reply"). I have read and am familiar with the contents of the Reply.[2]

    2. I have held my current position with Exide since September 5, 2017. As a result of my time with Exide, my review of relevant documents, and my discussions with other members of the Compensation and Benefits department at Exide, I am familiar with all aspects of Exide's benefits related to retirement plans. Except as otherwise noted, I have personal

---

[1] The last four digits of the Reorganized Debtor's taxpayer identification number are 2730. The Reorganized Debtor's corporate headquarters are located at 13000 Deerfield Parkway, Building 200, Milton, Georgia 30004.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Reply.

knowledge of the matters set forth herein and all facts set forth in this Declaration are based on my personal knowledge, my discussions with other members of Exide's Compensation and Benefits department, and my review of relevant documents. I am authorized to submit this Declaration on behalf of Exide and if called to testify as a witness in this matter, I could and would testify competently to the facts set forth herein.

3. I am familiar with the Exide Technologies Retirement Plan (the "Pension Plan"), which is the sole defined benefit pension plan sponsored by Exide. The Pension Plan covers virtually all of the Exide's active and former employees who were hired prior to 2006, including active former employees of Gould National Battery, which was purchased by Exide in 2000, and hourly union employees covered by certain collective bargaining agreements. The Pension Plan is closed to new entrants, and benefits under the Pension Plan are frozen for all participants. I am one of the persons responsible for overseeing the retiree benefits paid to former employees under the Pension Plan.

4. Since Exide emerged from bankruptcy as the Reorganized Debtor in 2015, Exide has continued to pay all retiree benefits under the Pension Plan in accordance with, and subject to, its terms, Employee Retirement Income Security Act of 1974, and the Internal Revenue Code.

**A. James Cannon, Jr.**

5. James Cannon, Jr. ("Cannon") is a former Exide employee whose full retirement date is December 1, 2026. On or about November 1, 2017, Cannon elected to receive early retirement. Upon his early retirement, Cannon was entitled to receive from the Pension Plan a one-time lump-sum benefit payment of $34,002.11 (the "Cannon Lump-Sum Payment"). At that time, Cannon chose to take the Cannon Lump-Sum Payment from the Pension Plan. On or about

2

December 1, 2017, Cannon received the Cannon Lump Sum Payment from Pension Plan. Accordingly, the Pension Plan's obligations to Cannon have been satisfied in full.

**B.    Roger Coddington**

6.  Roger Coddington ("Coddington") is a former Exide employee whose full retirement date is December 1, 2022. On or about November 1, 2017, Coddington elected to receive early retirement. Upon his early retirement, Coddington was entitled to receive from the Pension Plan a one-time lump-sum benefit payment of $24,030.26 (the "Coddington Lump-Sum Payment"). At that time, Coddington chose to take the Coddington Lump-Sum Payment. On or about December 1, 2017, Coddington received the Coddington Lump Sum Payment from the Pension Plan. Accordingly, the Pension Plan's obligations to Coddington have been satisfied in full.

**C.    Willard Connor**

7.  Willard Connor ("Connor") is a former Exide employee his full retirement date was on October 1, 2017. Upon his retirement, Connor was entitled to receive from the Pension Plan monthly lifetime benefits of $140.00. However, Connor's benefit commencement date was deferred due to a pending Qualified Domestic Relations Order ("QDRO"). The QDRO has now been vacated, and the Pension Plan has sent Conner the forms required to commence receiving his retiree benefits. It is Exide's expectation that Connor's payments will continue for the period that Exide has obligated itself to provide such benefits.

**D.    Francis Horn**

8.  Francis Horn ("Horn") is a former Exide employee who retired on May 1, 2002. Upon his retirement, Horn was entitled to receive from the Pension Plan monthly lifetime benefits of $113.88. In accordance with his election, Horn began receiving monthly retiree

3

benefits from the Pension Plan in the amount of $113.88. Horn continues to receive these monthly retiree benefits, and as of the date of this Declaration, the Pension Plan has made a total 197 payments to Horn. It is Exide's expectation those payments will continue for the period that Exide has obligated itself to provide such benefits.

E.   **Willie Jones, Jr.**

9.   Willie Jones, Jr. ("Jones") is a former Exide employee who retired on April 1, 2009. Prior to his retirement, Jones was a member of the International Union, United Automobile, Aerospace and Agriculture International Workers of America, Local Union 1532 (the "Union") and was covered by a collective bargaining agreement between the Union and Exide. In June 2006, the Shreveport facility where Jones was employed was permanently closed. According to Mr. Jones, in connection with this closure, the Union and Exide entered into a Closing Agreement, one purpose of which was to set forth the parties' understanding of the benefits that Exide would provide to members of the Union as a result of Exide's decision to permanently close the Shreveport facility.

10.   Jones alleges that he was entitled to unreduced early retirement benefits at age fifty-eight (58) after 17 years of service when he applied for retirement in 2006. In 2006, prior to closing the Shreveport facility, early retirement was not available to Jones under the Pension Plan based on his age and years of service. According to Mr. Jones, pursuant to the Closing Agreement, Exide agreed to the Union's request that Exide modify the Pension Plan to enact early retirement for associates who were age 55 with 10 years of vesting service as of June 22, 2006. This early retirement provision would have permitted associates who were age 55 with 10 years of vesting service prior to June 22, 2006 to be eligible for reduced retirement benefits.

4

Neither the Pension Plan nor the Closing Agreement provided for unreduced retirement benefits based on Jones' age and years of service.

11. Upon his retirement, Jones was entitled to receive from the Pension Plan reduced monthly lifetime benefits of $411.73. In accordance with his election, Jones began receiving monthly retiree benefits in the amount of $411.73. Jones continues to receive these monthly retiree benefits, and as of the date of this Declaration, the Pension Plan has made a total of 194 payments to Jones. It is Exide's expectation those payments will continue for the period that Exide has obligated itself to provide such benefits.

F. Melvin Pearson

12. Melvin Pearson ("Pearson") is a former Exide employee who retired on May 1, 2016. Upon his retirement, Pearson was entitled to receive from the Pension Plan monthly lifetime benefits of $143.55. In accordance with his election, Person began receiving the monthly benefit payments in the amount of $143.55. Pearson continues to receive these monthly payments, and as of the date of this Declaration, the Pension Plan has made a total of 29 payments to Pearson. It is Exide's expectation those payments will continue for the period that Exide has obligated itself to provide such benefits.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing information is true and correct to the best of my knowledge, information and belief.

Executed on September 6, 2018

_____
Joseph Wickham