**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| *In re*: | : | Chapter 11 |
| | : | |
| EXIDE TECHNOLOGIES, | : | Case No.  13-11482 (MFW) |
| | : | |
| Debtor. | : | **Hearing Date: September 18, 2019, 2 p.m.** |
| | : | **Reply Deadline: August 5, 2019** |
| | : | **RE: Doc. No. 5188** |
| | : | |

### UNITED STATES TRUSTEE'S OBJECTION TO REORGANIZED DEBTOR'S MOTION TO DETERMINE EXTENT OF LIABILITY FOR POST-CONFIRMATION QUARTERLY FEES PAYABLE PURSUANT TO 28 U.S.C. § 1930(a)(6) [Doc. No. 5188]

RAMONA D. ELLIOTT
Deputy Director/General Counsel
P. MATTHEW SUTKO
Associate General Counsel
SUMI K. SAKATA
Trial Attorney

Department of Justice
Executive Office for United States
  Trustees
441 G Street, N.W., Suite 6150
Washington, DC  20530
Tel:  (202) 307-1399
Fax: (202) 307-2397

ANDREW R. VARA
Acting United States Trustee, Region 3
T. PATRICK TINKER
Assistant United States Trustee
LINDA J. CASEY
ROBERT J. SCHNEIDER, JR.
Trial Attorneys
Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
Tel:  (302) 573-6491
Fax: (302) 573-6497

# TABLE OF CONTENTS

**SUMMARY** ................................................................................................................ **1**

**FACTS** ...................................................................................................................... **1**

I.    EXIDE FILES A CHAPTER 11 CASE. ............................................................................ 1

II.   EXIDE CHALLENGES THE QUARTERLY FEES DUE UNDER 28 U.S.C. § 1930(A)(6). ............. 2

**OBJECTION** ............................................................................................................. **3**

I.    CONGRESS IMPOSES CHAPTER 11 QUARTERLY FEES FOR DEPOSIT INTO A FUND AT THE
U.S. TREASURY SO TAXPAYERS WILL NOT PAY THE COST OF THE UNITED STATES
TRUSTEE PROGRAM. ............................................................................................. 5

    A.   No fewer than 11 times, Congress has carefully recalibrated quarterly fees and other
court fees to meet the funding needs of the bankruptcy system. ............................... 5

    B.   Any quarterly fees charged in judicial districts in Alabama and North Carolina must
"equal" those charged in the rest of the country. .................................................. 8

    C.   Congress temporarily increased fees in 2017 to (i) protect general taxpayers from
having to subsidize the Program and (ii) fund additional judgeships. ...................... 10

II.   THE 2017 AMENDMENT DOES NOT VIOLATE THE BANKRUPTCY CLAUSE. ...................... 14

    A.   The Bankruptcy Clause ensures that Congress (i) can pass laws providing relief to
debtors enforceable in all fifty states and (ii) does not pass private bankruptcy bills,
and the 2017 Amendment impinges on neither purpose. ....................................... 15

    B.   Congress's 2017 quarterly fee amendment does not violate the Bankruptcy Clause
because the law is uniform. ............................................................................ 16

    C.   A failure to apply section 1930 due to error does not violate the Bankruptcy Clause. 19

    D.   Alternatively, the 2017 amendment does not violate the Bankruptcy Clause because
section 1930(a)(6) is not a law "on the subject of Bankruptcies." ........................... 20

III.  THE 2017 AMENDMENT IS NOT IMPERMISSIBLY RETROACTIVE, NOR DOES IT VIOLATE THE
FIFTH AMENDMENT. ............................................................................................. 22

    A.   The 2017 amendment mandates that it operate prospectively, and applies only to
disbursements made more than two months after its enactment. .............................. 23

    B.   Even had the 2017 amendment been retroactive, it would not have been
unconstitutionally retroactive. ......................................................................... 24

IV.  UNDER SUPREME COURT PRECEDENT, THE 2017 AMENDMENT DOES NOT PRODUCE AN
UNCONSTITUTIONALLY EXCESSIVE USER FEE. ........................................................... 28

**CONCLUSION** ........................................................................................................ **30**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re A.H. Robins Co. Inc.*,
219 B.R. 145 (Bankr. E.D. Va. 1998) ................................................................................31

*Am. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*,
669 F.3d 359 (3d Cir. 2012) ...............................................................................................26

*Ashton v. Cameron Cty. Water Imp. Dist. No. 1*,
298 U.S. 513 (1936) (Cardozo, J., dissenting) ...................................................................21

*Blanchette v. Conn. Gen. Ins. Corps.*,
419 U.S. 102 (1974) ............................................................................................................15

*Brown v. Legal Found. of Wash.*,
538 U.S. 216 (2003) (Scalia, J. dissenting) ........................................................................25

*In re Buffets, LLC*,
597 B.R. 588 (Bankr. W.D. Tex. 2019) ..............................................................................17

*In re Circuit City Stores, Inc.*,
Case No. 08-35653, 2019 WL 3202203 (Bankr. E.D. Va. July 15, 2019) ............................17

*CTS Corp. v. Dynamics Corp. of America*,
481 U.S. 69 (1987) ..............................................................................................................25

*Eastern Enters. v. Apfel*,
524 U.S. 498 (1998) .......................................................................................................25, 26

*EPA v. New Orleans Pub. Serv., Inc.*,
826 F.2d 361 (5th Cir. 1987) ..............................................................................................24

*Garneau v. City of Seattle*,
147 F.3d 802 (9th Cir. 1998) ..............................................................................................30

*General Motors Corp. v. Romein*,
503 U.S. 181 (1992) ............................................................................................................27

*Hanover Nat'l Bank v. Moyses*,
186 U.S. 181 (1902) ............................................................................................................21

*Hobbs v. Buffets Holdings, LLC*,
Case No. 19-90020 (5th Cir.) (petition filed July 24, 2019) ...............................................17

*Hobbs v. Buffets Holdings, LLC*,
    Case No. 5:19-cv-0173-DAE (W.D. Tex.) ............................................................17

*In re Kindred Healthcare, Inc.*,
    No. 99-3199 (MFW), 2003 WL 22327933 (Bankr. D. Del. Oct. 9, 2003) ..........5, 29

*Koontz v. St. Johns River Water Mgmt. Dist.*,
    570 U.S. 595 (2013) ...........................................................................5, 25, 28

*Landgraf v. USI Film Products*,
    511 U.S. 244 (1994) ...................................................................................24, 27

*Massachusetts v. United States*,
    435 U.S. 444 (1978) ...................................................................................30, 31

*McAndrews v. Fleet Bank of Massachusetts*,
    989 F.2d 13 (1st Cir. 1993) ...............................................................................24

*Merrill Trust Co. v. Red Barn, Inc. (In re Red Barn, Inc.)*,
    23 B.R. 593 (Bankr. D. Me. 1982) .....................................................................18

*National Cable Television Ass'n, Inc. v. United States*,
    415 U.S. 336 (1974) ...........................................................................................30

*Peony Park v. O'Malley*,
    121 F. Supp. 690 (D. Neb. 1954), *aff'd*, 223 F.2d 668 (8th Cir. 1955) .................20

*In re Prines*,
    867 F.2d 478 (8th Cir. 1989) ....................................................19, 24, 26, 27

*In re Reese*,
    91 F.3d 37 (7th Cir. 1996) ...........................................................................15, 22

*In re Richardson Serv. Corp.*,
    210 B.R. 332 (Bankr. W.D. Mo. 1997) ...............................................................24

*Rosenberg v. United States*,
    72 Fed. Cl. 387 (Fed. Cl. 2006) .........................................................................20

*Ruckelshaus v. Monsanto Co.*,
    467 U.S. 986 (1984) ...........................................................................................26

*Ry. Labor Execs. Ass'n v. Gibbons*,
    455 U.S. 457 (1982) ..................................................................................*passim*

*Schultz v. United States*,
    529 F.3d 343 (6th Cir. 2008) ......................................................................15, 19

*Skinner v. Mid-Am. Pipeline Co.*,
490 U.S. 212 (1989)..................................................................30

*St. Angelo v. Victoria Farms, Inc.*,
38 F.3d 1525 (9th Cir. 1994), *as amended by* 46 F.3d 969 (1995).......................17, 21, 22, 23

*Turner Broadcasting Sys., Inc. v. FCC*,
520 U.S. 180 (1997)..................................................................27

*U.S. Trustee v. CF & I Fabricators of Utah, Inc. (In re CF & I Fabricators of Utah, Inc.)*, 150 F.3d 1233 (10th Cir. 1998)..................................................23, 26

*U.S. Trustee v. Gryphon at Stone Mansion, Inc.*,
166 F.3d 552 (3d Cir. 1999).........................................................22

*U.S. v. E.I. Dupont De Nemours and Co., Inc.*,
432 F.3d 161 (3d Cir. 2005) (*en banc*) ................................................30

*United States v. Carlton*,
512 U.S. 26 (1994)....................................................................27

*United States v. Ptasynski*,
462 U.S. 74 (1983)....................................................................19

*United States v. Rodgers*,
461 U.S. 677 (1983)..................................................................18

*United States v. Sperry*,
493 U.S. 52 (1989)................................................................ *passim*

*United States v. U.S. Shoe Corp.*,
523 U.S. 360 (1998)..................................................................30

*Unity Real Estate Co. v. Hudson*,
178 F.3d 649 (3d Cir. 1999).......................................................25, 26

*Usery v. Turner Elkhorn Mining Co.*,
428 U.S. 1 (1976)......................................................................27

*Webb's Fabulous Pharmacies, Inc. v. Beckwith*,
449 U.S. 155 (1980)..................................................................30

**Statutes**

11 U.S.C. §§ 101 *et seq*..........................................................9, 15, 21, 22

11 U.S.C. § 327.........................................................................19

11 U.S.C. § 330(a)(1)...................................................................19

11 U.S.C. § 1112(b)(4)(I) ............................................................................23

11 U.S.C. § 1129(a)(14) ..............................................................................23

12 U.S.C. § 1150 .........................................................................................22

15 U.S.C. § 78fff .........................................................................................22

18 U.S.C. §§ 151-158 ..................................................................................22

26 U.S.C. § 1398 .........................................................................................22

28 U.S.C. 1930(a)(7) ...................................................................................19

28 U.S.C. § 589a ...........................................................................................7

28 U.S.C. § 589a(a) .......................................................................................6

28 U.S.C. § 589a(b) .......................................................................................6

28 U.S.C. § 589a(c) .......................................................................................7

28 U.S.C. § 589a(d) .......................................................................................7

28 U.S.C. § 589a(e) .......................................................................................7

28 U.S.C. § 1914(b) .....................................................................................18

28 U.S.C. § 1930 .................................................................................. *passim*

28 U.S.C. §§ 1930(a)(1) - (5) ........................................................................6

28 U.S.C. § 1930(a)(6) ......................................................................... *passim*

28 U.S.C. § 1930(a)(6)(B) ................................................................... *passim*

28 U.S.C. § 1930(a)(7) ......................................................................... *passim*

28 U.S.C. § 1930(b) .....................................................................................18

28 U.S.C. § 1931 ....................................................................................6, 16

Balanced Budget Downpayment Act, Pub. L. No. 104-91, § 101 (1996) & Pub. L.
    No. 104-99, § 211, 110 Stat. 26 (1996) ................................................8

Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No.
    109-8, tit. III, § 325, 119 Stat. 23, 98-99 (2005)..................................8

Bankruptcy Code sections 327 and 330........................................................18

Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub. L. 99-554, 100 Stat. 3088 (1986) .......................................................6, 9

Bankruptcy Judgeship Act of 2017, Pub. L. No. 115-72, 131 Stat. 1224 (2017) .................. *passim*

Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549 (1978) ...............................5

Consolidated Appropriations Act, 2008, Pub. L. No. 110-161, div. B, tit. II, §§ 212, 213, 121 Stat. 1844, 1914 (2007) ..........................................................................8

Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, tit. II, 132 Stat. 348, 412 (2018) ...............................................................................................30

Deficit Reduction Act of 2005, Pub. L. No. 109-171, tit. X, § 10101, 120 Stat. 4, 184 (2006) ...............................................................................................8

Departments of Commerce, Justice and State, the Judiciary, and Related Agencies Appropriations Act, 1990, Pub. L. No. 101-162, tit. II, § 406, 103 Stat. 988, 1016 (1989) ...............................................................................................7

Departments of Commerce, Justice and State, the Judiciary, and Related Agencies Appropriations Act, 1992, Pub. L. No. 102-140, tit. I, § 111, 105 Stat. 782, 795 (1991) ...............................................................................................7

Departments of Commerce, Justice, and State, the Judiciary and Related Agencies Appropriations Act, 1994, Pub. L. No. 103-121, tit. I, § 111, 107 Stat. 1153, 1164-65 (1993) ...............................................................................................8

Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief, 2005, Pub. L. No. 109-13, § 6058, 119 Stat. 297 (2005) ...............................................................................................8

Federal Courts Improvement Act of 2000, Pub. L. No. 106-518, 114 Stat. 2410 (2000) .............................................................................................8, 9

Judicial Improvements Act of 1990, Pub. L. No. 101-650, § 317(a), 104 Stat. 5089 (1990) ...............................................................................................17

Omnibus Consolidated Appropriations Act, 1997, Pub. L. No. 104-208, tit. I, § 109, 110 Stat. 3009, 3009-18-3009-19 (1996) ..........................................................8

Pub. L. No. 106-518, § 105 (2000) ...............................................................................9

Temporary Bankruptcy Judgeships Extension Act of 2012, Pub. L. No. 112-121, § 3, 126 Stat. 346, 348-349 (2012) ...............................................................8

## Other Authorities

Cong. Budget Office Cost Estimate, H.R. 2266, Bankruptcy Judgeship Act of
2017 (May 18, 2017), https://www.cbo.gov/system/files/2018-07/52739-
hr2266.pdf ...............................................................................................................11, 12

Dep't of Justice, U.S. Tr. Program FY 2016 Performance Budget Cong.
Submission,
https://www.justice.gov/sites/default/files/jmd/pages/attachments/2015/02/01/
18._u.s._trustee_program_ustp.pdf ................................................................................30

Dep't of Justice, U.S. Tr. Program FY 2018 Performance Budget Cong.
Submission, https://www.justice.gov/file/968761/download ..................................................10

Dep't of Justice, U.S. Tr. Program FY 2019 Performance Budget Cong.
Submission, https://www.justice.gov/jmd/page/file/1034391/download ................................11

Fed. R. Bankr. P. 7001 ............................................................................................1

H.R. 1752 .............................................................................................................9

H.R. 2112 .............................................................................................................9

H.R. Conf. Rep. No. 104-378 (1995) .........................................................................8

H.R. Rep. No. 95-595 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963 .....................5, 6

H.R. Rep. No. 99-764 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5227 .....................6, 7

H.R. Rep. No. 115-130 (2017), *reprinted in* 2017 U.S.C.C.A.N. 154 ................. *passim*

*May*, Black's Law Dictionary (11th ed. 2019) .............................................................18

Multidistrict, Multiparty, Multiforum Trial Jurisdiction Act of 1999 and Federal
Courts Improvement Act of 1999: Hearing before the Subcomm. on Courts
and Intellectual Property of the H. Comm. on the Judiciary,
http://catalog.hathitrust.org/api/volumes/oclc/44193215.html ................................9

Remarks of Director Cliff White Before the Del. Bankr. Am. Inn of Court (Dec.
11, 2018), https://www.justice.gov/ust/speech/remarks-director-cliff-white-
delaware-bankruptcy-american-inn-court .............................................................12

Report of the Proceedings of the Judicial Conference of the United States 11
(Sept. 2018), https://www.uscourts.gov/sites/default/files/2018-
09_proceedings.pdf .............................................................................................14

Report of the Proceedings of the Judicial Conference of the United States (2001),
http://www.uscourts.gov/sites/default/files/2001-09_0.pdf........................... *passim*

S.2915 ...................................................................................................................9

U.S. Const. amend. V..............................................................................3, 23, 25, 27

U.S. Const. art. I, § 8, cl. 1..................................................................................20

U.S. Const. art 1, § 8, cl. 4 ............................................................................. *passim*

U.S. Const. art. 1, § 9, cl. 5 ...................................................................................30

Andrew R. Vara, the Acting United States Trustee for Region 3, objects to the

*Reorganized Debtor's Motion to Determine Extent of Liability for Post-Confirmation Quarterly*

*Fees Payable Pursuant to 28 U.S.C. § 1930(a)(6)* (the "Motion") [Docket No. 5188] filed by

Exide Technologies.  In support of this objection,[1] the United States Trustee states as follows:

### SUMMARY

1.      Under 28 U.S.C. § 1930(a)(6), a quarterly fee must be paid in every chapter 11 case,

calculated upon disbursements made in the case during the quarter.  In 2017, Congress amended

section 1930(a)(6).  That 2017 amendment temporarily increased the fees collected in larger

chapter 11 cases, those with disbursements of $1 million or more in a quarter.  Congress passed

the 2017 amendment so the Treasury would collect sufficient fees to fully offset the

congressional appropriations that fund the United States Trustee Program, and fund 18 additional

bankruptcy judgeships, seven of which are in this District.  It did that so ordinary taxpayers

would not bear those bankruptcy-related costs.  The amendment provided expressly that the

temporary fee increase was effective for disbursements made on or after January 1, 2018.

2.      Exide seeks to avoid paying the temporary fee increase by claiming that Congress's 2017

amendment is unconstitutionally (**i**) non-uniform, (**ii**) retroactive, and (**iii**) excessive.  Motion ¶ 3.

This Court should deny the Motion.

### FACTS

**I.      Exide Files a Chapter 11 Case.**

3.      Exide filed a voluntary chapter 11 petition on June 10, 2013.  Doc. No. 1.

---

[1]  The United States Trustee has filed a separate motion requiring Exide to seek its requested
relief through an adversary proceeding ("Rule 7001 motion").  In the event this Court grants the
Rule 7001 motion and Exide commences an adversary proceeding, the United States Trustee
asks that this objection be docketed there as a motion to dismiss or for summary judgment.

4.      Exide filed a second amended disclosure statement, which included financial projections

through 2019.  Doc. No. 3095.  As prologue, Exide set out a two and a half page disclaimer in all

caps warning, among other things, that the projections were subject to "significant . . .

uncertainties and contingencies," as well as "unanticipated" events, and "may not be relied upon

as a guarantee or other assurance of the actual results."  Doc. No. 3095 at pp. ii-iv.  Exide further

acknowledged "additional unanticipated costs related to its restructuring activities" as a factor

that "could cause actual results to differ materially from" the financial projections  *Id.* at 148.

5.      This Court confirmed Exide's fourth amended plan of reorganization on March 27, 2015,

which went into effect on April 30, 2015.  Doc. 3409, 3423 & 3571.  That plan provides that

Exide "shall continue to pay fees pursuant to section 1930 of title 28 of the United States Code

until the Chapter 11 Case is closed by entry of the Final Decree."  Doc. No. 3409 at ¶ 15.2.

6.      No final decree has been entered in this chapter 11 case.

## II.     Exide Challenges the Quarterly Fees Due Under 28 U.S.C. § 1930(a)(6).

7.      Under 28 U.S.C. § 1930(a)(6), Exide must pay a quarterly fee calculated on

disbursements in its case for each quarter it is in chapter 11.  A 2017 amendment to section

1930(a)(6) temporarily increased the fees paid in the largest chapter 11 cases—those with

quarterly disbursements of $1 million or more—to the lesser of 1% of quarterly disbursements or

$250,000.  The 2017 amendment applies to all disbursements made in Exide's case from January

1, 2018, onward.  28 U.S.C. § 1930(a)(6)(B); *see also* Bankruptcy Judgeship Act of 2017, Pub.

L. No. 115-72, § 1004(c), 131 Stat. 1224, 1232 (2017) (uncodified).[2]

---

[2] Section 1004 of the amendment provides in relevant part:
(c)  APPLICATION OF AMENDMENTS.—The amendments made by this section shall apply
to quarterly fees payable under section 1930(a)(6) of title 28, United States Code, as amended by
this section, for disbursements made in any calendar quarter that begins on or after the date of
enactment of this Act.

8.      On June 12, 2019—after paying quarterly fees for a year in the amount required by the 2017 amendment—Exide filed the Motion.  It alleges that it had $25 million or more in quarterly disbursements, and has paid the statutory maximum quarterly fees since the 2017 amendment went into effect.  Exide's Memorandum in Support of Motion ("Brief") ¶ 12;[3] Motion, Ex. 1.

9.      Exide asks this Court to declare the amendment unconstitutional on three grounds:  (**i**) the temporary fee increase was unconstitutionally non-uniform, violating the Bankruptcy Clause, U.S. Const. art 1, § 8, cl. 4,  because the increased fees in six judicial districts located in Alabama and North Carolina (the "bankruptcy administrator districts") were not collected in bankruptcy cases filed before October 1, 2018; (**ii**) the law is improperly retroactive, and violates the Takings and Due Process Clause of the Fifth Amendment; and (**iii**) it assesses an "excessive" user fee that constitutes a taking.  Brief ¶¶ 29-69.

10.     Exide requests that this Court find that (**i**) the 2017 amendment is unconstitutional and (**ii**) "the amount of fees owed to the UST pursuant to 28 U.S.C. § 1930(a)(6) is no more than $30,000 per quarter through the entry of the final decree in [its] chapter 11 case."  Motion ¶ 5.

## OBJECTION

11.     The Motion should be denied.  Congress exercised its legislative expertise and discretion in determining what fees are necessary to maintain the bankruptcy system.  It takes seriously its duty in regulating the designation and collection of these fees.  It adopted the 2017 amendment only after concluding that increased fees were necessary to offset the U.S. Trustee Program's operational costs and to fund additional bankruptcy judgeships.

12.     Contrary to Exide's arguments, the 2017 amendment is not unconstitutional.

---

[3]  The 2017 amendment temporarily increased the statutory maximum quarterly fee by 733%, not 833% as Exide represented, Brief ¶ 12.  [($250,000 - $30,000) / $30,000 x 100 = 733%].

13.    First, the 2017 amendment does not violate the Bankruptcy Clause.  The Bankruptcy

Clause requires only uniform laws.  Section 1930, as amended, is uniform because 28 U.S.C.

§ 1930(a)(7) allows bankruptcy administrator districts—those in Alabama and North Carolina—

to charge fees "equal" to those charged in the other districts under section 1930(a)(6); they may

not charge a different fee, or charge the fee differently.  Indeed, the Judicial Conference directed

in 2001 (the "2001 Directive") that bankruptcy administrator districts impose fees in the amounts

set in section 1930:

> "as those amounts may be amended from time to time."[4]

Those districts' unexplained failure on January 1, 2018, to comply with the 2001 Directive,

which remained in effect, and with section 1930(a)(7), was error, not the absence of a uniform

law.

14.    In enacting the 2017 amendment, Congress had every right to expect those districts

would follow the applicable and long-settled Judicial Conference mandate and their governing

statute.  Congress did nothing unconstitutional in doing that.

15.    Alternatively, the 2017 amendment does not violate the Bankruptcy Clause because

section 1930(a)(6) is not a law on the subject of bankruptcy.  "Bankruptcy" is the "subject of the

relations between an insolvent or nonpaying or fraudulent debtor and his creditors, extending to

his and their relief."  *Ry. Labor Execs. Ass'n v. Gibbons*, 455 U.S. 457, 466 (1982).  By contrast,

section 1930(a)(6) is a revenue measure that allocates the costs of certain government functions

so that they fall on users rather than taxpayers.

16.    Second, 2017 amendment is not impermissibly retroactive; it is expressly *prospective* as

---

[4] *See* Report of the Proceedings of the Judicial Conference of the United States 46 (Sept./Oct.
2001), http://www.uscourts.gov/sites/default/files/2001-09_0.pdf (excerpt attached as Exhibit A)
("2001 Judicial Conference Report").

it applies to disbursements beginning January 1, 2018 rather than going back to disbursements made since the petition date. Exide has such disbursements so it must comply with the law. But even if the amendment were retroactive, it is not unconstitutional. The Supreme Court has established that user fees are not takings, *see Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 615 (2013), and user fees do not violate due process where—like here—it "is justified by a rational legislative purpose." *See United States v. Sperry*, 493 U.S. 52, 64 (1989).

17.     Finally, the 2017 amendment is not an unconstitutionally excessive user fee that constitutes a taking. Again, user fees cannot be takings, *Koontz*, 570 U.S. at 615, and even if they could, as this Court has already held, fees assessed under section 1930(a)(6) are not "excessive" under Supreme Court precedent. *In re Kindred Healthcare, Inc.*, No. 99-3199 (MFW), 2003 WL 22327933, at *5 (Bankr. D. Del. Oct. 9, 2003).

**I.     Congress Imposes Chapter 11 Quarterly Fees For Deposit into a Fund at the U.S. Treasury So Taxpayers Will Not Pay the Cost of the United States Trustee Program.**

  **A.     No fewer than 11 times, Congress has carefully recalibrated quarterly fees and other court fees to meet the funding needs of the bankruptcy system.**

18.     In passing the Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549 (1978), Congress overhauled the bankruptcy system to free bankruptcy courts from case-specific administrative duties. H.R. Rep. No. 95-595, at 3 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 5965. Congress did this by transferring them to a "new system of United States trustees" in the Justice Department.[5] *Id.* at 4, 100. United States Trustees "were given responsibility for many administrative functions, such as appointing private trustees and monitoring their performance,

---

[5] The United States Trustee Program was established as a pilot program in 1978 and was made national in 1986. *See* Bankruptcy Reform Act of 1978, Pub. L. 95-598, 92 Stat. 2549 (1978); Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub. L. 99-554, 100 Stat. 3088 (1986). All jurisdictions participate in the United States Trustee Program except those within Alabama and North Carolina. *See infra* ¶ 24.

and monitoring cases for signs of fraud or abuse." *Id*. Thus, as envisioned by Congress, the

United States Trustee Program was integral to the new bankruptcy system. H.R. Rep. No. 95-

595, at 88-109.

19.    To fund the Program, Congress imposed a variety of "bankruptcy fees," including the

quarterly fee required by 28 U.S.C. § 1930(a)(6). Quarterly fees under section 1930(a)(6) and a

portion of the filing fees collected by the clerk of the bankruptcy court under other provisions of

section 1930[6] are deposited into the United States Trustee System Fund established in the U.S.

Treasury (the "Fund"), and are used to offset congressional appropriations made to directly fund

the Program.[7] *See* 28 U.S.C. § 589a(a) & (b); H.R. Rep. No. 115-130, at 7 (2017), *reprinted in*

2017 U.S.C.C.A.N. 154, 159-60.

20.    That helps ensure the Program's cost is borne "by the users of the bankruptcy system—at

no cost to the taxpayer." *See* H.R. Rep. No. 99-764, at 25 (1986), *reprinted in* 1986

U.S.C.C.A.N. 5227, 5238; *see also id*. at 22.

21.    Before settling on quarterly fees based on disbursements as part of the way to fund the

Program, Congress "considered many different possible mechanisms . . . including fees based on

a debtor's assets, fees based on a debtor's liabilities, and a flat fee for all debtors." H.R. Rep.

No. 99-764, at 26. Congress decided to charge graduated quarterly fees based on the size of a

---

[6] The filing fees paid to the clerk of the bankruptcy court under section 1930(a)(1) through (a)(5) are shared by the United States Trustee Program and the judiciary, among others. 28 U.S.C. § 589a(b); 28 U.S.C. § 1931 (text and notes). Thus, while Exide implies the contrary, Brief ¶ 68, debtors in *all* chapters share in off-setting the Program's costs.

[7] Prior to the 2017 amendment, 100% of quarterly fees collected was deposited into the Fund. The 2017 amendment temporarily reduced that to 98%, with the remaining 2% to be deposited in the general fund of the Treasury for use in funding 18 additional judgeships. *See* Bankruptcy Judgeship Act of 2017, Pub. L. No. 115-72, div. B, § 1004(b), 131 Stat. 1224, 1232 (2017); H.R. Rep. No. 115-130, at 7-9.

chapter 11 case's disbursements because it determined that "[s]maller chapter 11 debtors should

pay smaller additional fees than larger debtors; [and] the funding mechanism [in section

1930(a)(6)] ensures that this will be the case." *Id.*

22.     This regime allows Congress to easily increase or reduce the fees paid under section

1930, so that the amount collected for deposit in the Fund will never be unacceptably small or

unreasonably large.  The Attorney General must report to Congress every year on the amounts

deposited in the Fund and expenditures made to offset the United States Trustee Program's

appropriations.  *See* 28 U.S.C. § 589a(d).  If the amounts collected exceed the appropriations for

a particular year, the excess remains in the Fund to offset appropriations in subsequent years.

*See* 28 U.S.C. § 589a(c).  Conversely, if the costs of operating the Program in a particular year

exceed the amounts available in the Fund, monies collected from taxpayers might be required to

fund part of the appropriation to the Program.  *See* 28 U.S.C. § 589a(e).

23.     On no fewer than eleven occasions, Congress has amended section 1930(a) or section

589a of title 28 to adjust the amount or allocation, or both, of filing fees and quarterly fees to be

deposited into the Fund:

•        Departments of Commerce, Justice and State, the Judiciary, and Related Agencies
         Appropriations Act, 1990, Pub. L. No. 101-162, tit. II, § 406, 103 Stat. 988, 1016
         (1989) (increasing filing fee);

•        Departments of Commerce, Justice and State, the Judiciary, and Related Agencies
         Appropriations Act, 1992, Pub. L. No. 102-140, tit. I, § 111, 105 Stat. 782, 795
         (1991) (increasing filing fee and quarterly fees, and directing deposit of a
         percentage of fees into Fund);

•        Departments of Commerce, Justice, and State, the Judiciary and Related Agencies
         Appropriations Act, 1994, Pub. L. No. 103-121, tit. I, § 111, 107 Stat. 1153,
         1164-65 (1993) (increasing filing fees, changing percentage of fees allocated to
         Fund, and requiring Judicial Conference to report on bankruptcy fee system and
         possible impact of using graduated fee system based on assets, liabilities, or both,
         of debtor);

7

- Balanced Budget Downpayment Act, Pub. L. No. 104-91, § 101, (1996) & Pub. L. No. 104-99, § 211, 110 Stat. 26, 37-39 (1996) (enacting into law provisions of H.R. Conf. Rep. No. 104-378 (1995), including section 111(a), which extended quarterly fee payments into post-confirmation period);

- Omnibus Consolidated Appropriations Act, 1997, Pub. L. No. 104-208, tit. I, § 109, 110 Stat. 3009, 3009-18-3009-19 (1996) (increasing quarterly fees and clarifying that prior amendment applies to all cases, including pending cases, regardless of confirmation status of reorganization plan);

- Federal Courts Improvement Act of 2000, Pub. L. No. 106-518, §§ 103 & 105, 114 Stat. 2411 (2000) (increasing filing fee and conversion fee, and providing for fees under subsection (a)(7));

- Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, tit. III, § 325, 119 Stat. 23, 98-99 (2005), as amended by Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief, 2005, Pub. L. No. 109-13, § 6058, 119 Stat. 297 (2005) (increasing filing fees and changing percentage of fees allocated to Fund);

- Deficit Reduction Act of 2005, Pub. L. No. 109-171, tit. X, § 10101, 120 Stat. 4, 184 (2006) (increasing filing fees);

- Consolidated Appropriations Act, 2008, Pub. L. No. 110-161, div. B, tit. II, §§ 212, 213, 121 Stat. 1844, 1914 (2007) (adjusting quarterly fees and directing deposit of fines into Fund);

- Temporary Bankruptcy Judgeships Extension Act of 2012, Pub. L. No. 112-121, § 3, 126 Stat. 346, 348-349 (2012) (increasing filing fee and decreasing allocation of fees into Fund); and

- Bankruptcy Judgeship Act of 2017, Pub. L. No. 115-72, div. B, § 1004, 131 Stat. 1224, 1232 (2017) (increasing quarterly fees for largest chapter 11 debtors).

### B.   Any quarterly fees charged in judicial districts in Alabama and North Carolina must "equal" those charged in the rest of the country.

24.   All jurisdictions participate in the Program except in Alabama and North Carolina. *See* Pub. L. No. 99-554 (1986); Pub. L. No. 106-518, § 501 (2000). In those two states, Judicial Branch employees known as bankruptcy administrators oversee chapter 11 cases.

25.   Although bankruptcy administrators initially could not charge quarterly fees, at the request of the Judicial Conference, Congress fixed that in 2001 by enacting section 1930(a)(7).

*See* Pub. L. No. 106-518, § 105 (2000).

26.    As the Judicial Conference requested, section 1930(a)(7) provides that in the bankruptcy administrator districts "the Judicial Conference of the United States may require the debtor in a case under chapter 11 of title 11 to pay fees *equal to* those imposed by paragraph (6) of this subsection."  28 U.S.C. § 1930(a)(7) (emphasis added).  It does not permit them to charge fees that differ from those set by section 1930(a)(6).  *Id*.  The equal charge requirement was in full force and effect on January 1, 2018.

27.    Congress adopted section 1930(a)(7) at the Judicial Conference's request specifically to resolve perceived uniformity issues between the United States Trustee and bankruptcy administrator districts, as explained by a Judicial Conference representative who testified before Congress.  *See* Multidistrict, Multiparty, Multiforum Trial Jurisdiction Act of 1999 and Federal Courts Improvement Act of 1999: Hearing before the Subcomm. on Courts and Intellectual Property of the H. Comm. on the Judiciary on H.R. 2112 and H.R. 1752,[8] 106 Cong. 26-27 (1999) (statement of Harvey F. Schlesinger, Judge, U.S. District Court for the Middle District of Florida), available at http://catalog.hathitrust.org/api/volumes/oclc/44193215.html.[9]

28.    Promptly upon section 1930(a)(7)'s enactment, the Judicial Conference issued its 2001 Directive mandating the imposition of quarterly fees in bankruptcy administrator districts "in the amounts specified in 28 U.S.C. § 1930, *as those amounts may be amended from time to time.*"  *See* 2001 Judicial Conference Report at 45-46 (emphasis added).  Thus, the 2001 Directive

---

[8] H.R. 1752 is the House of Representative's companion bill to the enacted Senate bill, S.2915, which became Pub. L. No. 106-518.  In that same legislation, Congress also removed the deadline for Alabama and North Carolina to adopt the United States Trustee system.  S*ee* Pub. L. No. 106-518, § 501 (2000).

[9]  Each website cited in this brief was last viewed on August 5, 2019.

automatically approved future changes to the quarterly fees charged in bankruptcy administrator

districts so that they immediately mirror any amendment to section 1930(a)(6).

### C.   Congress temporarily increased fees in 2017 to (i) protect general taxpayers from having to subsidize the Program and (ii) fund additional judgeships.

29.   In October 2017, Congress amended section 1930(a)(6) to increase temporarily the

quarterly fees when the disbursements in a case equal or exceed $1 million during a quarter and

the Fund balance is below $200 million in the most recent fiscal year.  *See* H.R. Rep. No. 115-

130, at 7-8.  The new subparagraph (B) provides:

> (B) During each of fiscal years 2018 through 2022, if the balance in the
> United States Trustee System Fund as of September 30 of the most recent
> full fiscal year is less than $200,000,000, the quarterly fee payable for a
> quarter in which disbursements equal or exceed $1,000,000 shall be the
> lesser of 1 percent of such disbursements or $250,000.

28 U.S.C. § 1930(a)(6)(B).

30.   The 2017 amendment provides that it "shall apply to quarterly fees payable under section

1930(a)(6) . . . for disbursements made in any calendar quarter that begins on or after the date of

enactment" of the amendment.  Bankruptcy Judgeship Act of 2017, Pub. L. No. 115-72,

§ 1004(c) (uncodified).  The first such quarter began on January 1, 2018.

31.   Congress passed the 2017 amendment following an unprecedented seven-year decline in

bankruptcy filings.  *See* Dep't of Justice, U.S. Tr. Program FY 2018 Performance Budget Cong.

Submission at 9, https://www.justice.gov/file/968761/download ("UST FY 2018 Submission")

(showing a consistent decrease in quarterly fee and filing fee collections over the past several

years).  The resulting decrease in fees collected under section 1930(a) exhausted the Fund's

unrestricted balance during fiscal year 2017.  *See* Dep't of Justice, U.S. Tr. Program FY 2019

Performance Budget Cong. Submission at 9,

https://www.justice.gov/jmd/page/file/1034391/download.  Without the amendment, the Fund

10

was predicted to have a zero balance in fiscal year 2018.  *See* UST FY 2018 Submission at 9.

Any remaining balance and fee collections were projected to fall $92 million short of offsetting

the funds appropriated for the Program in fiscal year 2017.  *Id.*

32.　　Because the Program's appropriations are offset from the Fund, *id*. at 8, any shortfall in

offsetting the appropriations results in taxpayers bearing the burden of those operational costs.

Without the Fund surplus from prior years, the Fund would not have been able to fully offset

appropriations to the United States Trustee Program prior to fiscal year 2017.  *Id*. at 9 ("In FY

2016, offsetting collections covered approximately 66 percent of the Program's appropriation,

with the remainder being drawn from the Fund.").

33.　　A May 17, 2017 House Report stated that the bill that led to the 2017 amendment

additionally sought to convert 14 temporary bankruptcy judgeships to permanent judgeships and

add four new bankruptcy judgeships.[10]  H.R. Rep. No. 115-130, at 7-8 (attached as Exhibit B).

Seven of the 18 judgeships are in this district.  *Id.* at 8.  The House Report explained that the

increase in the quarterly fees for large chapter 11 cases was needed to cover the costs of the

judgeships and to provide needed funds for the operations of the United States Trustee

Program.[11]

34.　　The House Report stated that the Judiciary Committee expected, "based on informal

estimates by [the Congressional Budget Office]," that the increased quarterly fees would increase

---

[10] H.R. 2266 was later amended to extend the temporary judgeships rather than converting them to permanent judgeships.

[11] *See* H.R. Rep. No. 115-130, at 8 ("The funds generated by the fee increase will cover both the costs of this bill and separately needed funds for the operation of the U.S. Trustee Program."); *id*. at 7 (noting "inclusion of an increase in the quarterly U.S. Trustee fees for large chapter 11 cases to serve as a funding offset for the cost of the judgeships").  Congress initially planned that 2.5% of quarterly fees would go to Treasury to offset the costs of the judgeships, *id*. at 10, but that amount was later reduced to 2%.  Pub. L. No. 115-72, div. B, § 1004(b).

revenues "by an amount sufficient to fully offset the increases in direct spending caused by the bill." *Id*. at 9.  The day after the House Report was issued, the Congressional Budget Office issued a Cost Estimate, which explained that the increases were necessary to fund the additional judgeships proposed by the bill.  *See* Cong. Budget Office Cost Estimate, H.R. 2266, Bankruptcy Judgeship Act of 2017, at 3 (May 18, 2017) ("May 2017 CBO Report") (attached as Exhibit C), https://www.cbo.gov/system/files/2018-07/52739-hr2266.pdf.

35.    Congress exercised its legislative judgment in designing the temporary fee increase.  The 2017 amendment affected only those chapter 11 cases in which disbursements during a quarter equal or exceed $1 million.  28 U.S.C. § 1930(a)(6)(B).  Quarterly fees in those cases were set to the lesser of 1% of their quarterly disbursements or $250,000.  *Id*.

36.    Based on historical fee and disbursement patterns, the government estimates that only about 10% of chapter 11 debtors have disbursements exceeding $1 million, and only about 1% of chapter 11 debtors would be assessed the maximum fee.  *See* Remarks of Director Cliff White Before the Del. Bankr. Am. Inn of Court (Dec. 11, 2018), https://www.justice.gov/ust/speech/remarks-director-cliff-white-delaware-bankruptcy-american-inn-court.  The 2017 amendment provides for the fees to revert to their previous levels when the Fund equals or surpasses $200 million at the end of a fiscal year.  28 U.S.C. § 1930(a)(6)(B).  Regardless, the increase terminates at the end of fiscal year 2022.  *Id*.

37.    Notably, the 2017 amendment made the percentage charged in the largest chapter 11 cases more consistent with the percentages charged in smaller cases.  The following chart shows the relative pre-amendment percentages (rounded to the nearest hundredth):

| Section 1930(a)(6)(2017) | Disbursements | | Fee | | Percentage Range |
|---|---|---|---|---|---|
| Tier 1 | $ | - | $ | 325.00 | 32500% |
| | $ | 14,999.00 | $ | 325.00 | 2.17% |
| Tier 2 | $ | 15,000.00 | $ | 650.00 | 4.33% |
| | $ | 74,999.00 | $ | 650.00 | 0.87% |
| Tier 3 | $ | 75,000.00 | $ | 975.00 | 1.30% |
| | $ | 149,999.00 | $ | 975.00 | 0.65% |
| Tier 4 | $ | 150,000.00 | $ | 1,625.00 | 1.08% |
| | $ | 224,999.00 | $ | 1,625.00 | 0.72% |
| Tier 5 | $ | 250,000.00 | $ | 1,950.00 | 0.78% |
| | $ | 299,999.00 | $ | 1,950.00 | 0.65% |
| Tier 6 | $ | 300,000.00 | $ | 4,875.00 | 1.63% |
| | $ | 999,999.00 | $ | 4,875.00 | 0.49% |
| Tier 7 | $ | 1,000,000.00 | $ | 6,500.00 | 0.65% |
| | $ | 1,999,999.00 | $ | 6,500.00 | 0.33% |
| Tier 8 | $ | 2,000,000.00 | $ | 9,750.00 | 0.49% |
| | $ | 2,999,999.00 | $ | 9,750.00 | 0.33% |
| Tier 9 | $ | 3,000,000.00 | $ | 10,400.00 | 0.35% |
| | $ | 4,999,999.00 | $ | 10,400.00 | 0.21% |
| Tier 10 | $ | 5,000,000.00 | $ | 13,000.00 | 0.26% |
| | $ | 14,999,999.00 | $ | 13,000.00 | 0.09% |
| Tier 11 | $ | 15,000,000.00 | $ | 20,000.00 | 0.13% |
| | $ | 29,000,000.00 | $ | 20,000.00 | 0.07% |
| Tier 12 | $ | 30,000,000.00 | $ | 30,000.00 | 0.10% |

38.    After the 2017 amendment, the percentages for fees in cases with over $1 million in quarterly disbursements are as follows:

| Tier 7 | $ | 1,000,000.00 | $ | 10,000.00 | 1.00% |
|---|---|---|---|---|---|
| 28 USC 1930(a)(6)(A) | $ | 25,000,000.00 | $ | 250,000.00 | 1.00% |
| | $ | 30,000,000.00 | $ | 250,000.00 | 0.83% |

39.    Thus, both before and after the 2017 amendment, in cases with disbursements of less than $1 million the fees range from 0.49% to 4.33% of quarterly disbursements.  By contrast, before the 2017 amendment cases with disbursements of $1 million or more paid a fee ranging from 0.07% to 0.65% of quarterly disbursements, but never *more* than 0.65%—while the fees were never *less* than 0.65% in cases with less than $300,000 in disbursements.  Even after the 2017 amendment, high-disbursement cases still never pay a fee of more than 1%.

40.    As of January 1, 2018, the effective date of the 2017 amendment, section 1930(a)(7) and

13

the 2001 Directive commanded bankruptcy administrators to charge fees beginning January 1, 2018 that were "equal" to those charged elsewhere: those set forth in section 1930(a)(6), as amended in 2017.  The bankruptcy administrators failed to do so.

41.    Ultimately, the Executive Committee for the Judicial Conference imposed quarterly fees in bankruptcy administrator districts in the amount specified under section 1930(a)(6)(B), but only as of October 1, 2018, and only in cases filed on or after that date.  Report of the Proceedings of the Judicial Conference of the United States 11 (Sept. 2018), https://www.uscourts.gov/sites/default/files/2018-09_proceedings.pdf.  Nothing in the 2017 amendment referenced October 1, 2018, as an effective date nor precluded its application to any bankruptcy case filed up to almost a year after its enactment.  The Executive Committee identified no statutory authority for its decision.

**II.    The 2017 Amendment Does Not Violate the Bankruptcy Clause.**

42.    The Constitution provides that Congress "shall have the power . . . [t]o establish . . . uniform Laws on the subject of Bankruptcies throughout the United States."  U.S. Const. art. 1, § 8, cl. 4.  Congress did not violate this clause when it amended section 1930(a)(6).

43.    Three things must be true for the Bankruptcy Clause to be violated: there must be a lack of uniformity; the lack of uniformity must result from a "Law"; and the law must be "on the subject of Bankruptcies."

44.    None is true here.  First, the statute at issue is uniform as it requires that any fees charged in the bankruptcy administrator districts under section 1930(a)(7) must "equal" those imposed under section 1930(a)(6).  Second, the alleged lack of uniformity resulted not from a law, but from error in the law's application.  And third, the 2017 amendment is not "on the subject of Bankruptcies" because it does not alter debtor or creditor rights or remedies under the Code.

14

**A.    The Bankruptcy Clause ensures that Congress (i) can pass laws providing relief to debtors enforceable in all fifty states and (ii) does not pass private bankruptcy bills, and the 2017 Amendment impinges on neither purpose.**

45.    The two principal purposes of the Bankruptcy Clause are: **(i)** to enable Congress to pass nationwide bankruptcy laws enforceable among the states, because, "[g]iven the sovereign status of the States, questions were raised as to whether one State had to recognize the relief given to a debtor by another State"; and **(ii)** to prohibit Congress from enacting private bankruptcy laws. *See Ry. Labor Execs. Ass'n v. Gibbons*, 455 U.S. 457, 472 (1982); *see also In re Reese*, 91 F.3d 37, 39 (7th Cir. 1996) ("The limited legislative history of the uniformity clause, plus the decisions by the Supreme Court interpreting it . . . establish that the clause forbids only two things.  The first is arbitrary regional differences in the provisions of the Bankruptcy Code.  The second is private bankruptcy bills—that is, bankruptcy laws limited to a single debtor—or the equivalent.").[12]

46.    Given the history and purpose of the Bankruptcy Clause, the Sixth Circuit has explained that "the term 'uniform' was intended to grant an additional power at the expense of the fifty states, rather than to limit the scope of Congress's delegated powers."  *See Schultz v. United States*, 529 F.3d 343, 356 (6th Cir. 2008).

47.    Only once in the nation's history has the Supreme Court held that a statute violated the Bankruptcy Clause.  It did so because the challenged act, by its terms, applied to only one regional bankrupt railroad; therefore, the statute was "nothing more than a private bill," which the Framers sought to prevent by adopting the Bankruptcy Clause.  *Gibbons*, 455 U.S. at 470-72.

---

[12] Even in those areas, Congress retains flexibility in enacting legislation.  *See Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 158 (1974) (rejecting uniformity challenge to statute applied in a single statutorily defined region because "it overlooks the flexibility inherent in the constitutional provision").

**B.**   **Congress's 2017 quarterly fee amendment does not violate the Bankruptcy Clause because the law is uniform.**

48.   Section 1930, as amended in 2017, applies uniformly on its face.  The statute sets a graduated amount of fees for all cases under chapter 11, and the 2017 amendment governs fees in all chapter 11 cases with quarterly disbursements equal to or exceeding $1 million.

49.   Exide argues that the 2017 amendment, despite its facial uniformity, is not uniform because the Judicial Conference did not immediately adopt the fee increase in bankruptcy administrator districts as of January 1, 2018, but instead only authorized the increase to begin for cases filed on or after October 1, 2018.  Brief ¶ 35.

50.   This is wrong for two reasons.  First, under the Judicial Conference's 2001 Directive, which remained in effect, the fee increase *was* effective on January 1, 2018.  Second, nothing in the 2017 amendment purports to exclude chapter 11 cases in Alabama and North Carolina from the fee increases.  To the contrary, 28 U.S.C. § 1930(a)(7) mandates that any quarterly fees charged in bankruptcy administrator districts must be the same as—"equal to"—those prescribed in subparagraph (a)(6).[13]  The law is thus uniform in its prescription of the amount of quarterly fees due in chapter 11 cases.

51.   As a result, the statute itself refutes the *Buffets* court's statement, on which Exide relies, that the 2017 amendment "increased quarterly fees only in the UST program." *In re Buffets, LLC,* 597 B.R. 588, 595 (Bankr. W.D. Tex. 2019), appeal pending *sub nom. Hobbs v. Buffets Holdings, LLC*, Case No. 5:19-cv-0173-DAE (W.D. Tex.) (cited in Brief ¶ 33).[14]

---

[13] Similar to the quarterly fees paid under section 1930(a)(6), quarterly fees collected in the bankruptcy administrator districts are deposited into a special fund to offset congressional appropriations for federal courts.  *See* 28 U.S.C. §§ 1930(a)(7) & 1931.

[14] The United States Trustee has petitioned the Fifth Circuit for direct appeal of the bankruptcy court order.  *Hobbs v. Buffets Holdings, LLC*, Case No. 19-90020 (5th Cir.) (petition filed July

52.     Exide's reliance on *St. Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525 (9th Cir. 1994), *as amended by* 46 F.3d 969 (1995), is misplaced.  Brief ¶ 34.  The divided panel in *Victoria Farms* addressed the constitutional validity not of section 1930(a)(6), but of a different statute:  section 317(a) of the Judicial Improvements Act of 1990, which extended the time for Alabama and North Carolina to implement the United States Trustee Program.  At the time of *Victoria Farms*, section 1930 did not provide for quarterly fees in the bankruptcy administrator districts.  38 F.3d at 1529.  In response to *Victoria Farms*, the Judicial Conference proposed, and Congress enacted, subsection (a)(7) as a cure to the perceived uniformity problem.  *Supra* at ¶¶ 25-28.  As explained *infra* at ¶ 65, the United States Trustee disagrees with *Victoria Farms* that there was a uniformity problem, but regardless, that perceived issue was abrogated by statute.

53.     Nor does the use of the term "may" in subsection (a)(7) render the 2017 amendment non-uniform, as Exide incorrectly posits.[15]  Brief ¶¶ 37-38.  Section 1930(a)(7) grants the Judicial Conference the authority, which it previously lacked, to charge quarterly fees, but only fees that are "equal to" those under subsection (a)(6).  The Judicial Conference imposed those fees nearly two decades ago, and directed that they be charged in the amount specified in subsection (a)(6), "as those amounts may be amended from time to time."  2001 Directive at 46.  As of January 1, 2018, then, the 2001 Directive and section 1930(a)(7) commanded bankruptcy administrators to charge the same fees as charged in the rest of the country: those set forth in section 1930(a)(6), as amended in 2017.

---

24, 2019).

[15]  A recent ruling against the United States Trustee in a similar uniformity challenge to the quarterly fees also appeared to overly rely on the term "may," and thus was wrongly decided.  *In re Circuit City Stores, Inc.*, Case No. 08-35653, Adv. No. 19-03060, 2019 WL 3202203, at *2 (Bankr. E.D. Va. July 15, 2019).  The United States Trustee appealed this decision on July 26, 2019.

54.     The term "may" in subsection 1930(a)(7) does not grant a free license to charge fees in any amount the Judicial Branch wishes.[16]  Compare, for example, subsection (a)(7) to section 1930(b), which provides that the Judicial Conference "may" prescribe additional fees "of the same kind" as it prescribes under section 1914(b) for district court cases.  It is clear that, in enacting section 1930(b), "Congress intended that filing fees in bankruptcy courts *be the same as those in other federal courts*."  *Merrill Trust Co. v. Red Barn, Inc. (In re Red Barn, Inc.)*, 23 B.R. 593, 595 (Bankr. D. Me. 1982) (citing legislative history).

55.     So too here.  "Equal to those imposed by paragraph 6" is a limiting phrase modifying the authority of the Judicial Conference to charge fees.  The "may" in section 1930(a)(7) does not give the Judicial Conference discretion to impose fees that are *not* equal to those imposed by section 1930(a)(6), any more than the "may" in sections 327 and 330 of the Bankruptcy Code give discretion to trustees to hire bankruptcy professionals who are *not* disinterested or courts to award compensation that is *not* reasonable.  *Compare* 28 U.S.C. 1930(a)(7) *with* 11 U.S.C. § 327 ("[T]he trustee . . . *may* employ . . . professional persons[ ]  that . . . are disinterested persons . . . .") *and* 11 U.S.C. § 330(a)(1) ("[T]he court *may* award a trustee . . . (A) reasonable compensation for actual, necessary services . . . .") (emphasis added).

56.     And, as the Eighth Circuit has squarely held, even if there were statutory differences in the fees charged in different places, such differences would not render a federal statute

---

[16]  Any reading of subsection (a)(7) that would grant the Judicial Conference such unfettered discretion should be rejected given the statute's context and legislative purpose.  *See United States v. Rodgers*, 461 U.S. 677, 706 (1983) ("The word 'may,' when used in a statute, usually implies some degree of discretion[, but] [t]his common-sense principle of statutory construction . . . can be defeated by indications of legislative intent to the contrary or by obvious inferences from the structure and purpose of the statute . . . .").  "In dozens of cases, courts have held may to be synonymous with shall or must, usu[ally] in an effort to effectuate what is said to be legislative intent." *May*, Black's Law Dictionary (11th ed. 2019).

unconstitutional. *See In re Prines*, 867 F.2d 478 (8th Cir. 1989). *Prines* addressed the gradual

roll-out of the United States Trustee Program when it was expanded nationwide, with different

effective dates for districts that participated in the pilot program than for those that did not. *Id*. at

482-83. The Eighth Circuit upheld the different effective dates of the quarterly fee provision

against an Equal Protection challenge, notwithstanding the uniformity requirement, noting that

debtors were being treated equally because "pending cases are subject to the quarterly fee

assessment only if the [United States] trustee has authority over them." *Id*. at 485. The same is

true here; the only alleged lack of uniformity is between districts in which United States Trustees

serve and those in which they do not.

57.     Finally in an analogous context, the Supreme Court rejected the notion that tax

uniformity required a tax to fall equally on each geographic region or prevented Congress from

defining the subject of a tax by drawing geographic distinctions between similar classes. *United

States v. Ptasynski*, 462 U.S. 74, 82-86 (1983) (deferring where "Congress has exercised its

considered judgment" in geographically defined tax class); *see also Schultz*, 529 F.3d at 355

(finding a lower level of scrutiny should apply to the uniformity requirement of the Bankruptcy

Clause than applied in *Ptasynski* to the tax uniformity clause).

**C.      A failure to apply section 1930 due to error does not violate the Bankruptcy Clause.**

58.     The Bankruptcy Clause applies only to "Laws," *i.e.*, acts of Congress. Accordingly,

someone's failure to enforce a law does not render it unconstitutionally non-uniform. *Cf.

Rosenberg v. United States*, 72 Fed. Cl. 387, 395-96 (Fed. Cl. 2006) (holding that complaint

alleging that IRS engaged in "*ultra vires* and nonuniform collection" of a tax did not allege a

violation of the tax uniformity clause, U.S. Const. art. I, § 8, cl. 1, because "[t]he Uniformity

Clause . . . is a limitation on legislative, not executive, action"); *Peony Park v. O'Malley*, 121 F.

19

Supp. 690 (D. Neb. 1954) (rejecting tax uniformity challenge where statute was uniform but enforcement was not), *aff'd*, 223 F.2d 668 (8th Cir. 1955).

59.     As explained *supra* at ¶¶ 25-28 and ¶¶ 40-41, nothing in the 2017 amendment, 28 U.S.C. § 1930(a)(7), or the 2001 Directive in effect on January 1, 2018, permitted charging fees in bankruptcy administrator districts in any way other than equal to those charged under section 1930(a)(6). There is no explanation for why the bankruptcy administrators failed to impose the increased fees in January 1, 2018, nor for why the Executive Committee decided in September 2018 to permit bankruptcy administrator districts to disregard the governing statute and 2001 Directive and belatedly charge the increased fees only in cases filed on or after October 1, 2018. Nothing in the 2017 amendment established October 1, 2018 as a trigger date to implement the amended fee schedule, nor supports any decision to carve out cases pending as of that date.

60.     Exide's grievance, ultimately, is not that the 2017 amendment is not uniform; it is that the uniform law was not uniformly implemented. The bankruptcy administrators' failure to comply with sections 1930(a)(6) and (7) and the Judicial Conference's 2001 Directive is not a problem of constitutional dimension, and cannot justify striking down a congressional enactment.[17]

### D.     Alternatively, the 2017 amendment does not violate the Bankruptcy Clause because section 1930(a)(6) is not a law "on the subject of Bankruptcies."

61.     To be subject to the uniformity requirement of the Bankruptcy Clause, a law must be one "on the subject of Bankruptcies." U.S. Const. art. 1, § 8, cl. 4. The Supreme Court has defined "bankruptcy" as the "'subject of the relations between [a] . . . debtor and his creditors, extending

---

[17] Nor does a temporary inconsistency in the amount of fees charged by the bankruptcy administrators excuse a chapter 11 debtor in United States Trustee districts from paying the statutorily required amounts. Even in *Victoria Farms*, the Ninth Circuit enforced the quarterly fee requirement, despite a perceived uniformity problem during the challenged quarters, once the court "cured" the alleged constitutional infirmity going forward. 38 F.3d at 1534.

20

to his and their relief.'" *Gibbons,* 455 U.S. at 466 (quoting *Hanover Nat'l Bank v. Moyses*, 186

U.S. 181, 186 (1902)); *see also Ashton v. Cameron Cty. Water Imp. Dist. No. 1*, 298 U.S. 513,

536-37 (1936) (explaining that the Court's consistent reading of the Bankruptcy Clause is that it

says, in substance: "Congress shall have power to establish uniform laws on the subject of any

person's general inability to pay his debts throughout the United States.") (Cardozo, J.,

dissenting) (internal quotation marks omitted).

62.     Thus, "Congress' power under the Bankruptcy Clause 'contemplate[s] an adjustment of a

failing debtor's obligations.'" *Gibbons,* 455 U.S. at 466 (quoting *Hanover Nat'l Bank*, 186 U.S.

at 186). Congress enacted such a law on the subject of Bankruptcies, found in title 11 of the U.S.

Code, titled "Bankruptcy." 11 U.S.C. §§ 101 *et seq.*

63.     Section 1930(a)(6), as amended in 2017, is not found in title 11, but is in title 28. The

statute provides a funding mechanism for the efficient administration of bankruptcy matters,

including paying for additional bankruptcy judgeships; it does not alter substantive bankruptcy

law. The 2017 amendment does not govern the relations between creditor and debtor. *See*

*Gibbons,* 455 U.S. at 466; *Reese*, 91 F.3d at 39-40; *cf. U.S. Trustee v. Gryphon at Stone*

*Mansion, Inc.*, 166 F.3d 552, 557 (3d Cir. 1999) ("Congress's mandate requiring payment of

post-confirmation quarterly fees is not an effort to alter the terms of pre-existing debts; rather, it

creates a new expense that did not exist before the plan was confirmed.") (internal quotations

omitted). Indeed, the text of the Bankruptcy Code itself remains unchanged by the 2017

amendment. *See Reese*, 91 F.3d at 39 (holding Bankruptcy Clause forbids "arbitrary regional

differences in the provisions of the Bankruptcy Code"). A change to the fees charged is a matter

of appropriations involving a Treasury-based fund, not the substantive law of bankruptcy.

64.     Contrary to Exide's contention, the mere reference to title 11 in section 1930 does not

instantaneously transform it into a bankruptcy law.  Brief ¶ 26.  Numerous federal statutes

reference title 11.  *See*, *e.g.*, 12 U.S.C. § 1150 (authority of Secretary of Agriculture to

compromise, adjust or cancel farm loans); 15 U.S.C. § 78fff (general provisions of a liquidating

proceeding); 18 U.S.C. §§ 151-158 (crimes related to bankruptcy); 26 U.S.C. § 1398 (rules

relating to individuals' bankruptcy cases under Internal Revenue Code).  These statutes are not

laws on the subject of Bankruptcies either.

65.      Exide further relies on *Victoria Farms* to argue that section 1930(a) is a law on the

subject of Bankruptcies.  Brief ¶ 28.  Exide, falling into the same trap that befell the panel

majority in *Victoria Farms*, erroneously focuses on a statute's "effect" to determine whether it

was subject to the Bankruptcy Clause.  *See Victoria Farms*, 38 F.3d at 1530-31 (reasoning that

the statute establishing the United States Trustee system is a law on the subject of bankruptcies

because it has a "direct effect" upon debtors and creditors and because higher fees have "a

concrete effect" on the relief available to creditors).  Any statute imposing or increasing a

financial obligation—such as a property tax, a license fee, or a domestic support obligation—

could "reduce[] the amount of funds that the debtor can ultimately pay to his creditors."  *Id.* at

1531.  Similarly, failure to comply with such statutes might bar confirmation of a plan, 11 U.S.C.

§ 1129(a)(14) (domestic support obligations), or result in conversion or dismissal of a chapter 11

case, 11 U.S.C. § 1112(b)(4)(I) (taxes).  Yet the Supreme Court has never intimated that such

laws would be one "on the subject of Bankruptcies."

**III.      The 2017 Amendment Is Not Impermissibly Retroactive, Nor Does It Violate the
Fifth Amendment.**

66.      While the United States Trustee agrees with Exide that the 2017 amendment applied to

all cases when it went into effect and did "not exempt cases filed prior to fiscal year 2018," Brief

¶ 41,[18] contrary to Exide's contention, this is neither retroactive nor unconstitutional.

### A. The 2017 amendment mandates that it operate prospectively, and applies only to disbursements made more than two months after its enactment.

67.     The 2017 amendment does not operate retroactively because it is triggered only by conduct that occurs after the amendment.  The conduct that triggers liability for quarterly fees is the making of disbursements of amounts equal to or exceeding $1 million during any calendar quarter after January 1, 2018.  Because the amendment applies only to disbursements made in pending cases more than 9 weeks after its enactment, the amendment is entirely prospective. *U.S. Trustee v. CF & I* Fabricators *of Utah, Inc. (In re CF & I Fabricators of Utah, Inc.)*, 150 F.3d 1233, 1237 (10th Cir. 1998) (holding that 1996 amendment to section 1930(a)(6) imposing quarterly fees post-confirmation is not retroactive); *Prines*, 867 F.2d at 485 (holding quarterly fees "operates only prospectively"); *In re Richardson Serv. Corp.*, 210 B.R. 332, 335 (Bankr. W.D. Mo. 1997) ("The amendment only triggers prospective assessment of fees from the amendment's effective date until entry of the final decree.").

68.     *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), undermines Exide's contention that the 2017 amendment is retroactive simply because it was enacted after Exide filed its bankruptcy petition and confirmed its plan.  Brief ¶ 45.  A statute does not operate retroactively "merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law."  511 U.S. at 269 (citation omitted).  Nor is a law retroactive

---

[18] That the 2017 amendment applied to all cases as of its effective date is buttressed by the Congressional Budget Office's Cost Estimate, which assumed the temporary fee increase would apply to pending cases when it calculated that the costs of the 18 judgeships would be offset by the increased revenue from the 2017 amendment.  *See* May 2017 CBO Report at 1 & 5 (reflecting, in three places, that the amendment would increase fees paid "by entities that are *currently* in Chapter 11 bankruptcy," "in *ongoing* Chapter 11 bankruptcy cases," "that are *already* in bankruptcy") (emphasis added).

23

simply because its application requires some reference to antecedent facts. *EPA v. New Orleans Pub. Serv., Inc.*, 826 F.2d 361, 365 (5th Cir. 1987) (holding that law altering classification of transformers for purposes of future matters is not retroactive).

69.     "[A] statute may modify the legal effect of a present status or alter a preexisting relationship without running up against the retroactivity hurdle." *McAndrews v. Fleet Bank of Massachusetts*, 989 F.2d 13, 16 (1st Cir. 1993). "The key lies in how the law interacts with the facts. So long as the neoteric law determines status solely for the purposes of future matters, its application is deemed prospective." *Id.*

70.     The 2017 amendment does not backdate collection of increased fees from the date a case was filed or the date a plan was confirmed. The amendment only triggers prospective assessment of the increased fees from the amendment's effective date until entry of the final decree. Exide needs to pay the increased fees only to the extent its case remains open and its quarterly disbursements exceed $1 million. Thus, the amendment does not operate retroactively.

> **B.     Even had the 2017 amendment been retroactive, it would not have been unconstitutionally retroactive.**

71.     Even if the 2017 amendment had retroactive application, Exide is incorrect that it would (**i**) constitute a taking or (**ii**) violate the Due Process Clause. Brief ¶¶ 42-56.

72.     As the Supreme Court has squarely addressed, Exide cannot state a takings claim based on what it believes to be a retroactive user fee. The Court explained in *Koontz v. St. Johns River Water Management District*, "[i]t is beyond dispute that '[t]axes and user fees . . . are not 'takings.'" 570 U.S. 595, 615 (2013) (quoting *Brown v. Legal Found. of Wash.*, 538 U.S. 216, 243, n.2 (2003) (Scalia, J. dissenting)) (ellipses in original). Assessing a statutory fee is simply not akin to the exercise of eminent domain. *See Sperry*, 493 U.S. at 62 n.9 (rejecting notion that "any fee for services" might constitute a "physical occupation requiring just compensation"); *cf.*

*Koontz*, 570 U.S. at 617 ("[T]he power of taxation should not be confused with the power of eminent domain[.]") (internal quotation omitted).  Thus, neither the quarterly fee under section 1930(a)(6), nor its increase under the 2017 amendment, constitutes a taking.

73.     Exide's reliance on the plurality's taking analysis in *Eastern Enters. v. Apfel*, 524 U.S. 498 (1998), is misplaced.  First, the economic regulation at issue there did not involve user fees, which cannot be a taking.  *Koontz*.  570 U.S. at 615.  Second, the majority of the *Eastern* Court *rejected* the plurality's taking analysis where the regulation did "not operate upon or alter an identified property interest."[19]  *Id.* at 613.  Five justices (four in dissent, one concurring in the judgment) "rejected the idea that a law that imposed only a financial burden without identifying a particular property right could ever constitute a taking."  *Unity Real Estate Co. v. Hudson*, 178 F.3d 649, 675 (3d Cir. 1999).  The Third Circuit has recognized that it is "bound to follow the five-four vote *against* the takings claim in *Eastern*."  *Id.* at 659 (emphasis added).  The 2017 amendment might increase Exide's financial burden, but implicates no right tied to particular property, such as a parcel of land.  Under circuit precedent, this is not a taking.

74.     In any event, even under a takings analysis, Exide could not prevail.  To determine whether a taking has occurred, courts examine "the character of the governmental action, its economic impact, and its interference with reasonable investment-backed expectations."  *Ruckelshaus v. Monsanto Co*., 467 U.S. 986, 1005 (1984).  Such expectations must be more than "a unilateral expectation or an abstract need."  *Id.*  Exide has not shown what reasonable investment backed expectations were harmed by the 2017 amendment.

75.     Chapter 11 debtors have long paid quarterly fees to support the bankruptcy system, and

---

[19] Even if the majority of the *Eastern* Court had not rejected the plurality's takings analysis, a plurality opinion does not make binding law.  *CTS Corp. v. Dynamics Corp. of America*, 481 U.S. 69, 81 (1987).

'[t]hose who do business in the regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end.'" *Am. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 371 (3d Cir. 2012). The 2017 amendment buttressed the revenue scheme designed by Congress to pay for the costs of the bankruptcy system. Any expectation that the quarterly fees would remain immutable is inherently unreasonable. *See CF & I*, 150 F.3d at 1239 (rejecting takings claim against section 1930(a) amendment and holding it "patently unreasonable to expect no variability in the final amount available to plan distributees" due to increased quarterly fees). "Carried to its logical conclusion, debtors' [retroactivity] arguments would mean no increases in fees, taxes, or assessments could be applied to any bankruptcy case after filing." *Prines*, 867 F.2d at 485.[20] Ultimately, Exide has expressed "no more than a 'unilateral expectation' that Congress would enact no new fees applicable to their bankruptcy case." *Id.* This is insufficient to establish a taking. *Id.*

76.     Nor does the 2017 amendment violate the Due Process Clause. The constitutional restraint upon enacting retroactive civil legislation is a "modest" one. *Landgraf*, 511 U.S. at 272. Laws adjusting the burdens and benefits of economic life are presumed to be constitutional and the burden is on the party complaining of a due process violation to establish that Congress has acted in an arbitrary way. *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15 (1976). As long as there is a lawful legislative purpose furthered by rational means, economic legislation meets the test of due process. *General Motors Corp. v. Romein*, 503 U.S. 181, 191 (1992); *United States v. Carlton*, 512 U.S. 26 (1994) (upholding amendment to estate tax deduction that operated retroactively).

---

[20] Exide's own disclaimers in its disclosure statement reflected its concurrent recognition, prior to plan confirmation, that future events—e.g., unanticipated restructuring costs—may impact its financial projections. *See supra* ¶ 4. It cannot claim it believed otherwise now.

26

77.     In addition, "courts must accord substantial deference to the predictive judgments of Congress." *Turner Broadcasting Sys., Inc. v. FCC*, 520 U.S. 180, 195 (1997) (internal quotation marks omitted).  This deference stems from the different institutional competencies and roles of the courts and Congress.  Congress as an institution is best equipped to amass and evaluate data bearing on legislative questions.  *Id*.

78.     The Supreme Court has held that "[i]t is surely proper for Congress to legislate retrospectively to ensure that costs of a program are borne by the entire class of persons that Congress rationally believes should bear them." *Sperry*, 493 U.S. at 64.  Congress exercised its legislative expertise here in determining that the amount of quarterly fees it voted to impose was needed to fund the cost of providing the bankruptcy system to debtors.  That decision was not arbitrary or irrational.

79.     As explained *supra* in Part I.C., the 2017 amendment was enacted to collect sufficient funds to fully offset Program appropriations and the costs of 18 bankruptcy judgeships—seven in this district—so that ordinary taxpayers would not have to bear those costs of the bankruptcy system.  H.R. Rep. No. 115-130, at 8.  Congress acted rationally in applying the temporary fee increase in all pending cases, rather than only in cases filed after its effective date, because application to all pending cases spreads the costs among all of the larger chapter 11 debtors using the bankruptcy system, instead of making comparatively fewer debtors shoulder the burden.  Moreover, applying the temporary fee increase to a larger number of cases allowed Congress's funding goal to be met, and met more quickly.  *See* May 2017 CBO Report at 5 (relying on application of the fee increase to pending cases for cost and revenue estimates).  This Congressional action was neither arbitrary nor irrational.

**IV.    Under Supreme Court Precedent, the 2017 Amendment Does Not Produce an Unconstitutionally Excessive User Fee.**

80.     Exide incorrectly alleges the 2017 amendment imposes an "excessive and unconstitutional user fee" that constitutes a taking.  Brief ¶ 58.  As explained *supra* at ¶ 72, the Supreme Court has made it clear that user fees simply are not takings.  *Koontz,* 570 U.S. at 615. This Court need not go further in its analysis.

81.     But even if user fees could be takings—which they cannot—quarterly fees are not a taking.  The Constitution does not require a case-by-case correlation between a user fee and the costs or benefits to the user of the government's services.  *Sperry*, 493 U.S. at 60-61.  Rather, the standard under *Sperry*, which preceded *Koontz*, is whether fees are "so clearly excessive" that they "belie their purported character as user fees."  *Id*. at 62.  *Sperry* upheld the government's authority to charge a 1.5% fee on an arbitral award "by any standard of excessiveness."  *Id*.

82.     Following *Sperry*, this Court expressly upheld the constitutionality of section 1930(a)(6) against the same "excessive user fee" takings challenge asserted by Exide.  *Kindred Healthcare, Inc.*, 2003 WL 22327933, at *3-5.  This Court concluded that the quarterly fee "formula adopted by Congress calculates the 'fair approximation of the cost of benefits supplied' to the debtor," that a "more precise calculation of the benefit on a case by cases basis is not required," and that the range of percentages of disbursements in the quarterly fee schedule was, like the percentage in *Sperry*, not so excessive as to be unconstitutional.  *Id*. at *5.

83.     Nor does the 2017 amendment impact this holding.  As a percentage of disbursements, pre-amendment fees in cases with over $1 million in quarterly disbursements were disproportionately low compared to the fees paid in smaller cases.  *See supra* at ¶¶ 37-39.  The 2017 amendment merely brought the percentage charged in those largest cases in line with the percentages charged in the smaller cases.  *Id*.  Under the 2017 amendment, fees in these largest

28

chapter 11 cases never exceed 1%.  Accordingly, the logic and holding of *Kindred Healthcare*

remain valid today, and the temporary fee increase must be upheld under *Sperry* as follows:

| Factor | *U.S. v. Sperry* | Section 1930(a)(6) as amended in 2017 |
|---|---|---|
| Statutory Percentage | **1.5%** on first $5 million, 1% thereafter | **Up to 1%** |
| Dollar cap on payments? | **No** | **Yes** ($250,000) |
| Voluntary use of the service? | **No** (use was involuntary because party did not want to use tribunal) | **Yes** (debtor chose to use the bankruptcy system) |
| Sunset? | **No** | **Yes** |
| Retroactive statute? | **Yes** (expressly retroactive) | **No** (didn't apply until the quarter after enactment) |
| Upheld statute? | **Yes**. S. Ct. upheld | |

84.    In its arguments, Exide cites and misapplies cases that do not assess whether a user fee is

a taking.[21]  For example, *National Cable Television Ass'n, Inc. v. United States*, 415 U.S. 336

(1974), cited in Exide's Brief at ¶ 65, addressed a statute granting federal agencies the authority

to prescribe user fees that the Supreme Court found implicated the separation of powers doctrine.

But *National Cable*'s "narrow rule of statutory construction" is not implicated when it is clear

that the fees imposed reflect the "will of Congress."  *U.S. v. E.I. Dupont De Nemours and Co.,*

*Inc.*, 432 F.3d 161, 165-69 (3d Cir. 2005) (*en banc*); *Skinner v. Mid-Am. Pipeline Co.*, 490 U.S.

212, 224 (1989) (explaining *National Cable*).  Similarly, *Massachusetts v. United States*, 435

U.S. 444 (1978) (upholding user fee against immunity of state government from federal taxation)

and *United States v. U.S. Shoe Corp.*, 523 U.S. 360 (1998) (rejecting user fee under tax

prohibition of Export Clause, U.S. Const. art. 1, § 9, cl. 5), applied constitutional provisions with

---

[21]  *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155 (1980) and *Garneau v. City of Seattle*, 147 F.3d 802 (9th Cir. 1998), cited in Exide's Brief at ¶ 58, were takings challenges, but neither involved user fees.  The statute challenged in *Webb's* did not assess a user fee, which was provided for by a separate statute, as expressly observed by the Supreme Court.  449 U.S. at 160 & 164.  And while Exide mistakenly cites and quotes the dissent in *Garneau*, the majority there in fact upheld a land-use regulation against a takings challenge. 147 F.3d at 807.

no bearing here. Thus, the applicable standard is set out in *Sperry*, not in the inapposite cases.

85.     Exide's contention that the fee is excessive because it will generate a surplus in the Fund, Brief ¶ 66, is also misplaced. The $200 million floor set by the 2017 amendment is less than the annual appropriations for the Program. *See* Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, tit. II, 132 Stat. 348, 412 (2018) (appropriating $226 million for Program). As is consistent with the purpose of the Fund, the Fund balance is used to cover shortfalls between fees collected and the annual appropriations. *See* Dep't of Justice, U.S. Tr. Program FY 2016 Performance Budget Cong. Submission at 19, *available at*

https://www.justice.gov/sites/default/files/jmd/pages/attachments/2015/02/01/18._u.s._trustee_program_ustp.pdf. This does not reflect an excessive fee. *Cf. Massachusetts*, 435 U.S. at 470 n.25 (holding that "a surplus of revenue over outlays in any one year can be offset against actual deficits of past years and perhaps against projected deficits of future years").

86.     In light of the foregoing, there is no basis for this Court to overrule Congress's determination that the amount of the quarterly fees it voted to impose is a fair approximation of the cost of providing the bankruptcy system to debtors, and a fair distribution of those costs among those who use the bankruptcy system. *See Sperry*, 493 U.S. at 60, 63. As long as Exide continues to use the bankruptcy system, it must pay its quarterly fees. *See*, *e.g.*, *In re A.H. Robins Co. Inc.*, 219 B.R. 145, 148 n.8 (Bankr. E.D. Va. 1998) (holding that regardless of what United States Trustee had done in the case post-confirmation, the debtor "benefitted from the Court's continued involvement in this still-open case").

## CONCLUSION

For these reasons, the United States Trustee respectfully asks this Court to deny the Motion, and grant any further relief that the Court deems proper.

DATED: August 5, 2019

Respectfully submitted,

ANDREW R. VARA
Acting United States Trustee for Region 3

By /s/ Linda J. Casey

| | |
|---|---|
| RAMONA D. ELLIOTT | ANDREW R. VARA |
| Deputy Director/General Counsel | Acting United States Trustee, Region 3 |
| P. MATTHEW SUTKO | T. PATRICK TINKER |
| Associate General Counsel | Assistant United States Trustee |
| SUMI K. SAKATA | LINDA J. CASEY |
| Trial Attorney | ROBERT J. SCHNEIDER, JR. |
| | Trial Attorneys |
| Department of Justice | Department of Justice |
| Executive Office for United States | Office of the United States Trustee |
|   Trustees | J. Caleb Boggs Federal Building |
| 441 G Street, N.W., Suite 6150 | 844 King Street, Suite 2207, Lockbox 35 |
| Washington, DC  20530 | Wilmington, DE 19801 |
| Tel:  (202) 307-1399 | Tel:  (302) 573-6491 |
| Fax: (202) 307-2397 | Fax: (302) 573-6497 |